## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

THE OHIO STATE UNIVERSITY,     :
 :
    Plaintiff      :
 :
   v.         :  Case No. 2:17-cv-1092
            :  Judge Marbley
REDBUBBLE, INC.,      :  Magistrate Judge Vascura
 :
    Defendant.    :
 :

## MOTION OF PLAINTIFF THE OHIO STATE UNIVERSITY
## FOR SUMMARY JUDGMENT

Plaintiff The Ohio State University ("Ohio State"), by and through counsel, files this motion for summary judgment as to Plaintiff's claims of trademark infringement, unfair competition, passing off, counterfeiting under the Lanham Act and violation of the rights of publicity assigned to Ohio State under O.R.C. § 2741, et seq., for the reasons set forth more fully below. This Motion is supported by the Declarations of Richard A. VanBrimmer, Robert Cleveland, Joseph K. Dreitler, Mary R. True, Patrick Roach, and the Exhibits attached to those Declarations.

Date: August 15, 2018     Respectfully submitted,


            Michael DeWine
            Ohio Attorney General


            _Joseph R. Dreitler_
            Joseph Kershaw Dreitler, Trial Attorney
            (0012441)
            Mary R. True (0046880)
            DREITLER TRUE LLC
            jdreitler@ustrademarklawyer.com
            mtrue@ustrademarklawyer.com


            Special Counsel for Plaintiff
            The Ohio State University

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS ............................................................................................................... 3
     A. Plaintiff Ohio State University ................................................................... 3
        1. The Ohio State Marks ........................................................................... 3
        2. Ohio State's Licensing Program ........................................................... 6
        3. Ohio State's Trademark Enforcement Program ................................... 7
     B. Defendant RedBubble ................................................................................ 9
        1. RedBubble's Business Model ............................................................... 9
        2. RedBubble's Misuse and Counterfeiting of the Ohio State Marks ......................................................... 10

III. LEGAL ARGUMENT ......................................................................................... 12
     A. Trademark Counterfeiting Under the Lanham Act ...................................... 13

Summary of Argument:  A counterfeit trademark is a spurious trademark that is identical to, or substantially indistinguishable from, a registered trademark. Lanham Act § 45, 15 U.S.C. § 1127. The majority view is that if the respective goods are so similar as to be regarded as "counterfeit", then a likelihood of confusion may be presumed. *Ohio State University v. Skreened Ltd.*, 16 F. Supp. 3d 905 (SD Ohio 2014).  Under 15 U.S.C. § 1114, liability for counterfeiting attaches to any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.  As a seller of counterfeit products, RedBubble is liable for trademark counterfeiting.  *Lorillard Tobacco Co. v. Amouri's Grand Foods*, 453 F.3d 377 (6th Cir. 2006)

        1. This Court has long recognized that Ohio State is the owner of strong, valid and protectable trademarks ................................................................................. 14

Summary of Argument:  The Ohio State Marks, as set forth in Ex. A-K of the True Dec., are strong, they have been used for decades only by Ohio State and its licensees, and they are recognized by the public as indicating the source of goods in The Ohio State University throughout the State of Ohio and nationwide.  Judges in this District have routinely approved consent orders recognizing the distinctiveness and strength of the Ohio State Marks

        2. RedBubble has engaged in willful trademark counterfeiting .................................................. 15

Summary of Argument:   RedBubble's conduct was willful because it countinued to sell counterfeit Ohio State products after having been put on notice.  *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880(SD Ohio 2007)

     B. Trademark Infringement, Passing Off and Unfair Competition Under the Lanham Act .............. 19

Summary of Argument:  Ohio State owns valid federal registrations for the trademarks that Defendant has used in commerce without Ohio State's consent.   Thus "the touchstone of liability under §1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *PACCAR Inc. v. TeleScan Technologies, LLC*, 319 F. 3d 243, 249 (6th Cir. 2003). Likelihood of confusion is assessed by considering the factors set forth in *Frishch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642 (6th Cir. 1982).

1. Strength of the marks ........................................................................................................ 20
Summary of Argument:  The Ohio State Marks are strong because the public readily accepts the Ohio State Marks as a hallmark of the Ohio State University given the length of use, the amount of use and publicity that ties the Ohio State Marks to Plaintiff.  *Homeowners Group v. Home Marketing Specialists*, 931 F. 2d 1100 (6th Cir. 1991).

2. Relatedness of the goods ................................................................................................. 20
Summary of Argument:  Defendant's counterfeit goods are identical to and compete with products sold by Plaintiff's licensees.  If the parties compete directly, confusion is likely if the marks are sufficiently similar.  *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004).

3. Similarity of the Marks..................................................................................................... 21
Summary of Argument:  The trademarks being used by Defendant are identical to and ARE the Ohio State Marks in the same logos, font style and school colors.  "In some cases it may be unnecessary to undertake an extended analysis to infer confusion, e.g., where there is no difference between the marks of directly competitive goods/services." *Homeowners Group v. Home Marketing Specialists*, 931 F. 2d 1100 (6th Cir. 1991), citing  *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979).

4. Evidence of actual confusion .......................................................................................... 22
Summary of Argument:  While proof of actual confusion is not necessary to obtain injunctive relief, *Frisch's Restaurant Inc., supra,* 759 F.2d at 1267, because the marks in this case are identical, actual confusion is presumed.  *Skreened, supra,* 16 F. Supp. 3d at 912, citing *Coach, Inc. v. D&N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3 (E.D. Mich. July 11, 2011).

5. Marketing channels used ................................................................................................. 22
Summry of Argument:  Defendant and Ohio State's licensees both use the internet to promote and sell their products to persons seeking to buy products bearing the Ohio State Marks, which "exacerbates the likelihood of confusion." *Audi AG, supra,* 469 F.3d at 544 (quoting *PACCAR Inc. v. TeleScan Tech., L.L.C.,* 319 F.3d 243, 252 (6th Cir. 2003).

6. Likely degree of purchaser care ...................................................................................... 23
Summary of Argument: When, as here, products "are distributed in the same environments, it is likely the case that buyers exercise comparatively little care in selection and the likelihood of confusion is accordingly somewhat higher." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.2d 504, 520 (6th Cir. 2007)

7. Defendant's intent in selecting the mark............................................................................ 23
Summary of Argument:  Defendant's knowing and intentional copying of the well-known Ohio State Marks is a clear indication of Defendant's intent to trade on Ohio State's good will for profit. "[I]f the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] that fact alone may be sufficient to justify the inference that there is confusing similarity." *Esercizio v. Roberts*, 944 F. 2d 1235, 1242 (6th Cir. 1991)

C. Violation of O.R.C. § 2741.01 et seq. Right of Publicity of Urban Meyer ................................. 25
Summary of Argument:  Defendant has been offering to sell and selling commercial products bearing the Meyer Person without the authorization of either Plaintiff or Urban Meyer, in violation of O.R.C. § 2741.01.

D. Ohio State is Entitled to Injunctive Relief under 15 U.S.C. § 1116(a) ........................................ 26

<u>Summary of Argument:</u>  A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc., et al. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Ebay Inc.,* 547 U.S. at 391.  These four factors favor Ohio State.

E.  This Case is an Exceptional Case under 15 U.S.C. 1117 .................................................... 28
<u>Summary of Argument:</u>  "[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  Defendant's conduct in selling counterfeits of Ohio State products and forcing Ohio State to file this lawsuit and bring a motion for summary judgment are indefensible and objectively unreasonable both as to the law and the facts

IV. CONCLUSION .................................................................................................................... 29

## TABLE OF AUTHORITIES

Page

**Cases**

*A.C. Legg Packing Co., Inc. v. Olde Plantation Spice Co., Inc.*, 61 F. Supp. 2d 426 (D. Md. 1999)...................................................................................................................... 29

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 626 n. 2 (6th Cir.2002)............................................................................................................... 25

*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979) ........................................... 21

*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) ........................................................... 23

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) ................................................... 12

*Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1313 (S.D.Fla.2003)........ 18

*Artype v. Zapulla,* 228 F.2d 695, 696 (2d Cir. 1956)............................................................... 30

*Audi AG and Volkswagen of America, Inc. v. D'Amato,* 469 F.3d 534, 542 (6th Cir. 2006) ........................................................................................................... 13, 22, 27

*AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 797................................................................. 20

*Baker v. DeShong,* 821 F.3d 620, 624 (5th Cir. 2016) .......................................................... 28

*Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (l0th Cir. 1983) ................. 21

*Board of Supervisors for La. State v. Smack Apparel Co.*, 550 F. 3d 465, 483-84 (5th Cir. 2008) .......................................................................................................................... 1

*Board of Supervisors of La. State v. Smack Apparel Co.*, 438 F. Supp. 2d 653, 656 (E.D. La. 2006) ....................................................................................................................... 1

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) .............................................................. 12

*Champions Golf Club, Inc. v. Champions Golf Club,* 78 F. 3d 1111, 1119-20 (6th Cir. 1996) .................................................................................................................... 21, 22

*Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d 262, 267 (S.D. N.Y. 2011) .................... 14

*Coach, Inc. v. D&N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3 (E.D. Mich. July 11, 2011) ..................................................................................................... 13, 22

*Daddy's Junky Music v. Big Daddy's Family Music,* 109 F. 3d 275, 288 (6th Cir. 1997)....... 23, 25

*Discovery Communications, Inc. v. Animal Planet, Inc.,* 172 F.Supp.2d 1282, 1292 (C.D.Cal.2001)............................................................................................................... 28

*eBay Inc., et al. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)........................................ 27

*El Greco Leather Prods. Co. v. Shoe World, Inc.,* 806 F.2d 392, 396 (2d Cir. 1986).................. 14

*Esercizio v. Roberts*, 944 F. 2d 1235, 1242 (6th Cir. 1991) ............................................. 22, 23

*ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d 915, 920 (6th Cir.2003)......................................... 25

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014).............................. 28

*Florence Mfg. Co. v. J.C. Dowd & Co.*, 178 F. 73, 75 (2d Cir.1910) ....................................... 30

*Ford Motor Co. v. Cross,* 441 F.Supp.2d 837, 852 (E.D.Mich.2006)....................................... 18

*Frisch's Restaurant Inc., supra,* 759 F.2d at 1267 ................................................................. 22

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.), cert. denied, 459 U.S. 916 (1982) ............................................................................ 20, 23

*General Motors v. Keystone Automotive Industries*, 453 F. 3d 351, 357 (6th Cir. 2006) ............ 23

*Georgia-Pac. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 720 (4th Cir. 2015) ............................................................................................................................. 28

*Gucci America, Inc. v. Duty Free Apparel, Ltd.* 286 F. Supp. 2d  284, 287 (S.D. N.Y. 2003) .................................................................................................................. 14

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1152 n. 6 (7th Cir.1992) ............................................................................................................. 14

*H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC v. SunFrog LLC d/b/a/ SunFrog Shirts and John Does,* Case No. 17-cv-711-JPS (April 12, 2018) ........... 11, 12

*Hemmeter Cigar Co. v. Congress Cigar Co.,* 118 F.2d 64, 70 (6th Cir.1941 .............................. 30

*HER, Inc. v. RE/MAX First Choice LLC,* 2008 U.S. Dist. LEXIS 40164, *21 (S.D. Ohio 2008) ........................................................................................................... 13

*Homeowners Group v. Home Marketing Specialists*, 931 F. 2d 1100 (6th Cir. 1991) ............ 20, 21

*Hua-Cheng Pan v. Kohl's Department Stores*, Case No. 2:12-cv-1063 ...................................... 28

*Induct-O-Matic Corp., supra,* 747 F.2d at 364-65 .............................................................. 23

*Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380-81 (7th Cir. 1988) ...................................... 18

*Kellogg Co. v Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003) ........................................... 20

*Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.2d 504, 520 (6th Cir. 2007) ................. 23

*Levi-Strauss  & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822  (9th Cir.  1980) .............................. 21

*Lorillard Tobacco Co. v. Amouri's Grand Foods*, 453 F.3d 377 (6th Cir. 2006) ............. 14, 18, 27

*Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002) .... 19, 28

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) .................. 12

*Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880(SD Ohio 2007) ....................................... 18

*Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) ....... 12

*N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2nd Cir.1992) .................... 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) ............. 28, 29

*PACCAR Inc. v. TeleScan Technologies, LLC,* 319 F. 3d 243, 249 (6th Cir. 2003) ........ 19, 22, 23

*Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985) ....................................... 27

*Polo Fashions, Inc. v. Craftex, Inc.* 816 F. 2d 145, 148 (4th Cir. 1987) ...................................... 13

*The Ohio State University v. CafePress Inc.*, Case No. 2:16-cv-01052 (S.D. Ohio 2016)... 2, 9, 15

*The Ohio State University v. Eric Hennan d/b/a/ Visual Advantage LLC,* Case No. 2:13-cv-493 (S.D. Ohio 2014) ...................................................................................................... 9

*The Ohio State University v. Ground Hog Productions, et al.,* 2:99-cv-01272 (S.D. Ohio 1999) ........................................................................................................... 9, 15

*The Ohio State University v. Keith Antonio Thomas, et al.,* Case No. 2:10-cv-753 ...................... 15

*The Ohio State University v. Keith Brown d/b/a The Jersey Guy* 2:14-cv-2715 (S.D. Ohio 2014) ........................................................................................................... 9, 15

*The Ohio State University v. Lamp Apparel, LLC,* Case No. 2:17-cv-516 (S.D. Ohio 2017) ........................................................................................................... 9, 15

*The Ohio State University v. Maple Street Press LLC*, Case No. 2:10-cv-890 (S.D. Ohio 2010) ........................................................................................................... 9, 15

*The Ohio State University v. Ohio State Tire, LLC,* Case No. 2:09-cv-1108 (S.D. Ohio 2009) ................................................................................................................. 9

*The Ohio State University v. Park Farms Poultry,* Case No. 2:12-cv-219 (S.D. Ohio 2012) ................................................................................................................. 9

*The Ohio State University v. Sean M. Ashbrook,*  Case No. 2:99-cv-800 (S.D. Ohio 1999) ........................................................................................................... 9, 15

*The Ohio State University v. Skreened Ltd.*, 16 F. Supp. 3d 905 (SD Ohio 2014) ........ 2, 9, 13, 22

*The Ohio State University v. SunFrog, LLC.,* Case No. 2:17-cv-229 (S.D. Ohio 2017) ..... 2, 9, 15

*The Ohio State University v. Teespring, Inc.*, Case No. 2:14-cv-397 (S.D. Ohio 2014) ...... 2, 9, 15
*The Ohio State University v. Thomas,* 738 F. Supp. 743 (S.D. Ohio 2010) .................................. 9
*The Ohio State University v. Touchdown Alabama Magazine,* Case No. 2:11-cv-472
    (S.D. Ohio 2011) ..................................................................................................................... 9
*Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002) ............................... 21
*Tiffany (NJ) Inc. v. eBay, Inc,*, 600 F.3d 93 (2d Cir. 2010) .................................................... 11, 12
*Too, Inc. v. TJX Cos.*, 229 F.Supp. 2d 825, 829 (S.D. Ohio 2002) .......................................... 13
*Victoria's Secret Stores v. Artco Equip. Co.,* 194 F.Supp.2d 704, 724 n. 8 (S.D.Ohio 2002) ....... 25
*Windmill Corp. v. Kelly Foods,* 76 F.3d 380 (6th Cir. 1996) ...................................................... 30
*Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 599 (6th Cir.1991) ................. 14, 23, 24, 27
*Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988) ............................................. 20, 21
*Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 498 (S.D. N.Y. 2008) ......................... 14

## Statutes

15 U.S.C. § 1065 ............................................................................................................................ 6
15 U.S.C. § 1114 ....................................................................................................... 13, 14, 25
15 U.S.C. § 1116(a) ........................................................................................................... 26, 28
15 U.S.C. § 1116(d)(1)(B) .................................................................................................. 13
15 U.S.C. § 1117 ............................................................................................................... 28
15 U.S.C. § 1117(a) ...................................................................................................... 28, 29
15 U.S.C. § 1117(c) ....................................................................................................... 19
15 U.S.C. § 1127 ............................................................................................................ 13
15 U.S.C. §1125 .............................................................................................................. 13
O.R.C. § 2741.01 ............................................................................................................. 25
O.R.C. § 2741.01 (B)(2) ................................................................................................ 30
O.R.C. § 2741.04 ............................................................................................................. 25
O.R.C. § 2741.07 ............................................................................................................. 26

## Rules

Fed. R. Civ. P. 56(e) ..................................................................................................... 12

## Treatises

3A R. Callmann, *Unfair Competition, Trademarks & Monopolies,* § 20.43, at 345 (4th ed.
    1983) ................................................................................................................................ 20
J. Thomas McCarthy, Trademarks and Unfair Competition, § 23:21(4d ed. 2013) ........ 13, 21

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      INTRODUCTION**

This is a plain vanilla trademark infringement/counterfeiting case along with a state claim for violation of the rights of persona of head football coach Urban F. Meyer ("Meyer") at The Ohio State University ("Ohio State").  Unfortunately, over the past fifteen years, to protect its rights in its trademarks, Ohio State has been forced to bring numerous similar cases against online businesses whose business model is to offer for sale on their website, manufacture/print, sell and ship products that infringe or are counterfeits of federally registered trademarks owned, used and licensed by Ohio State (the "Ohio State Marks"). (VanBrimmer Dec ¶16). More than thirteen years ago, Ohio State was forced to join several other schools and bring a lawsuit against an online business selling t-shirts using Ohio State school colors and phrases suggesting a connection with Ohio State ("Got Seven?" (front), "We do! 7 Time National Champs," with depiction of the state of Ohio and a marker noting "Columbus Ohio" (back). This shirt refers to the seven college football national titles claimed by Ohio State".) *Board of Supervisors of La. State v. Smack Apparel Co*., 438 F. Supp. 2d 653, 656 (E.D. La. 2006). In affirming the district court's finding of infringement of Ohio State's common law trademarks in its school colors and identifying indicia, the 5th Circuit stated:

> After reviewing the record, we conclude that there is no genuine issue of fact that Smack's use of the Universities' color schemes and other identifying indicia creates a likelihood of confusion as to the source, affiliation, or sponsorship of the t-shirts. As noted above, the digits of confusion — particularly the overwhelming similarity of the marks and the defendant's intent to profit from the Universities' reputation — compel this conclusion. This is so, we have noted, because Smack's use of the Universities' colors and indicia is designed to create the illusion of affiliation with the Universities and essentially obtain a "free ride" by profiting from confusion among the fans of the Universities' football teams who desire to show support for and affiliation with those teams. This creation of a link in the consumer's mind between the t-shirts and the Universities and the intent to directly profit therefrom results in "an unmistakable aura of deception" and likelihood of confusion.

*Board of Supervisors for La. State v. Smack Apparel Co*., 550 F. 3d 465, 483-84 (5th Cir. 2008).

In 2013, Ohio State sued another online business that offered for sale on its website, had manufactured, sold and shipped infringing and counterfeit clothing bearing the Ohio State Marks. *The*

*Ohio State University v. Skreened Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014). The *Skreened* defendants raised numerous defenses that mirror the defenses RedBubble has plead in their Answer. All of these defenses were rejected by Judge Frost who stated, "Selling knockoffs is selling knockoffs, regardless of who suggested you sell them, regardless of how many other infringing products you decide not to sell, and regardless of how much of a hassle it is to comply with the law." *Skreened*, *supra,* 16 F.Supp. 3d at 917.

Subsequent to the *Skreened* decision, Ohio State has successfully sued several of Defendant's competitors who use the same model as Defendant of encouraging third parties to post "designs" (which are simply counterfeit trademarks of third parties) on their website, advertising the designs to customers, soliciting orders of products made with the counterfeit designs, having counterfeit products printed, selling the counterfeit products and shipping the counterfeit products.  See,  *The Ohio State University v. Teespring, Inc.*, Case No. 2:14-cv-397 (S.D. Ohio 2014); *The Ohio State University v. CafePress Inc.*, Case No. 2:16-cv-01052 (S.D. Ohio 2016); *The Ohio State University v. SunFrog, LLC.,* Case No. 2:17-cv-229 (S.D. Ohio 2017).

Defendant's business model is the same as these and other online counterfeiters and infringers of Ohio State University's trademarks. There is nothing new and unique about Defendant's business such that basic trademark law should not apply to the Defendant's business. Like Skreened, TeeSpring, CafePress and SunFrog, third parties upload designs to RedBubble's public website and RedBubble offers to and does sell, have manufactured and shipped counterfeit clothing and related goods that use Ohio State's trademarks and directly compete with the business of Ohio State's licensing program and licensees.  The ultimate issue in this case is the same as it is in every case in which Ohio State is forced to sue a Defendant for trademark infringement and counterfeiting. That issue is Ohio State's ability to decide who may use its trademarks on commercial products, and Ohio State's ability to stop those who try to unlawfully capitalize on the valuable goodwill of and perceived association with Ohio State, and its athletics programs in particular.

As will be demonstrated herein, under the overwhelming weight of the case law in this district, this circuit and throughout the country, and based on the undisputed facts set forth in the accompanying Declarations, this Court does not need to do any further analysis. Defendants are knowingly using the identical marks on the identical products sold to identical customers through identical trade channels of distribution. Accordingly, this Court should also find that there is a likelihood of confusion regarding Defendant's use of the Ohio State Marks and the rights of persona in Ohio State's coach, Urban Meyer.

## II.    FACTS

### A.  Plaintiff Ohio State University

Established in 1870, The Ohio State University has developed into one of the most well-respected institutions of higher learning in the country. For more than 140 years, Ohio State has been actively engaged in providing undergraduate and graduate level educational courses and a broad array of programming and events, including athletic events, recreational programs, and artistic, dramatic, and musical entertainment programming. The University also operates a medical center that has grown into one of the largest patient-care and medical-research centers in the nation. Ohio State licenses and markets various products and services, including publications, clothing, and other merchandise using the Ohio State Marks.

####    1.   The Ohio State Marks

Ohio State is the owner of numerous registered trademarks that are widely used and recognized throughout the United States and the world, including:

    a)  "BUCKEYES" — registration number 1,267,035, registered on February 14,1984 for use on: toy stuffed animals, Christmas decorations, bean bags, plastic toys, foam toys and equipment sold as a unit for playing a stick ball game; clothing-namely, T-shirts, ties, scarves, bibs, sweatshirts, athletic shorts, hats, aprons, jogging suits and sweaters; blankets, textile placemats, handkerchiefs, quilts and pennants; tumblers, cups, mugs, glasses and insulated beverage container holders; hassocks, bean bag leisure furniture, letter holding boxes, mirrors, and folding seats for use by individuals in athletic stadiums and plaques; tote bags; pens, posters, decals, and paintings; jewelry-namely, rings, pins, belt buckles and key chains, all being made of precious metal; electric lamps; providing college level educational programs, sport exhibition events and recreation programs;

b) "OHIO STATE" — registration number 1,294,114, registered September 11, 1984 for providing college level educational programs, sport exhibition events, recreation programs, toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, bats, balls and other equipment sold as a unit for playing a stick ball game, shoe laces, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits, sweaters, blankets, pennants, textile placemats, handkerchiefs, quilts, tumblers, cups, mugs, glasses, beverage container insulators, hassocks, bean bag leisure furniture, mirrors, and folding seats for use by individuals in athletic stadiums, tote bags, pens, posters, decals, paintings, letter holding boxes, rings, pins, belt buckles, key chains and electric lamps;

c) "OHIO STATE UNIVERSITY" — registration number 1,294,115, registered September 11, 1984 for jewelry-namely, rings, pins, belt buckles and key chains; pens, posters, decals, paintings, letter holding boxes; hassocks, bean bag leisure furniture, plaques, mirrors and folding seats for use by individuals in athletic stadiums; tumblers, cups, mugs, glasses and beverage container insulators; blankets, pennants, textile placemats, handkerchiefs and quilts; clothing-namely, t-shirts, ties, scarves, bibs, sweatshirts, shorts, hats, aprons, jogging suits and sweaters; toy stuffed animals, Christmas decorations, bean bags, plastic figurine toys, foam figurine toys, and equipment-namely, bats and balls sold as a unit for playing a stick ball game; and : providing college level educational programs, sport exhibition events and recreation programs;

d)



– registration number 2,689,612, registered February 25, 2003 for clothing, namely, jackets, sweaters, hats and T-shirts.

e)



. "OHIO STATE" – registration no. 2,094,602, registered September 9, 1997 for clothing items for men, women and children, namely, sweatshirts, T-shirts and sweaters.

f)



Registration no. 4,971,894, registered June 7, 2016, for clothing and headgear, namely, t-shirts, shirts, sweatshirts, hoodies, hats and caps.

g)



Registration no. 4,028,867, registered September 20, 2011 for baseball caps and hats, sweatshirts; T-shirts.

h)    URBAN MEYER – Registration no. 4,770,248, registered July 7, 2015 for clothing items for men, women and children, namely, hats caps, shirts, and T-shirts.



i)

Registration no. 2,039,181, registered February 18, 1997 for pens, game programs, and posters.



j)

Registration no. 2,437,954, registered March 27, 2001 for decals and stickers



k)

Registration no. 4,266,878, registered January 1, 2013 for clothing, namely, t-shirts.

Certified copies of the above-referenced registrations of the Ohio State Marks are attached as Exhibits A-K to the Declaration of Mary R. True ("True Dec."), filed in support of this motion. Registration numbers 1,267,035; 1,294,114; 1,294,115; 2,039,181; 2,094,602; 2,437,954; 2,689,612; and 4,028,867 are more than five (5) years old and are incontestable under 15 U.S.C. § 1065.

2. <u>Ohio State's Licensing Program</u>

For more than thirty five (35) years, Ohio State has both used and licensed third parties to use the Ohio State Marks on various items and services, including t-shirts and other clothing of all types, food products, restaurant services, internet websites, screen savers, athletic uniforms, decals, calendars, novelties, books, household goods, toys, sporting goods, music, home furnishings, glassware, collectibles, pens and watches. Ohio State's licensing program is one of the most profitable collegiate licensing programs in the United States, generating more than $ 100 million in royalty revenue to Ohio State over the past seven years. Declaration of Richard VanBrimmer ("VanBrimmer Dec.") at ¶ 13. Royalties derived from the commercial use of Ohio State's Marks directly benefit Ohio State students by funding a variety of scholarships and programs. VanBrimmer Dec. at ¶10. The past success of Ohio State's academic and athletic programs has resulted in extensive exposure of the Ohio State Marks to a national audience and has created a large demand for products and services bearing the Ohio State Marks throughout the United States.

Ohio State strictly controls the nature and quality of the goods bearing the Ohio State Marks to protect the tradition, prestige, and goodwill associated with the Ohio State Marks. Among other

requirements, licensees must obtain Ohio State's approval of all artwork used on licensed goods and must include the licensee's name on the licensed goods or on a label, tag, or similar device securely affixed to the goods.  VanBrimmer Dec. at ¶ 16; Declaration of Robert Cleveland ("Cleveland Dec.") at ¶ 8. According to Richard A. VanBrimmer, Ohio State's Assistant Vice President, Business Advancement, Trademark & Affinity Management, Ohio State's licensees have produced and sold apparel and products bearing the Ohio State Marks since at least as early as the dates of first use set out on each registration certificate.  VanBrimmer Dec. at ¶ 6.  Ohio State has also made extensive use of the common law trademark Ohio State "helmet stripe", which is the subject of a pending and approved U.S. trademark application number 87/307065 for a wide variety of clothing and headgear.

Cleveland Dec. at ¶ 8.

Ohio State sells its licensed products bearing the Ohio State Marks in multiple channels of trade. The products are sold through Ohio State's website, as well as at the stadium store during home football games, and since the 1970's at brick and mortar retail stores selling officially licensed Ohio State goods, such as Buckeye Corner, Longs Bookstore, and Conrads College Gifts, each of which maintains their own websites for the sale of Ohio State products online. In addition, Ohio State sells its licensed products both in retail stores and online through national retailers such as Dick's Sporting Goods, Barnes & Noble and at Nike.com. Online sales are substantial, both by Ohio State and its retailers, and likely represent between 20% and 40% of all sales of licensed products.  VanBrimmer Dec. at ¶14.

3.   Ohio State's Trademark Enforcement Program

Because of the widespread recognition of the Ohio State Marks, and the value of its licensing program, Ohio State has had a vigorous trademark enforcement program in place for many years.  Robert Cleveland has worked with Ohio State's trademark licensing and enforcement programs since 2000, and is currently Ohio State's Director of Trademark Permissions & Protection.  Cleveland Dec. at ¶¶ 1-2.  Mr.

Cleveland avers that Ohio State has several methods of finding counterfeits and infringing uses of the Ohio State Marks.

- Mr. Cleveland and members of his team search the internet on a daily basis looking for infringing or counterfeit uses of the Ohio State Marks;

- Ohio State licensees frequently find third party infringements and counterfeits of Ohio State Marks and forward information and/or links to such non-licensed products to Mr. Cleveland and his team;

- Ohio State frequently receives anonymous tips from people who have purchased or seen infringing or counterfeit Ohio State products;

- Ohio State spends almost $36,000 a year for OpSec Security to locate and take down counterfeit and infringing products being sold online at Amazon, eBay, Etsy and AliExpress;[1]

- Ohio State spends $36,000 per year to have CounterFind Inc. (http://www.counterfind.com ) monitor FaceBook for pages and paid ads offering infringing and counterfeit products bearing the Ohio State Marks.[2]

Cleveland Dec. at ¶ 5.

When Ohio State finds infringers by its own investigation, or if OpSec Security and/or CounterFind Inc. are unable to effectively take all of the counterfeits down (such as a dedicated website like RedBubble, TeeSpring, CafePress or SunFrog), Mr. Cleveland sends out a cease and desist letter to the owner of the website, which includes links to numerous counterfeit products appearing on the website, and demands that they take down the infringing or counterfeit merchandise, and sign an agreement to monitor their website for additional counterfeits and pledge not to sell such products using the Ohio State Marks in the future. Cleveland Dec. at ¶ 6. Such measures have generally been effective, but Ohio State has been forced to file lawsuits against several business who have sold products bearing the Ohio State

---

[1] Attached as Exhibit A to the Declaration of Patrick Roach is an Excel spreadsheet listing more than 4600 take downs of infringing and counterfeit Ohio State merchandise with a value of more than $3,000,000.00 by OpSec Security from these sites between 2015 and June 2018
[2] Attached as Exhibit A to the Cleveland Dec. are screenshots of the total amount of FaceBook pages located in the past year and a screenshot of two Facebook pages offering counterfeit products bearing Ohio State Marks that were taken down by Counterfind.com for Ohio State.

Marks, including several on-demand printers with the same business model as RedBubble.[3] Cleveland

Dec. at ¶ 12.

### B.  Defendant RedBubble

1.  RedBubble's Business Model

RedBubble is in the business of offering to sell, having printed, selling and shipping t-shirts and

other merchandise with a wide variety of designs.  According to its website at redbubble.com, Defendant

has online tools that permit its clients to create and upload infringing and counterfeiting designs, and

start a "campaign" on Defendant's website.  Defendant claims that the designs are original creations by

"artists" who create a Redbubble shop and upload their original designs.  The designs printed by

Defendant are submitted to them or created online using Defendant's uploader tool.  Retail customers

order products from or through the Redbubble website, pay Redbubble for the products, and then

Redbubble arranges for the products to be manufactured, and ships the products to the customers in

packaging that prominently displays the RedBubble name and address.  Redbubble then pays its clients

(which it calls "artists"), an agreed-upon percentage of the sales price.  See True Dec. at ¶ 8 and Ex. M.

Defendant started their business in Australia in 2006 and in the U.S. in 2007, long after the dates of first

use when Ohio State began using the Ohio State Marks and registered them with the U.S. Patent &

Trademark Office ("USPTO") True Dec. at ¶7.

---

[3] *The Ohio State University v. Sean M. Ashbrook,* Case No. 2:99-cv-800 (S.D. Ohio 1999); *The Ohio State University v. Ground Hog Productions, et al.,* 2:99-cv-01272 (S.D. Ohio 1999); *The Ohio State University v. Ohio State Tire, LLC,* Case No. 2:09-cv-1108 (S.D. Ohio 2009); *The Ohio State University v. Thomas,* 738 F. Supp. 743 (S.D. Ohio 2010); *The Ohio State University v. Maple Street Press LLC,* Case No. 2:10-cv-890 (S.D. Ohio 2010); *The Ohio State University v. Touchdown Alabama Magazine,* Case No.  2:11-cv-472 (S.D. Ohio 2011); *The Ohio State University v. Park Farms Poultry,* Case No. 2:12-cv-219 (S.D. Ohio 2012); *The Ohio State University v. Eric Hennan d/b/a/ Visual Advantage LLC,* Case No. 2:13-cv-493 (S.D. Ohio 2014); *The Ohio State University v. Skreened Ltd., et al.,* 16 F. Supp. 3d 905 (S.D. Ohio 2014); *The Ohio State University v. Keith Brown d/b/a The Jersey Guy* 2:14-cv-2715 (S.D. Ohio 2014); *The Ohio State University v. Teespring, Inc.,* Case No. 2:14-cv-397 (S.D. Ohio 2014); *The Ohio State University v. CafePress Inc.,* Case No. 2:16-cv-01052 (S.D. Ohio 2016); *The Ohio State University v. SunFrog, LLC.,* Case No. 2:17-cv-229 (S.D. Ohio 2017); *The Ohio State University v. Lamp Apparel, LLC,* Case No. 2:17-cv-516 (S.D. Ohio 2017).

2.  <u>RedBubble's Misuse and Counterfeiting of the Ohio State Marks</u>

Defendant came to the attention of Ohio State in early 2017, and on April 12, 2017, Robert

Cleveland of Ohio State's in-house Trademark & Licensing Office wrote to Defendant objecting to their

offering on Defendant's website to make, sell and ship dozens and dozens of  designs that prominently

used and displayed identical copies of the Ohio State Marks. Cleveland Dec. ¶6. Defendant responded to

Mr. Cleveland by email on April 20, 2017, essentially telling Mr. Cleveland that it was Ohio State's

responsibility to identify each of the many infringements and counterfeits with the specific URL formats

and that RedBubble takes the position that it has no responsibility for offering to sell on its own website,

selling and shipping counterfeit and infringing products on the RedBubble website. Id.

On April 25, 2017, Ohio State's outside counsel wrote to RedBubble's General Counsel and

provided color photos of just a sampling of the many counterfeit Ohio State shirts on the Red Bubble

website, advising RedBubble's chief legal officer that RedBubble was selling counterfeits of the Ohio

State Marks, demanding that it cease and re-stating Ohio State's position is that it is RedBubble's

responsibility to police its own website to identify and remove infringing and counterfeit designs of the

Ohio State Marks.  Declaration of Joseph K. Dreitler ("Dreitler Dec.") at ¶ 4.

On April 26th Redbubble responded to Ohio State's counsel with a form response, which stated:

> We understand that the notice and takedown process can sometimes be difficult for rights
> holders. Our normal policy is to require rights holder to specifically identify with URLs
> the content they consider infringing. However, if it would be less burdensome for you,
> we can remove all of the designs on the search results pages, except for those that you do
> NOT consider infringing. This way, you won't have to provide specific URLs for each of
> the designs. If you would like to pursue this route, can you please identify just those
> design(s) on the search results page that can remain? We will remove everything else.

Dreitler Dec. at ¶ 5 and Exhibit B.

Thus, as early as April 2017, Ohio State had twice provided RedBubble with clear evidence that

RedBubble was offering to produce, had produced, sold and shipped counterfeit products using the Ohio

State Marks, and gave RedBubble actual notice of rampant counterfeiting and demanded that RedBubble

cease its activities going forward.  Nevertheless, RedBubble took the legally untenable position that it is

Ohio State's responsibility to police the RedBubble site for counterfeits and infringements.  Cleveland

Dec. ¶6, Dreitler Dec. ¶ 4. After having provided RedBubble with actual notice of its counterfeiting activities twice, Ohio State's counsel visited RedBubble's website on five (5) separate occasions over the next several months, to see if RedBubble had discontinued its offering to sell counterfeit products using the Ohio State Marks , namely May 3, 2017, July 10, 2017, August 23, 2017, October 31, 2017 and finally on November 14, 2017. On each occasion, the RedBubble website was still offering to make and sell counterfeit products bearing the Ohio State Marks. Dreitler Dec. ¶¶ 6-10.  Moreover, Ohio State's counsel went to the RedBubble website twice after this lawsuit was filed, on April 23, 2018 and June 1, 2018, and on both dates found counterfeit products being offered bearing the Ohio State Marks and counsel purchased a sampling of those products. Dreitler Dec. ¶¶ 11-12.

A recent decision from the U.S District Court for the Eastern District of Wisconsin, *H-D U.S.A., LLC and Harley-Davidson Motor Company Group, LLC v. SunFrog LLC d/b/a/ SunFrog Shirts and John Does,* Case No. 17-cv-711-JPS (April 12, 2018)[4] ("*Harley-Davidson*"), is directly on point and instructive.[5]  As with RedBubble, the Court found that "SunFrog runs a website where third parties can upload designs and logos, place them onto clothing, hats, mugs, or other items, and sell them.  SunFrog handles printing the goods and shipping them, and takes the majority of the profits from the sales." *Harley-Davidson* at 1.  As RedBubble asserts in this case[6], SunFrog claimed that Harley-Davidson was responsible for policing the SunFrog site for infringing and counterfeit products, and that it was sufficient that SunFrog would remove an item after Harley-Davidson provided notice to SunFrog of the infringement.  And as RedBubble asserts in this case[7], SunFrog also raised the affirmative defense set forth in the Second Circuit's 2010 decision in *Tiffany (NJ) Inc. v. eBay, Inc,*, 600 F.3d 93 (2d Cir. 2010), in which the Second Circuit concluded that as an online marketplace, eBay was not liable for contributory

---

[4] A copy of the Harley-Davidson decision is attached as Exhibit N to the Declaration of Mary R. True ("True Dec.").
[5] As noted above, the defendant in the *Harley-Davidson* case, SunFrog LLC, is an on-demand printer that was sued by Ohio State for counterfeiting and trademark infringement in 2017, and subsequently entered into a consent judgment with Ohio State.
[6] RedBubble Answer and Affirmative Defenses, Doc. #9, Fourteenth Affirmative Defense [PAGEID # 67].
[7] RedBubble Answer and Affirmative Defenses, Doc. #9, Second and Third Affirmative Defenses [PAGEID #65].

trademark infringement because it did not have a particularized knowledge as to which of its online sellers were selling counterfeit Tiffany jewelry. Id. at 107.

Judge Stadmueller was not convinced. After noting the obvious distinction that *Tiffany v. eBay* addressed eBay's liability for contributory trademark infringement, and not the direct trademark infringement in which SunFrog was engaged, he concluded that SunFrog was "apparently hoping to defend its business model on legal theories of dubious value. In other words, although eBay sought to defend its reputation as a safe place to do business, SunFrog battled for its right to exploit infringement for profit. . . Rather than roll up its sleeves from the start to develop and implement anti-infringemnt practices that acutally worked, SunFrog tried to avoid liability entirely by pointing the finger at everyone else involved. But trademark law is practical and its doctrines fit the realties of the marketplace. In law, as in business, cleverness and technicality are poor substitutes for hard work and honesty." *Harley-Davidson* at 72-73. The Court concluded that SunFrog had willfully counterfeited Harley-Davidson's trademarks, and awarded statutory damages of $19,200,000. Id. at 70.

## III.   **LEGAL ARGUMENT**

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "`must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "`if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson,* 477 U.S. at 248). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts").

## A. Trademark Counterfeiting Under the Lanham Act

Trademark counterfeiting is the most extreme form of trademark infringement. "A claim for trademark infringement under [15 U.S.C.] §1114 requires a showing of the following: (1) ownership of a valid, protectable trademark; (2) that Defendant[s] used the mark in commerce and without the registrant's consent; and (3) there is a likelihood of consumer confusion." *HER, Inc. v. RE/MAX First Choice LLC,* 2008 U.S. Dist. LEXIS 40164, *21 (S.D. Ohio 2008) (citing *Too, Inc. v. TJX Cos.*, 229 F.Supp. 2d 825, 829 (S.D. Ohio 2002)). The same test of likelihood of confusion applies to claims for infringement under 15 U.S.C. §1114 and for unfair competition under 15 U.S.C. §1125. See, *Audi AG and Volkswagen of America, Inc. v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (noting that "the likelihood of confusion between the two marks" is the test for claims for trademark infringement, unfair competition or false designation of origin).

A counterfeit trademark is a spurious trademark that is identical to, or substantially indistinguishable from, a registered trademark. Lanham Act § 45, 15 U.S.C. § 1127. According to Professor McCarthy, "…counterfeiting is "hard core" or "first degree" trademark infringement and is the most blatant and egregious form of "passing off." McCarthy on Trademarks § 25.10. 15 U.S.C. § 1116(d)(1)(B) further defines "counterfeit mark" for purposes of civil liability, as a counterfeit of a mark that is registered in the USPTO for such goods, whether or not the person who used it knew that the mark was registered.

As McCarthy notes at §25:10, "The test of "identical with, or substantially indistinguishable from" requires a closer degree of similarity than is required for traditional trademark infringement or unfair competition". The majority view is that if the respective goods are so similar as to be regarded as "counterfeit", then a likelihood of confusion is present, thus dispensing with the need for the *Frisch's* analysis of likelihood of confusion. As Judge Frost noted in *Skreened,* "[w]here, as here, the infringing products are counterfeits, likelihood of confusion may be presumed." *Skreened, supra,* 16 F.Supp. 3d at 912, citing *Coach, Inc. v. D&N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3 (E.D. Mich. July 11, 2011). See also, *Polo Fashions, Inc. v. Craftex, Inc.* 816 F. 2d 145, 148 (4th Cir. 1987); *Gucci*

*America, Inc. v. Duty Free Apparel, Ltd.* 286 F. Supp. 2d 284, 287 (S.D. N.Y. 2003); *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 498 (S.D. N.Y. 2008); *Chanel, Inc. v. Veronique Idea Corp*., 795 F. Supp. 2d 262, 267 (S.D. N.Y. 2011).

Under 15 U.S.C. § 1114, liability for counterfeiting attaches to any person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. In this case, RedBubble is offering for sale, selling, advertising and distributing the products at a minimum. To the extent RedBubble argues that its "independent artists" are responsible for the counterfeit products, or that it only acts as an eBay-style marketplace, such arguments have been thoroughly rejected in this District and in this Circuit.  In *Lorillard Tobacco Co. v. Amouri's Grand Foods*, 453 F.3d 377 (6th Cir. 2006), the Sixth Circuit noted:

> We . . find . . no reason to restrict liability to those who actually create, manufacture or package the infringing items.  Contrary to Grand Foods' position, while a showing of "likelihood of confusion" does require that consumers mistakenly believe that the infringing goods were "sponsored or otherwise approved" by the plaintiff (*Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 599 (6th Cir.1991)), there is no further requirement that those goods must have been produced by the defendant. Indeed, all the statutes demand is that the defendant have "used" the goods "in commerce" (Sections 1114(1)(a) and 1125(a)), and we can think of no clearer "use" of goods "in commerce" than offering them for sale (*see El Greco Leather Prods. Co. v. Shoe World, Inc.,* 806 F.2d 392, 396 (2d Cir. 1986) and Section 1127). In sum, as the Seventh Circuit has put it concisely, "[s]ellers bear strict liability for violations of the Lanham Act" (*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143, 1152 n. 6 (7th Cir.1992)), and we too decline to excuse Grand Foods from liability due either to its ignorance or to its role as a retailer rather than producer of the counterfeit goods (*see El Greco,* 806 F.2d at 396).

*Lorillard Tobacco*, *supra,* 453 F.3d at 381.

1. <u>This Court has long recognized that Ohio State is the owner of strong, valid and protectable trademarks</u>

The Ohio State Marks, as set forth in Ex. A-K of the True Dec., are strong, they have been used for decades only by Ohio State and its licensees, and they are recognized by the public as indicating the source of goods in The Ohio State University throughout the State of Ohio and nationwide.  True Dec. at

3.  The Fifth Circuit and Courts in this district have found that Ohio State has enforceable rights in not only its registered trademarks, but in numerous common law trademarks of Ohio State that point to a connection or affiliation with Ohio State athletics. In 1999, Judge Graham issued a temporary restraining order against a calendar that used numerous common law trademarks of Ohio State in *The Ohio State University v. Sean M. Ashbrook,* Case No. C2-99-800.  Similarly, in *The Ohio State University v. Ground Hog Productions, et al.* (2:99-CV-1271), Judge Sargus issued a temporary restraining order against the defendant's use of various Ohio State trademarks in connection with a website. In *The Ohio State University v. Keith Antonio Thomas, et al.,* 738 F. Supp. 2d 743 (SD Ohio 2010) , Judge Frost found that Ohio State's registered and common law trademarks are "readily accepted by the public as hallmarks of Ohio State athletics."  The Court then permanently enjoined the Defendant from "infringing, or falsely designating the origin of the Ohio State Marks, from using the Ohio State Marks  in commerce in any way and from injuring Ohio State's reputation."   Likewise, in *The Ohio State University v. Maple Street Press LLC*, Case No. 2:10-cv-890, Judge Frost permanently enjoined the Defendants from "use[ing] the Ohio State Trademarks or any other words or signs or symbols or device that suggest an affiliation, approval, license, connection, sponsorship or endorsement with Ohio State".  Judges in this District have routinely approved consent orders recognizing the distinctiveness and strength of the Ohio State Trademarks.[8]

        2.  <u>RedBubble has engaged in willful trademark counterfeiting</u>

The facts are undisputed. RedBubble is not, and never has been, licensed by Ohio State to use any Ohio State Marks.  VanBrimmer Dec. at ¶ 5; Cleveland Dec. at  ¶ 4.  RedBubble has continued to offer counterfeit products for sale on its website long after Ohio State had put it on actual notice of it objections.  Dreitler Dec. at ¶¶8-10.  Attached as Exhibits A-K of the True Dec. are certified copies of

---

[8]  See, e.g., *The Ohio State University v. Keith Brown d/b/a The Jersey Guy* 2:14-cv-2715 (S.D. Ohio 2014); *The Ohio State University v. Teespring, Inc.,* Case No. 2:14-cv-397 (S.D. Ohio 2014); *The Ohio State University v. CafePress Inc.,* Case No. 2:16-cv-01052 (S.D. Ohio 2016); *The Ohio State University v. SunFrog, LLC.,* Case No. 2:17-cv-229 (S.D. Ohio 2017); *The Ohio State University v. Lamp Apparel, LLC,* Case No. 2:17-cv-516 (S.D. Ohio 2017).

USPTO registrations owned by Plaintiff, covering the identical goods in this lawsuit – t-shirts and stickers.

And there can be no doubt that even the most casual observer (as most purchasers of t-shirts are) would view the designs on Defendant's shirts as "identical with, or substantially indistinguishable from" the well-known Ohio State Marks. Attached as Exhibit A to the VanBrimmer Dec. are photographs of licensed t-shirts of Ohio State bearing the Ohio State Marks. Attached as Exhibits C, I, L and O to the Dreitler Dec. are photographs of t-shirts and stickers that were offered for sale and/or sold on Defendants' website. Examples of authentic and counterfeit products are also depicted below for the Court's convenience:

Authentic Product  (Ex. A to Van Brimmer Dec.)   Counterfeit Product (from Dreitler Dec.)




Ex. C




Ex. L





Ex. O





Ex. I-3





Ex. I-2

 

Ex. I-7

The evidence (Dreitler Dec. ¶¶3-12; True Dec. ¶¶4-6) establishes that RedBubble offered for sale on its own website of www.redbubble.com, sold and charged Ohio State's counsel on their credit card for counterfeit products bearing the Ohio State Marks and shipped those counterfeit products in packages bearing the RedBubble name with RedBubble's address, in interstate commerce, to Ohio State's counsel. That is all that is required to establish liability for counterfeiting. *Lorillard Tobacco Co. v. Amouri's Grand Foods*, 453 F.3d 377, 381 (6th Cir. 2006).

    Moreover, having been put on actual notice by Ohio State that Defendant was offering to have produced, sell and ship infringing and counterfeit goods bearing the Ohio State Marks in April 2017, Defendant continuing to offer, promote, have manufactured, sell and ship infringing and counterfeit products bearing Ohio State Marks after being put on notice was "willful". As Judge Barrett stated in *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880(SD Ohio 2007):

> Under the Lanham Act, infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant "had knowledge that its actions constitute an infringement." *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852 (E.D.Mich.2006), quoting *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2nd Cir.1992). A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness. Id., citing *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380-81 (7th Cir. 1988) (willfulness may be demonstrated where infringer is provided notice of its infringing conduct). In addition, a court may infer willfulness from defendant's default. *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1313 (S.D.Fla.2003) (finding willfulness when "Plaintiffs repeatedly contacted

Defendants regarding their infringing conduct and Defendants ignored
Plaintiffs communications"); *Louis Vuitton Malletier & Oakley v. Veit,* 211
F.Supp.2d 567, 583 (E.D.Pa.2002) ("Willfulness can be inferred by the fact
that a defendant continued infringing behavior after being given notice.").

Given the willfulness of RedBubble's actions and fact that RedBubble has engaged in
counterfeiting, for purposes of its Lanham Act claims Ohio State hereby elects to receive an award of
statutory damages to be determined by this Court in lieu of actual damages. 15 U.S.C. § 1117(c). The
Lanham Act provides the following outer boundaries for statutory damages awards:

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or
services sold, offered for sale, or distributed, as the court considers just; or
(2) if the court finds that the use of the counterfeit mark was willful, not more than
$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or
distributed, as the court considers just.

**B. Trademark Infringement, Passing Off and Unfair Competition Under the Lanham Act**

In the event that the court does not find that the items depicted on Exhibits C, I, L and O to the
Dreitler Dec. are counterfeit, Plaintiff alternatively argues that those items are willful infringements of the
Ohio State Marks.

As noted above, there is no dispute that Ohio State owns valid federal registrations for the
trademarks that Defendant has used in commerce without Ohio State's consent. Thus, in this case as in
others, "the touchstone of liability under §1114 [and, in this case, also §1125(a)] is whether the
defendant's use of the disputed mark is likely to cause confusion among consumers regarding the
origin of the goods offered by the parties." *PACCAR Inc. v. TeleScan Technologies, LLC,* 319 F. 3d
243, 249 (6th Cir. 2003).

In assessing the likelihood that Defendants' use of the Ohio State Marks will confuse
consumers, the Court should consider the following factors:

1. the strength of the plaintiffs mark;
2. the relatedness of the goods;
3. the similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. degree of purchaser care;
7. defendant's intent in selecting the mark; and

      8.   the likelihood of expansion in selecting the mark.

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 648 (6th Cir.), cert. denied, 459 U.S. 916 (1982). A party claiming infringement need not show all, or even most, of these factors in order to prevail. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.1988). However, each of the relevant factors present favors Ohio State.

      1.   <u>Strength of the marks</u>

In *Homeowners Group v. Home Marketing Specialists*, 931 F. 2d 1100 (6th Cir. 1991), the Sixth Circuit noted "A mark is strong if it is highly distinctive, i.e., if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both." (quoting 3A R. Callmann, *Unfair Competition, Trademarks & Monopolies,* § 20.43, at 345 (4th ed. 1983)). The stronger the mark, all else equal, the greater the likelihood of confusion. There is no doubt that the public readily accepts the Ohio State Marks as a hallmark of the Ohio State University given the length of use, the amount of use and publicity that ties the Ohio State Marks to Plaintiff. As noted above, the Ohio State Marks have long been recognized by courts in this District and others as strong and distinctive, indicating source solely in Ohio State.

      2.   <u>Relatedness of the goods</u>

The Sixth Circuit has explained that the relatedness factor involves three basic criteria: "First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally, if the products are unrelated, confusion is highly unlikely." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 797 (6th Cir. 2004) (quoting *Kellogg Co. v Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003)). Thus, the appellate court has noted, "[t]he relatedness inquiry therefore focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source, or are somehow connected with or sponsored by a common company." *Id.* (quoting *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d

623, 633 (6th Cir. 2002) (quotation omitted)). There is no question here that the goods involved in this litigation are highly related, indeed, they are identical. Defendant's counterfeit goods are identical to and compete with products sold by Plaintiff's licensees. Cleveland Dec. at ¶ 10; VanBrimmer Dec. at ¶ 9. This factor favors Ohio State.

### 3. Similarity of the Marks

To determine the similarity of trademarks, this Court must ask "whether the mark 'will be confusing to the public when singly presented.' " *Wynn I*, 839 F.2d at 1188, quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (l0th Cir. 1983). The test under this factor is the consumer's perception when presented with the challenged product alone, rather than a side-by-side comparison. *Id.*, quoting *Levi-Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980). The Sixth Circuit has also noted that while similarity alone does not compel a determination that marks are likely to be confused, "it is a factor entitled to considerable weight." *Champions Golf Club*, 78 F.3d at 1119 (citations omitted). Indeed, the overall commercial impression of the marks Defendant is using is identical to the Ohio State Marks. As McCarthy states, "[T]he phrase 'commercial impression' is used to denote the ultimate conclusion of similarity or dissimilarity of marks resulting from a comparison of sight, sound and meaning." J. Thomas McCarthy, Trademarks and Unfair Competition, § 23:21(4d ed. 2013). Moreover, as the Sixth Circuit noted in *Homeowners Group*, supra, 931 F. 2d at 1107 n4 "In some cases it may be unnecessary to undertake an extended analysis to infer confusion, e.g., where there is no difference between the marks of directly competitive goods/services. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979)." This is one of those cases.

The trademarks being used by Defendant are identical to and ARE the Ohio State Marks in the same logos, font style and school colors. Defendant has appropriated these marks in their entirety to offer to sell and to sell clothing competitive to that sold to the public by Ohio State's authorized licensees. The degree of similarity of the marks used by Defendant and the Ohio State Marks could not be greater. As a result, this factor clearly points to a likelihood of confusion.

4. <u>Evidence of actual confusion</u>

While proof of actual confusion is not necessary to obtain injunctive relief, *Frisch's Restaurant Inc., supra,* 759 F.2d at 1267, because the marks in this case are identical, actual confusion is presumed. *Skreened, supra,* 16 F. Supp. 3d at 912, citing *Coach, Inc. v. D&N Clothing, Inc.*, No. 10-12813, 2011 WL 2682969, at *3 (E.D. Mich. July 11, 2011). If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity. *Wynn Oil,* 839 F.2d at 1189. This court can look at the photos of the genuine licensed products bearing the Ohio State Marks and those sold by Defendant. It would be impossible for someone seeing a person wearing Defendant's counterfeit products to know that they were not legitimate product. As the Sixth Circuit stated in *Champions Golf Club, Inc. v. Champions Golf Club,* 78 F. 3d 1111, 1119-20 (6th Cir. 1996): "Accordingly, the *Esercizio* [*Esercizio v. Roberts*, 944 F. 2d 1235, 1242 (6th Cir. 1991)] court concluded that it was unimportant whether the actual purchaser of a knockoff of a Ferrari automobile or a Rolex watch was fully aware that he was purchasing a knockoff; the potential confusion among nonpurchasers was just as significant as that among purchasers. *Esercizio*, 944 F.2d at 1245. This interpretation is necessary to protect against the cheapening and dilution of the genuine product, and to protect the manufacturer's reputation. Id. at 1244."  This factor favors Ohio State.

5. <u>Marketing channels used</u>

Defendant and Ohio State's licensees both use the internet to promote and sell their products to persons seeking to buy products bearing the Ohio State Marks, VanBrimmer Dec. at ¶ 14, which, as the Sixth Circuit has noted, "exacerbates the likelihood of confusion."

> [E]ntering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership.

*Audi AG*, *supra,* 469 F.3d at 544 (quoting *PACCAR Inc. v. TeleScan Tech., L.L.C.,* 319 F.3d 243, 252 (6th Cir. 2003).  Accordingly, this factor favors Ohio State.

6. <u>Likely degree of purchaser care</u>

When products "are distributed in the same environments, it is likely the case that buyers exercise comparatively little care in selection and the likelihood of confusion is accordingly somewhat higher." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.2d 504, 520 (6th Cir. 2007). Moreover, when the designs on the products are identical, as here, "even a knowledgeable purchaser might incorrectly assume that he is purchasing the product of another party." *Id.* As the Sixth Circuit stated in *PACCAR*, *supra*, 319 F. 3d at 254, "if marks are similar, as they are here, 'then purchaser care will decrease the likelihood of confusion only minimally.'" *Daddy's Junky Music Stores*, 109 F.3d at 286 ("That is, confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [product] he is buying to assume nonetheless that the seller is affiliated with or identical to the other party."); *see also Induct-O-Matic Corp., supra*, 747 F.2d at 364-65 ("Being skilled in their own art does not necessarily preclude their mistaking one trademark for another when the marks are as similar as those here in issue, and cover merchandise in the same general field.") (citation omitted). Accordingly, this factor favors Ohio State.

7. <u>Defendant's intent in selecting the mark.</u>

As the court stated in *Esercizio v. Roberts*, 944 F. 2d 1235, 1242 (6th Cir. 1991), "[The] intent of [a party] in adopting [another's mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff,] that fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Frisch's Restaurants*, 670 F.2d at 648 (emphasis in original) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980))." Moreover, in *General Motors v. Keystone Automotive Industries*, 453 F. 3d 351, 357 (6th Cir. 2006), the court said, "Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood of confusion, believes that his copying may divert some business from the senior user." In *Daddy's Junky Music Stores, Inc.*, 109 F.3d 275 at 286, the Sixth Circuit stated, "Direct evidence of intentional copying is not necessary to prove intent. See *Wynn Oil II*, 943 F.2d at 603. Rather, the use

of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying.   An "intent to infringe can be shown by circumstantial evidence." *Wynn II,* 943 F.2d at 603.

The goods sold by Defendant are identical to the goods sold by Ohio State, those goods are sold online much like many authorized goods bearing Ohio State Marks are sold and they are directed to the exact same customer base as the clothing and related goods sold by Ohio State, namely, those who want to show a public allegiance to and/or support of The Ohio State University, and Defendant has done so with actual knowledge of Ohio State's trademark rights. Defendant was on notice, having been advised in writing by Ohio State in April 2017, almost eight (8) months prior to the filing of this lawsuit on two separate occasions, but RedBubble never ceased the offering for sale and sale of such counterfeit goods. The attached declarations and exhibits establish those facts are not in dispute. Defendant offers on its website to have printed, to sell and to ship clothing and related goods that are exact copies of goods sold by Ohio State's licensees. The goods Defendant has made and sells bear exact copies of registered trademarks of Ohio State and use the same font style, logos and school colors so that anyone who saw them would believe there was a connection, affiliation, sponsorship or endorsement by Ohio State. Defendant has offered to sell, and has manufactured, sold, shipped and continued to sell such goods, including counterfeit clothing, among other products, to Ohio State's counsel more than a year after being advised in writing by both Ohio State and Ohio State's counsel to cease and desist. See Dreitler Dec. ¶¶6-12

Accordingly, there can be no doubt of Defendant's intent to trade upon the Ohio State Marks. Defendant's clothing and other goods would have no value absent the use of the Ohio State Marks. RedBubble's products compete directly against legitimate, licensed goods bearing the Ohio State Marks. After having been requested to cease and desist by Ohio State twice in April 2017, there is no doubt about RedBubble's intent.  It has adopted total knock-offs of the Ohio State Marks on its competitive goods for the purpose of profiting from the sales of such products. VanBrimmer Dec. at ¶¶4-9; Cleveland Dec.  at ¶¶7-11.

There are no material issues of fact -- Defendant has not attempted to show that Ohio State's federal trademark registrations of the Ohio State Marks are invalid, nor could it; Defendant has not attempted to show that it has priority of use over Ohio State in using the Ohio State Marks, nor could it; Defendant has not attempted to locate any evidence that shows their clothing and other goods bearing Ohio State Marks are either licensed or approved by Ohio State or that they do not directly compete with identical products sold by Ohio State and its licensees, nor could it; Defendant has not attempted to locate any evidence that suggests that its offering on its own website products bearing the identical Ohio State Marks, having clothing and related products made bearing counterfeit Ohio State Marks and offering to/selling them and shipping those counterfeit products to the same customers who seek genuine Ohio State licensed products, is anything other than a commercial enterprise which directly competes with Ohio State's business, nor could it. There is no additional discovery required on these issues or any others to find Defendant liable for trademark infringement, unfair competition, passing off and counterfeiting. Accordingly, Ohio State is entitled to summary judgment on each and every one of its claims, namely its claims of trademark infringement, unfair competition, passing off, counterfeiting and violation of right of publicity.[9]

### C. Violation of O.R.C. § 2741.01 et seq. Right of Publicity of Urban Meyer

Urban Meyer is a living individual and a resident of the State of Ohio, and assigned his rights of publicity and persona to Ohio State pursuant to O.R.C. § 2741.04 on May 31, 2012. Meyer assigned rights in his name, voice, signature, photograph, image, likeness, or distinctive appearance (the "Meyer

---

[9] The test for unfair competition under § 1125(a) is identical to that for trademark infringement under 15 U.S.C. § 1114, to wit, whether there is a likelihood of confusion among consumers. *Daddy's Junky Music v. Big Daddy's Family Music,* 109 F. 3d 275, 288 (6th Cir. 1997) The analysis of an unfair competition claim under Section 43(a) of the Lanham Act for unfair competition and passing off and Ohio law is the same as that for a claim of infringement of a registered trademark under the Lanham Act. *ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d 915, 920 (6th Cir.2003) ("Because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, our discussion of the federal trademark claims will therefore encompass the state trademark claims as well"); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 626 n. 2 (6th Cir.2002) ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act"); *Victoria's Secret Stores v. Artco Equip. Co.,*194 F.Supp.2d 704, 724 n. 8 (S.D.Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes").

Persona"). VanBrimmer Dec. at ¶ 12. The Meyer Persona has great commercial value and Plaintiff is licensing the Meyer Persona to various authorized licensees who are selling goods and services bearing the Meyer Persona. Id.

Defendant has been offering to sell and selling commercial products, namely t-shirts, bearing the Meyer Persona without authorization of either Plaintiff or Urban Mayer, in violation of O.R.C. § 2741.07. A search of the RedBubble website prior to the filing of this lawsuit for "Urban Meyer" displayed over one hundred images. Dreitler Dec. at ¶ 8 and Ex. G:



As a result, Ohio State is entitled to a permanent injunction against Defendants under O.R.C. § 2741.07, and other remedies available attributable to the unauthorized use of the Meyer Persona for a commercial purpose, including statutory damages, costs and attorney's fees.

### D. Ohio State is Entitled to Injunctive Relief under 15 U.S.C. § 1116(a)

Based on the Defendant's violation of the Lanham Act, Ohio State also requests that this Court enter a permanent injunction enjoining the Defendant from further infringing conduct. Courts may issue permanent injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of the Lanham Act. 15 U.S.C. § 1116(a). A plaintiff seeking a

permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) that there is no adequate remedy at law; (3) that considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc., et al. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *Ebay Inc.,* 547 U.S. at 391.

In this case, Ohio State is likely to suffer irreparable injury if the Defendant is not permanently enjoined from using the Ohio State Marks. The irreparable injury factor is established in trademark cases by showing that the defendant's use of a trademark is likely to cause confusion. *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). As noted above, there is no question that current and future consumers may incorrectly assume that Defendant's infringing and counterfeit products are associated with, endorsed or sponsored by Ohio State. Therefore, the first factor weighs in favor of a permanent injunction.

Second, there is no adequate remedy at law for the Defendant's infringing conduct. As the Sixth Circuit has explained, there is no adequate remedy at law where there is a potential future harm from infringement. *Audi AG*, 469 F.3d at 550. Defendant repeatedly ignored Ohio State's demands to cease the use of the Ohio State Marks and continued to sell products bearing the Ohio State Marks even after this lawsuit was filede. Absent a permanent injunction, there is the potential that the Defendant will continue to use the Ohio State Marks and likely cause confusion among the public about the origination of its good and services. Therefore, the second factor weighs in favor of a permanent injunction.

Third, the Defendant will not incur any hardship as a result of the issuance of a permanent injunction requiring that it comply with the Lanham Act. A defendant does not suffer any hardship in complying with the Lanham Act. Id. Therefore, the third factor weighs in favor of a permanent injunction.

Finally, the issuance of a permanent injunction in this case is in the public interest. Trademark enforcement and prevention of customer confusion are inherently in the public interest. *Park'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 198 (1985); see also *Lorillard Tobacco Co.*, *supra,* 453 F.3d at

383 (recognizing that a permanent injunction in cases involving the Lanham Act serves "two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark"). Therefore, the fourth factor weighs in favor of a permanent injunction.

OhioState also requests that this Court order that the Defendant be required to file a written report detailing its compliance with the permanent injunction. A court may direct a defendant to file such a report under 15 U.S.C. § 1116(a).

### E.     This Case is an Exceptional Case under 15 U.S.C. § 1117

Section 1117(a) of the Lanham Act also permits the recovery of attorneys' fees for prevailing defendants in "exceptional cases." 15 U.S.C. § 1117(a). As this Court stated in *Hua-Cheng Pan v. Kohl's Department Stores*, Case No. 2:12-cv-1063, "[T]he Supreme Court has determined that "an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (interpreting an analogous fee-shifting provision in the Patent Act). The courts of appeal that have considered the issue after *Octane Fitness* have concluded that an exceptional case under the Lanham Act is one that (1) in considering both governing law and facts of the case, stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated in an unreasonable manner. *Baker v. DeShong,* 821 F.3d 620, 624 (5th Cir. 2016); *Georgia-Pac. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 720 (4th Cir. 2015); *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 314-15 (3d Cir. 2014).Willfulness can be inferred when an infringer is presented with a cease and desist and continues to engage in the infringing conduct. *Louis Vuitton Malletier and Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa. 2002) (finding that continued use of marks after notification of possible penalties constituted willful disregard of the legal system and plaintiff's rights); *Discovery Communications, Inc. v. Animal Planet, Inc.,* 172 F.Supp.2d 1282, 1292 (C.D.Cal.2001). Moreover, a finding of willful infringement "also bears on the question of attorneys'

fees, satisfying the exceptionality requirement for such an award under 15 U.S.C. § 1117(a)." *A.C. Legg Packing Co., Inc. v. Olde Plantation Spice Co., Inc.*, 61 F. Supp. 2d 426 (D. Md. 1999).

In this case, Defendant's conduct in selling counterfeits of Ohio State products and forcing Ohio State to file this lawsuit and bring a motion for summary judgment are indefensible and objectively unreasonable both as to the law and the facts. Had Defendant responded to Plaintiff and acknowledged that it was selling counterfeits and agreed to and promptly ceased the offering and sale of such products in April 2017, Ohio State and Defendant would not be before this Court. Regrettably, Defendant did not do that and has continued to deliberately and willfully counterfeit and infringe multiple Ohio State Marks on identical goods long after having been discovered and demanded to cease such activities by Ohio State, and Defendant has raised multiple affirmative defenses that are irrelevant to this case of trademark counterfeiting and direct infringement. Their conduct continued even after having received – and acknowledging – Ohio State's multiple notices of counterfeiting and infringement. And their infringement continues.[10] Such flagrant disregard of Ohio State's rights in its valuable trademarks certainly qualifies as deliberate and willful. The holding of *Octane Fitness*, is that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 134 S. Ct. at 1756. Under that standard Ohio State is entitled to an award of its attorneys' fees in pursing this matter.

**IV. CONCLUSION**

Under the overwhelming weight of the case law in this district, this circuit and throughout the country, and based on the undisputed facts, this Court does not need to do any further analysis. Defendant is knowingly using the same Ohio State Marks on the identical products sold to identical customers through identical trade channels of distribution. Accordingly, for the reasons set forth herein, this Court should find that there is a likelihood of confusion regarding Defendant's use of the Ohio State Marks; that Defendant had actual knowledge of Ohio State's trademark rights in the Ohio State Marks,

---

[10] Dreitler Dec. at ¶¶ 8-10.

that Defendant's actions were willful and that Defendant engaged in counterfeiting of the Ohio State Marks.

In addition, Defendant offered on its website to have produced, sell and ship goods bearing the name and/or likeness of Ohio State's football coach, Urban Meyer, in violation of his rights of persona in O.R.C. § 2741.01 (B)(2) which prohibits the use of a an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, "…for advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities…".

As Learned Hand said: "A trademark is indeed often spoken of as a monopoly; but in fact it is only part of the protection of the owner's business from diversion to others by means of deceit." *Artype v. Zapulla*, 228 F.2d 695, 696 (2d Cir. 1956).  A defendant is required to adopt and use trademarks that do not infringe on any third party. Trademark law exists precisely to prevent people and businesses like Defendant from profiting from another's reputation, goodwill and quality. In *Windmill Corp. v. Kelly Foods,* 76 F.3d 380 (6th Cir. 1996), the Court quoted a century old decision that is as relevant today as it was in 1910:

> It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public--that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions. *Florence Mfg. Co. v. J.C. Dowd & Co*., 178 F. 73, 75 (2d Cir.1910); accord *Hemmeter Cigar Co. v. Congress Cigar Co*., 118 F.2d 64, 70 (6th Cir.1941).

For all of the foregoing reasons, Plaintiff respectfully request that this Court grant its motion for summary judgment as to Plaintiff's claims, issue an order finding that there is both counterfeiting and willful infringement of the Ohio State Marks and award Plaintiff statutory damages for Defendant's infringement, passing off, unfair competition, counterfeiting and violation of the rights of publicity of Urban Meyer, its fees incurred in bringing this litigation and a permanent injunction enjoining the

Defendants from using the Ohio State Marks or any other words or signs or symbols or device that

suggest an affiliation, approval, license, connection, sponsorship or endorsement with Ohio State.

Date:  August 15, 2018                    Respectfully submitted,


                                          Michael DeWine
                                          Ohio Attorney General


                                          Joseph Kershaw Dreitler, Trial Attorney
                                          (0012441)
                                           Mary R. True   (0046880)
                                          DREITLER TRUE LLC
                                          (513)404-5875
                                          jdreitler@ustrademarklawyer.com
                                          mtrue@ustrademarklawyer.com


                                          Special Counsel for Plaintiff
                                          The Ohio State University

## **CERTIFICATE OF SERVICE**

This is to certify that on this 15th day of August, 2018, a copy of the foregoing was served upon counsel of record via the Court's electronic filing and notification system Copies of this document may be accessed through the Court's electronic filing system.

/Mary R True/_____
Mary R. True