**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OHIO STATE UNIVERSITY,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Case No. 2:17-cv-01092-ALM-CMV** |
| | : | **Judge Algenon L. Marbley** |
| **REDBUBBLE, INC.,** | : | **Magistrate Judge Chelsey M. Vascura** |
| | : | |
| **Defendant** | : | |

---

**<u>PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM IN OPPOSITION TO DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Page

I.  **Redbubble does not dispute any material facts and concedes fundamental elements of OSU's claims.** ............................................................................................. 1

Summary of Argument: Redbubble does not dispute any of the following: OSU owns strong protectable trademarks; the products identified in OSU's Motion were purchased on Redbubble's website; there is a likelihood of confusion between OSU's genuine goods and the goods offered on Redbubble's website; the images and products identified in OSU's Motion are counterfeit and infringe upon OSU's trademarks; Redbubble processes all orders for the products on its website; Redbubble software causes these products to be printed, created and delivered to consumers; the products purchased on Redbubble's website are delivered to consumers in Redbubble packaging, with Redbubble invoices, Redbubble stickers, Redbubble hangtags, Redbubble care instructions and a Redbubble return address.

II.  **Redbubble cannot subcontract itself out of the Lanham Act.** ...................................... 3

Summary of the Argument: Redbubble's argument that it does not infringe upon OSU's trademarks because it has contracted out its printing and shipping operations fails to recognize that the likelihood of confusion test is based upon the perception of the consumer, not Redbubble's behind-the-scenes contracts and automated software. *Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991). Trademark law protects against confusion at the point of sale, in the post-sale context and all points in between. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1244, (6th Cir. 1991). Redbubble causes the printing, sale and shipping of counterfeit products. These actions, along with Redbubble's repeated use of its own mark on the counterfeit products and in all communications with the consumer, establish the perception that the consumer is buying from Redbubble. In addition, the Sixth Circuit has already rejected the argument that persons who do not manufacture or ship infringing products cannot be found liable. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006).

III.  **The *Tiffany* defense does not apply to this case** ............................................................. 6

Summary of the Argument: The *Tiffany* defense raised by Redbubble is a defense for on-line intermediaries in contributory infringement cases.  OSU has not brought any claim for contributory infringement. OSU has only brought claims against Redbubble for direct infringement.  In *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93 (2d Cir. 2010), the Second Circuit applied contributory infringement liability to online intermediaries who merely bring buyers and sellers together  in two circumstances: "first, if the service provider intentionally induces another to infringe a trademark, and second, if the service provider continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement." *Id*. First, Redbubble is more than just an on-line intermediary because it causes the creation of the products and affiliates itself with the products sold on its website. Second, Redbubble is doing more than inducing someone else to infringe OSU trademarks. Redbubble itself is directly infringing upon OSU's trademarks by causing the sale, creation and shipping of counterfeit products to consumers.

IV.   **Redbubble "used" OSU's trademarks**. ......................................................................... 7

Summary of Argument: Redbubble mischaracterizes *Tiffany*, 600 F. 3d 93 (2d Cir. 2010), to stand for the principle that all on-line intermediaries do not *use* trademarks that third persons upload to their websites. The *Tiffany* case merely established liability for certain on-line intermediaries that are not using a trademark in violation of the law, but induce or have knowledge of someone else's use. Here, Redbubble is directly using OSU's trademarks. The Lanham Act prohibits "*use* in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . ." 15 U.S.C. § 1114(1) (emphasis added).

A.     **Redbubble is a seller** ............................................................................................ 8

Summary of Argument: Consumers are not visiting Redbubble's site to purchase goods from an individual artist's shop; they are buying goods from Redbubble. *See 3 Point Dist., LLC v. CafePress.com, Inc.*, 2008 WL 11337274, at *6 (C.D. Cal. Feb. 25, 2008). Courts have imposed liability for so-called "transactional intermediaries" where (i) the intermediary, not the true supplier of the goods, was communicating with the consumer,  (ii) customers of the defendant believed they were doing business with the intermediary, and (iii) invoices for the infringing goods were paid to the intermediary instead of to the real supplier of the goods. *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 2014 WL 12558573 at *18–20 (E.D.N.Y. Mar. 8, 2014). Redbubble is the key point of contact for consumers in the sale of its counterfeit products, managing the sale, preparing the invoice, communicating with the consumer regarding the status of the sale and delivery, causing the printing and shipping of the products and handling the returns.

B.     **Redbubble performed "most of the legwork" for its counterfeit sales.** ......... 11

Summary of the Argument: Redbubble is not the first print-on-demand company to wrongly argue that it merely brings buyers and sellers together like eBay in the *Tiffany* case. This case is very similar to *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1031 (E.D. Wis. 2018), where the Court found that a print-on-demand company was not like eBay because it directly infringed on Harley–Davidson's trademark and did "most of the legwork in the transaction for an infringing item."  "Recall that eBay doesn't make anything." *Id.* at 1031. Just like SunFrog in the *SunFrog* case, Redbubble sells and makes consumers a new counterfeit product, causes the counterfeit mark to be printed on the new product, causes the product to be shipped and repeatedly communicates and affiliates itself with the product. The idea that Redbubble just brings buyers and sellers together is pure fiction.

C.     **Redbubble's automated use of OSU's trademarks is still use**. ....................... 12

Summary of the Argument: The fact that Redbubble's infringement occurs automatically through Redbubble's pre-programmed software does not mean that Redbubble is not using OSU's trademarks and liable for infringement.  Just as in *SunFrog*, this automated use, unchecked by Redbubble unless notified by a rights-

holder, will "ineluctably lead to the manufacture of infringing products." *See SunFrog*, 311 F. Supp. 3d at 1038. It is the resulting physical goods that distinguish Redbubble from eBay and Amazon—physical goods that would not exist but for Redbubble's indispensable involvement.

.

**D.**      **Redbubble affiliated itself with OSU counterfeit products**............................ 12

Summary of the Argument: Redbubble directly affiliates itself with the counterfeit OSU products sold on its website. The *Tiffany* case relied upon by Redbubble found that eBay's use of Tiffany's trademark on the sale of *genuine* Tiffany products was "fair use" and stated, "none of eBay's uses of the [Tiffany] mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website." *Tiffany*, 600 F.3d at 103. Redbubble cannot claim this same defense because it does not sell any genuine OSU products. Further, Redbubble *does* affiliate itself with its counterfeit products, referring to the goods for sale on its website as "Redbubble garments" and "our" products. Redbubble's trademarks also appear on all emails communicating the status of the sale to the consumer, on the packaging the consumer receives in the mail, on the invoice, on the stickers and tags that are affixed to the product and on the various marketing materials that come with the product.

**V.**      **Redbubble's infringement was willful and still has not stopped.**............................... 14

Summary of the Argument: The Lanham Act provides for statutory damages ranging from $200,000 to $2,000,000 where the court finds the counterfeit mark was *willful* per type of infringing good for each trademark. 15 USC § 1117(c); *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009). This Court has found that infringement is willful where a trademark owner provides an infringer with notice of an infringement and the infringer continues to infringe. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880–83 (S.D. Ohio 2007). Here, the evidence is undisputed that OSU first gave notice to Redbubble that it was selling counterfeit products in April 2017 and Redbubble continues to sell counterfeit products even as of the filing of this memorandum. As of this filing, Redbubble has offered for sale thirty-five different types of goods bearing different registered OSU trademarks, which entitles OSU up to $70,000,000 in statutory damages.

**VI.**      **Redbubble ignores settled law in this District that the Communications Decency Act is not a defense to OSU's right-of-publicity claim**. ................................ 21

Summary of the Argument: Redbubble wrongly argues that the Communications Decency Act ("CDA") bars OSU's right-of-publicity claim for Redbubble's use of the Urban Meyer persona on its products. Redbubble's CDA defense fails because both the Sixth Circuit and this Court have specifically found that the CDA does not apply to trademark infringement or state law right-of-publicity claims. *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 918 (S.D. Ohio 2014). Even if it were applicable (which it is not), OSU is suing Redbubble for more than just user-generated content on Redbubble's website, but for actual products Redbubble is selling and delivering to customers bearing OSU trademarks.

**VII.**      **Conclusion.** ................................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3 Point Dist., LLC v. CafePress.com, Inc.*,
 2008 WL 11337274 (C.D. Cal. Feb. 25, 2008)....................................................................8

*Almeida v. Amazon.com, Inc.*,
 456 F.3d 1316 (11th Cir. 2006) .........................................................................................21

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006) .......................................................................3

*Doe v. Friendfinder Network, Inc.*,
 540 F. Supp. 2d 288 (D.N.H. 2008)...................................................................................21

*Ferrari S.P.A. v. Roberts*,
 944 F.2d 1235 (6th Cir. 1991) .............................................................................................4

*Ford Motor Co. v. GreatDomains.com, Inc.*,
 2001 WL 1176319 (E.D. Mich. Sept. 25, 2001)................................................................21

*Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*,
 575 F.3d 693 (7th Cir. 2009) .............................................................................................14

*H–D U.S.A., LLC v. SunFrog, LLC*,
 311 F. Supp. 3d 1000 (E.D. Wis. 2018)...................................................................... *passim*

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
 955 F.2d 1143 (7th Cir.1992) ..............................................................................................5

*Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*,
 931 F.2d 1100 (6th Cir. 1991) .............................................................................................3

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
 456 U.S. 854 (1982)..............................................................................................................6

*Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*,
 2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014) .....................................................................9

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
 453 F.3d 377 (6th Cir. 2006) ...............................................................................................5

*Microsoft Corp. v. McGee*,
 490 F. Supp. 2d 874 (S.D. Ohio 2007) ...........................................................................3, 16

*Milo & Gabby, LLC v. Amazon, Inc.*,
 2015 WL 4394673 (W.D. Wash. July 16, 2015) .................................................................8

*Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*,
  2018 WL 3472628 (D.N.J. July 19, 2018)............................................................10

*Nike, Inc. v. Top Brand Co.*,
  2006 WL 2946472 (S.D.N.Y. Feb 27, 2006).........................................................19

*Ohio State Univ. v. Skreened Ltd.*,
  16 F. Supp. 3d 905 (S.D. Ohio 2014) .......................................................1, 15, 21

*Perfect 10, Inc. v. CCBill, LLC*,
  488 F.3d 1102 (9th Cir. 2007) ...............................................................................21

*Sara Lee Corp. v. Bags of New York, Inc.*,
  36 F. Supp. 2d 161 (S.D.N.Y. 1999).....................................................................19

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F. 3d 93 (2d Cir. 2010)...................................................................6, 7, 8, 12

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
  630 F. Supp. 2d 842 (S.D. Ohio 2007) ..................................................................13

**Rules**

Fed. R. Evid. 201(b)........................................................................................................13

**Statutes**

15 U.S.C. § 1114(1) ....................................................................................................3, 8

15 U.S.C. § 1114(1)(a)....................................................................................................5

15 U.S.C. § 1117............................................................................................................23

15 U.S.C. § 1125(a) .........................................................................................................5

15 U.S.C. § 1127....................................................................................................5, 10, 12

47 U.S.C. § 230(a)(1)....................................................................................................22

47 U.S.C. § 230(c) .........................................................................................................22

Ohio Rev. Code § 2741..............................................................................................21, 22

**Other Authorities**

Trademark Manual of Examining Procedure § 904.03...................................................13

**<u>Introduction</u>**

Redbubble cannot stop itself from selling knockoffs of The Ohio State University's licensed products.  As this Court succinctly stated, "Selling knockoffs is selling knockoffs, regardless of who suggested you sell them, regardless of how many other infringing products you decide not to sell, and regardless of how much of a hassle it is to comply with the law." *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 917 (S.D. Ohio 2014). No matter how many subcontractors Redbubble hires to outsource its operations; no matter how many robots Redbubble uses to automate its business plan; Redbubble is still selling knockoffs in violation of The Ohio State University's trademark rights.

Plaintiff The Ohio State University's ("OSU") Motion for Summary Judgment (Pl.'s Mot. Summ. J., ECF No. 17) should be granted and Defendant Redbubble, Inc.'s ("Redbubble") Cross-Motion for Summary Judgment (Def.'s Cross-Mot. Summ. J., ECF No. 23) should be denied because: (1) Redbubble does not dispute any material facts and concedes fundamental elements of OSU's claims; (2) Redbubble cannot subcontract itself out of the Lanham Act; (3) the *Tiffany* defense does not apply to this case; (4) Redbubble has "used" OSU's marks under the undisputed facts; (5) Redbubble's infringement was willful and still has not stopped; and (6) Redbubble ignores settled law in this district that the Communications Decency Act is not a defense to OSU's right-of-publicity claim.

**I.     Redbubble does not dispute any material facts and concedes fundamental elements of OSU's claims.**

As an initial matter, the document filed by Redbubble does not respond to OSU's Motion at all.  Redbubble does not dispute a single fact and either concedes or does not deny many of the key elements of OSU's Motion. For example, Redbubble's Motion does not dispute:

✓     OSU owns strong protectable trademarks;

- ✓ The products identified in OSU's Motion were purchased on Redbubble's website (Dreitler Dec.[1] ¶¶ 10–12, ECF No. 17-3);

- ✓ The images and products identified in OSU's Motion are counterfeit and infringe upon OSU's trademarks (*see* Def.'s Mot. at 1; Van Brimmer Aff. ¶ 5, ECF No. 17-1; Cleveland Aff. ¶ 9, ECF No. 17-2);

- ✓ There is a likelihood of confusion between OSU's genuine goods and the counterfeit goods offered and purchased on Redbubble's website;

- ✓ Redbubble processes all orders for counterfeit products on its website using Redbubble software (*see* Def.'s Mot. at 3, 6–7);

- ✓ Upon receiving the orders for counterfeit products on the Redbubble website, Redbubble software causes these counterfeit products to be printed, created and delivered to consumers (*see id.*);

- ✓ The counterfeit products purchased on the Redbubble website are delivered to consumer's homes bound in Redbubble packaging, with Redbubble invoices, Redbubble stickers, Redbubble hangtags, Redbubble care instructions and a Redbubble return address (*see* Shook Aff. ¶¶ 9–12, 20–24 (attached hereto as Ex. A); Dreitler Dec. ¶¶ 10–12).

Despite all of the above, Redbubble includes assertions in its Declarations and throughout its Motion that it does not "sell" anything, "make" anything or "use" OSU's trademarks. However, these assertions are not disputes of *fact*, but disputed legal conclusions that belie the facts presented in the undisputed material *facts* contained in both the declarations submitted by Redbubble and OSU. Although the document filed by Redbubble includes the title, "Memorandum in Opposition," it really is nothing more than Redbubble's own motion for summary judgment designed to defend a contributory infringement claim that OSU did not even file. OSU's claim against Redbubble is a claim for direct trademark infringement. As OSU will show, Redbubble's arguments have no basis in law or fact. Redbubble is selling OSU knockoffs and this Court should grant OSU summary

---

[1] The Declaration of Joseph K. Dreitler is attached to OSU's Motion for Summary Judgment as ECF Doc. No. 17-3.

judgment on its claims for counterfeiting and the violation of Ohio's right-of-publicity statute, and award statutory damages.[2]

## II.     Redbubble cannot subcontract itself out of the Lanham Act.

The core of Redbubble's defense relies upon a misinterpretation of the Lanham Act, which prohibits the use of a "reproduction, counterfeit, copy, or colorable imitation" of a registered mark in such a way as "is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1). This Court has specifically recognized the following "two fundamental purposes of trademark law: [1] preventing consumer confusion and deception in the marketplace and [2] protecting the trademark holder's property interest in the mark."  *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007). Redbubble's Cross-Motion for Summary Judgement attempts to turn these fundamental principles on their head. Redbubble would have this Court believe that the test for trademark infringement is not whether the consumer is likely to be confused, but whether the infringer can take sufficient behind-the-scenes steps to distance itself from its own infringement and cast blame upon third parties with whom the consumer never meets and never does business.

Indeed, Redbubble spends the vast majority of its briefing discussing all the things it does behind the scenes to try to insulate itself from liability. (Redbubble's Mot. at 3–12.)  It contracts out its printing to third-party printers. (*Id.* at 3, 7.)  It contracts out its shipping to third-party shippers. (*Id.* at 8.)  It employs automated software, so that none of its employees have to see, touch or smell even a whiff of its own counterfeit products. (*Id.* at 3, 6–7, 12.) But none of this matters to the consumer. "[I]n assessing the likelihood of confusion to the public, the standard used by the courts is

---

[2]     In the event the Court declines to grant summary judgement on OSU's counterfeiting claim, the Court should grant summary judgment on OSU's claims of trademark infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125.  It is well-established that the test for both claims is whether there is a likelihood of confusion among consumers.  *See Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." (citation omitted).)  As noted herein, Redbubble does not dispute OSU's arguments that there is a likelihood of confusion.  (*See* Pl.'s Mot. at Pt.III.B, at 19–25.)

3

the typical buyer exercising ordinary caution." *Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991). All Redbubble's behind-the-scenes gyrations with third-party contractors and hi-tech software makes no difference to the perception of the consumer visiting its website and exercising ordinary caution.

Rather, the consumers simply go to the Redbubble website, provide Redbubble their credit card information and then wait to receive a Redbubble counterfeit product in the mail, bound in a Redbubble box, with a Redbubble invoice, Redbubble hangtag, Redbubble care instructions and a Redbubble return address. (*See* Dreitler Dec. ¶¶ 10–12.) There is nothing consumer-facing that would suggest to the consumer that he or she is actually purchasing a product from a wholly independent artist or a third-party seller, despite Redbubble's attempt to point out *de minimis* references on its website to what it calls "independent artists." The fact that Redbubble lists the name of the artist that uploaded the infringing "art" to Redbubble's website does not change the fact that consumers are purchasing "Redbubble products"[3] that are created by Redbubble contractors on Redbubble's website.

Trademark law protects against confusion at both the point of sale and in the post-sale context—and thereby all points in between. *See Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1244 (6th Cir. 1991) ("The Lanham Act, however, was intended to do more than protect consumers at the point of sale.") After a purchase is made, *Redbubble's* trademark, not the trademark of any independent artist, is prominently displayed on: (1) all the confirmation and tracking emails that Redbubble sends to the consumer; (2) the packaging used to deliver the counterfeit products to the consumer; and (3) the invoice, stickers, tags and marketing materials that arrive inside the box with the Redbubble counterfeit product. (*See* Dreitler Dec. ¶¶ 10–12; Ex. A, Shook Aff. ¶¶ 6–12, 16–24.) Redbubble's

---

[3] Redbubble's own website refers to the products purchased on the website as "Redbubble products." (*See* Shook Aff. ¶ 28.)

effort to escape liability through a *de minimis* reference to an independent artist at the point of sale has no bearing on the consumer's post-sale perception that these knockoffs are Redbubble products.

Redbubble's argument that it has hired third-party contractors and therefore does not produce, package, ship, or distribute the infringing products has already been found unpersuasive by the Sixth Circuit. In *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006), the Court held:

> We also find . . . no reason to restrict liability to those who actually create, manufacture or package the infringing items. Contrary to [the defendant's] position, while a showing of a "likelihood of confusion" does require that consumers mistakenly believe that the infringing goods were "sponsored or otherwise approved" by the plaintiff, there is no further requirement that those goods must have been produced by the defendant. Indeed, all the statutes demand is that the defendant [has] "used" the goods "in commerce" [15 U.S.C. §§ 1114(1)(a) and 1125(a)], and we can think of no clearer "use" of goods "in commerce" than offering them for sale. In sum, as the Seventh Circuit has put it concisely, "[s]ellers bear strict liability for violations of the Lanham Act" (*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir.1992)), and we too decline to excuse [the defendant] from liability due either to its ignorance or to its role as a retailer rather than producer of the counterfeit goods.

*Lorillard Tobacco*, 453 F. 3d at 381 (citations omitted). Moreover, the "use" of a trademark is much more than simply placing it onto products and includes placing it "in any manner" on the goods in question "*or the displays associated with them.*" 15 U.S.C. § 1127 (emphasis added). The fact that OSU's trademarks are displayed on Redbubble's website with products offered for sale constitutes unlawful trademark infringement by itself, even before a consumer completes a sale. Redbubble is the only point of contact with the consumer and manages every aspect of both the sale and creation of the counterfeit product from start to finish. (*See* Def.'s Mot. at 3–8; Dreitler Dec. ¶¶ 5, 6, 10; Ex. A, Shook Aff. ¶¶ 6–12, 16–24.) Selling knockoffs is selling knockoffs.

III.    The *Tiffany* defense does not apply to this case.

Redbubble goes to great lengths to argue to this Court that it does not sell anything, but is nothing more than a "transactional intermediary" akin to Amazon or eBay. (Redbubble's Mot. at 2, 22–26) Why would a company in the business of selling print-on-demand merchandise claim it is not actually selling anything? Because Redbubble wrongly believes it has found a legal parachute, allowing it to escape the Lanham Act and continue selling knockoffs. Redbubble's Motion relies almost entirely upon a line of contributory trademark infringement cases beginning with *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93 (2d Cir. 2010). But, OSU has not even alleged contributory trademark infringement. This is a direct infringement case where OSU has brought claims for Redbubble's direct involvement in the creation and sale of counterfeit OSU products.

"Contributory trademark infringement is a judicially created doctrine derived from common law torts." *Tiffany*, 600 F.3d at 103–04. The Supreme Court has described contributory trademark infringement as follows:

> if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or the distributor is contributorily responsible for any harm done as a result of the deceit.

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 854 (1982).  In *Tiffany,* the Second Circuit extended contributory infringement liability, from manufacturers and distributors, to online service providers in two circumstances: "first, if the service provider intentionally induces another to infringe a trademark, and second, if the service provider continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement." *Id.* (quoting *Inwood*, 456 U.S. at 854) (internal quotation marks and original alteration omitted).  The *Tiffany* Court noted that eBay merely "connects buyers and sellers and enables transactions, which are carried out directly between eBay

members" and found eBay did not have specific knowledge that its sellers were infringing upon Tiffany's trademarks. *Id.* at 106–07 (alterations in original omitted).

The cases that Redbubble relies on primarily relate to claims that service providers like Amazon or eBay were engaged in conduct that induced *someone else* to infringe upon a trademark owner's rights; or provided services despite knowing that *someone else* was infringing upon trademark rights. OSU is not bringing claims that someone else infringed its trademarks. OSU has brought claims that Redbubble directly infringed OSU's trademarks.

As will be discussed in more detail in Section IV below, to the extent Redbubble attempts to compare itself to eBay, the facts and caselaw do not support such a comparison. Factually, eBay's entire marketplace is designed around reselling the goods of third parties—goods that already exist. *See Tiffany*, 600 F.3d at 97 (describing eBay as a listing service that "connect[s] buyers and sellers"). "Recall that eBay does not make anything . . . ." *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1036 (E.D. Wis. 2018). Redbubble, on the other hand, is a platform that invites consumers to buy newly created goods that Redbubble and its automated software cause to be made. The *Tiffany* defense is not applicable to this case and was never intended to serve as a free pass for on-demand printing companies to sell knockoffs.

## IV.    Redbubble "used" OSU's trademarks.

All of Redbubble's efforts to convince the Court it is merely an "online marketplace" or "intermediary" that brings buyers and sellers together like Amazon or eBay, really just amounts to an argument that it is not "using" OSU's trademarks. The Lanham Act prohibits "*use* in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . ." 15 U.S.C. § 1114(1) (emphasis added). As explained above, the so-called *Tiffany* defense for online intermediaries has little to nothing to do with a defendant's direct *use* of trademarks, but instead

7

relates to the intermediaries' *knowledge* or *inducement* of third parties who infringe on the rights of trademark owners.

Redbubble incorrectly cites *Tiffany*, 600 F. 3d 93, 103 (2d Cir. 2010), *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) and *Tre Milano, LLC v. Amazon.Com, Inc.*, 2012 WL 3594380 (Cal. Ct. App. Aug. 22, 2012) for the principle that all on-line intermediaries are not "users" of trademarks for purposes of trademark law. The *Tiffany* case only briefly discussed direct trademark infringement in the context of eBay's "nominative fair use" of Tiffany's trademarks on *genuine* Tiffany products appearing on the eBay site. Redbubble is not using OSU's trademarks to identify any genuine products. *Milo and Gabby* was a copyright infringement case and did not analyze trademark infringement at all. *Tre Milano* only found that Amazon did not directly infringe Tre Milano's trademarks because it merely facilitated a sale between a third-party buyer and seller and did not facilitate the creation of the product or the placement of the Tre Milano trademark on the counterfeit product. *Tre Milano, LLC*, 2012 WL 3594380 at *11.

Nonetheless, Redbubble wants this court to believe that *Tiffany* and its progeny stand as a blueprint for print-on-demand companies to sell knockoffs and to disclaim the counterfeit sales constitute *use*. Setting Redbubble's misinterpretation of the *Tiffany* case aside, the undisputed facts establish that Redbubble is using OSU's trademarks and is not just an innocent intermediary because: (1) Redbubble is a seller; (2) Redbubble performed most of the legwork for its counterfeit sales; (3) Redbubble's automated use of OSU's trademarks is still a use; and (4) Redbubble affiliated itself with OSU counterfeit products.

### A. Redbubble is a *seller*

Redbubble asserts that it is not offering to sell any of the goods that appear on its website, rather it is the individual artist that is the true seller. (Redbubble's Mot. at 5–7, 22–23.) Redbubble

does not dispute, however, that it displays the counterfeit goods on its site, that it created and maintains the entire infrastructure needed to manufacture, ship, and process payment for the goods, and that it receives a fee for doing so. (Redbubble's Mot. at 1–8.) That its platform allows individual artists to upload images to be placed on goods does nothing to alleviate Redbubble's liability. Consumers are not visiting Redbubble's site to purchase goods from an individual artist's shop, they are buying goods from Redbubble. *See 3 Point Dist., LLC v. CafePress.com, Inc.*, 2008 WL 11337274, at *6 (C.D. Cal. Feb. 25, 2008) (finding that "the relevant marketplace begins with [the] homepage at www.cafepress.com," not any user's identification or search terms within the site).

In fact, Redbubble is intimately involved with the counterfeiting taking place on its site. Redbubble refers to the products available on its site as "Redbubble garments" and "our" products. (Ex. A, Shook Aff. ¶ 28.) Each step of the ordering process is branded with the Redbubble name, trademark, or marketing materials. After searching Redbubble's website for counterfeit goods and placing an order, Redbubble sends a confirmation email from its Redbubble email address noting the order and its progress. (*Id.* ¶ 6.) Redbubble continues to update the customer via email about the progress of the order from manufacturing to shipping. (*Id.* ¶¶ 7–9.) Redbubble's name and trademark appear on the packaging of the shipped goods, including on the envelope and the packing list, and its corporate address is the return address. (*Id.* ¶¶ 10, 13–16.) Redbubble's name and trademark appear on the goods themselves, with a Redbubble sticker placed on the garment and a Redbubble hangtag attached to the garment that also includes care instructions. (*Id.* ¶¶ 10–12.) Finally, the packages include additional Redbubble-branded swag with the counterfeit goods. (*Id.* ¶¶ 10, 14–15.) Taken together, Redbubble's insistence that it is not "using" any OSU trademarks or is not a "seller" is pure fiction.

Consumer perception should also inform the Court's determination as to whether Redbubble is "using" the OSU trademarks.  In *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014), the Court found liability for so-called "transactional intermediaries" where (i) the intermediary, not the true supplier of the goods, was communicating with the consumer,  (ii) customers of the defendant believed they were doing business with the intermediary, and (iii) invoices for the infringing goods were paid to the intermediary instead of to the real supplier of the goods.  *Johnson & Johnson and Lifescan, Inc.*, 2014 WL 12558573, at *18–20. The same analysis applies to Redbubble.  Redbubble communicates with customers directly at each stage of the order process, including by advertising the counterfeit goods on its site, processing the orders, and identifying itself as the party a customer should contact in case of order cancellation or a return.  (*See* Ex. A, Shook Aff. ¶¶ 3, 4, 6–10, 13–14, 16–18, 28–30).

Even if Redbubble was just an intermediary connecting buyers and sellers (which it is not), courts have determined that the level of involvement in the infringing acts is relevant to the determination of liability.  In *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628 (D.N.J. July 19, 2018), the Court found that one of the defendants was liable for trademark infringement and counterfeiting despite its argument that it was merely an intermediary service provider.  Similar to Redbubble, the defendant argued that it did not "use" Plaintiff Nike's marks in commerce because it had no knowledge of the counterfeit goods and it never physically possessed or handled the counterfeit goods.  *Id.* at *5.  Instead, the defendant characterized itself as an "innocent service provider" that assisted in the goods reaching the U.S.  *Id.* In fact, the defendant was actively arranging for transportation of counterfeit goods into the U.S.

Recognizing importation of goods may require different representations from the involved parties, *Eastern Ports* is nonetheless instructive here. There is no question that Redbubble is involved in the advertising, manufacturing, and shipping of the counterfeit goods. Redbubble is even the entity that handles returns and refunds. Indeed, without the Redbubble website and Redbubble's network of display, production, and distribution, none of the counterfeit goods would exist. *See id.* at \*7 (finding that the defendant "played an active role in arranging for the transportation of the Counterfeit Nike Footwear" and such role constituted use in commerce under 15 U.S.C. § 1127). Redbubble cannot create an entire infrastructure for selling knockoffs, reap those benefits, and then escape liability claim it is nothing more than an "intermediary," "marketplace," or "service provider." Redbubble has clearly used OSU's trademarks.

## B. Redbubble performed "most of the legwork" for its counterfeit sales.

Print-on-demand companies, like Redbubble, are not merely online marketplaces that do no more than connect buyers and sellers and processes payments. Instead, Redbubble is more like *SunFrog* and *Skreened*, as it is the hub through which the infringing product is created and through which all the infringing acts occur. In *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018), the Court found that SunFrog had engaged in direct trademark infringement for doing "most of the legwork in the transaction for an infringing item." *SunFrog*, 311 F. Supp. 3d at 1031. The undisputed facts lead to the same conclusion here. Redbubble actively invites artists to use its platform to create unique goods. Redbubble advertises the infringing goods for sale. Redbubble's software directs a third-party printer to print the products and then directs a third-party shipper to ship the products. (Redbubble's Mot. at 7–8.) The products are delivered in Redbubble packaging, with a Redbubble invoice, with Redbubble stickers and care instructions, and a Redbubble tag attached to the product. (Deitler Dec. ¶¶ 6, 10; Ex. A, Shook Aff. ¶¶ 9, 11–12, 20–22,

24.) The "from" and "return to" addresses on the package is Redbubble's headquarters in San Francisco. (Ex. A, Shook Aff. ¶ 10, 12, 23).

Based on these undisputed facts, Redbubble is performing most of the "legwork" for the infringement and counterfeiting and should, therefore, be found liable as having "used" OSU's trademarks. This level of involvement surely rises to the level of "use in commerce" to satisfy the elements of a trademark infringement claim. *See SunFrog*, 311 F. Supp. 3d at 1030 (noting that despite the website users' uploading of the designs, SunFrog's involvement in facilitating the creation and sale of the counterfeit goods qualifies as "placing [the trademark] 'in any manner' on the goods in question" to satisfy the requirements of 15 U.S.C. § 1127).

### C.     Redbubble's automated use of OSU's trademarks is still use.

Redbubble, echoing the arguments of SunFrog, asserts its process is "entirely automated" and that therefore it is not liable as a "user" of the OSU trademarks.  (*See* Redbubble's Mot. at 3, 5–7, 25); *SunFrog*, 311 F. Supp. 3d at 1014–15, 1038.  This automation, unchecked by Redbubble unless notified by a rights-holder, will "ineluctably lead to the manufacture of infringing products." *See SunFrog*, 311 F. Supp. 3d at 1038.  It is the resulting physical goods that distinguish Redbubble from eBay and Amazon—physical goods that would not exist but for Redbubble's indispensable involvement. The fact that Redbubble's infringement occurs automatically through Redbubble's pre-programmed software does not mean that Redbubble is not responsible.

### D.     Redbubble affiliated itself with OSU counterfeit products

The only discussion of direct trademark infringement in *Tiffany* related to eBay's use of Tiffany's trademark associated with the sale of *genuine* Tiffany products. The Court stated that "none of eBay's uses of the [Tiffany] mark suggested that Tiffany affiliated itself with eBay or endorsed the sale of its products through eBay's website." *Tiffany*, 600 F.3d at 103.

12

In the instant case, however, Redbubble does not offer any authorized OSU goods.  (Van Brimmer Aff. ¶ 5; Cleveland Aff. ¶ 9.)  In fact, Redbubble purposefully associates itself with the OSU counterfeit goods it offers.  Redbubble trademarks and indicia appear in proximity to the goods at both the point-of-sale and post-sale, the OSU goods are wrapped and shipped in Redbubble packaging, include Redbubble-branded packing lists and invoices, Redbubble's address appears as the return address on the package, and a Redbubble sticker, care instructions, and hang tags are attached to the counterfeit apparel goods.  (*See, e.g.*, Dreitler Dec., Ex. O, ECF No. 17-3 at PageID: 230–31; Ex. A, Shook Aff. ¶¶ 3–24.) Redbubble repeatedly refers to its own actions in its communications with the consumer. (*See eg,* Ex. A, Shook Aff. ¶ 7 (Redbubble email stating "We've Shipped Part of Your Order" post-purchase)).  Redbubble's website refers to the goods for sale on the site as "Redbubble garments" and "our" products.  (*See id.* ¶ 28.)

There can be no question that a consumer is thus likely to be confused that Redbubble is affiliated with OSU.  Redbubble's claim that there is no affiliation because an artist agrees to be the "seller" in Redbubble's terms of service and because Redbubble places the artist's name next to each product listing on its website borders on absurd when compared to the numerous uses of the Redbubble trademark and branding on the goods and the packaging.  (*See* Def.'s Mot. at 5–6.)

Redbubble itself is the registered owner of the REDBUBBLE trademark for *use* with the exact same types of goods on which the counterfeit marks appear (namely, apparel, mugs, tote bags, and stickers). *See* Redbubble USPTO registration (attached hereto as Ex. A ¶34, Ex. 29).[4]  A consumer is likely to be confused as to whether the counterfeit OSU goods ordered and received from Redbubble are, in fact, genuine licensed goods created in a partnership between OSU and

---

[4]     The Court may take judicial notice of "facts that are not subject to reasonable dispute."  Fed. R. Evid. 201(b). Public records and government documents, including those available from "reliable sources on the Internet," are "generally considered not to be subject to reasonable dispute." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (citing Fed. R. Evid. 201(b)).

Redbubble.  *See SunFrog*, 311 F. Sup. 3d at 1018.  Notably, the USPTO accepts tags as a specimen of use for trademarks used with apparel goods.  *See* Trademark Manual of Examining Procedure § 904.03 ("A trademark specimen should be a label, tag, or container for the goods . . . .").  In *SunFrog*, the Court found that the inclusion of the defendant's hangtag on counterfeit apparel that displayed the plaintiff's trademarks was "use" under the statute and did not prevent confusion.  The Court stated, "There is no reason to believe that consumers, looking at a SunFrog shirt bearing both its mark on the hangtag and [Plaintiff Harley–Davidson's] Mark across the breast, would conclude that SunFrog did not intend to signify source, sponsorship or affiliation by the use of the H–D Mark." *SunFrog*, 311 F. Supp. 3d. at 1031.  The same conclusion should be reached here.  As a result, any argument from Redbubble that the inclusion of all these Redbubble-branded items with the counterfeit goods does not create confusion or constitute "use" is disingenuous.  Redbubble used OSU trademarks when it affiliated itself with its OSU knockoffs.

## V.     Redbubble's infringement was willful and still has not stopped.

Redbubble not only willfully infringed on OSU's trademarks, but is still doing it. This willful infringement is significant because "willfulness" or "willful blindness" calls for heightened statutory damages in counterfeit cases like this one. As set forth in OSU's Motion, Section 1117(c) of the Lanham Act steps up the statutory damage award limit to $2,000,000 for each counterfeit mark, per type of good offered for sale.  Specifically, the Lanham Act provides for the following outer boundaries for statutory damages awards:

> (1)     not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2)     if the court finds that the use of the counterfeit mark was *willful*, not more than *$2,000,000* per counterfeit mark *per type of goods* or services sold, offered for sale, or distributed, as the court considers just.

*Id.* (emphasis added). The statute's reference to "type of goods" means just that—the statutory

damages award must be made per type of infringing good, "not per individual item bearing the counterfeit mark." *Gabbanelli Accordions & Imports, L.L.C. v. Gabbanelli*, 575 F.3d 693, 698 (7th Cir. 2009).

In its Motion, Redbubble presents a last-ditch Hail Mary defense, arguing even if it did infringe on OSU's trademarks, it did not mean to do it. (Redbubble's Mot. at 30.)  To advance this argument, Redbubble blames everyone but itself for the counterfeit products sold on its website. Redbubble blames the artists who upload infringing images. (*Id.* at 19.) It blames the faulty technology it uses to try to screen out counterfeit images. (*Id.*)  It even blames OSU for not telling Redbubble when counterfeit images are uploaded and sold by Redbubble. (*Id.* at 35.)  It complains that an average of 16,000 listings are uploaded to the marketplace each day, and that Redbubble could not possibly avoid selling infringing products without "information from the content owners regarding what content to remove and the scope of their rights." (*Id.* at 19.)  In other words, Redbubble knows it can't stop itself from infringing OSU's trademarks, so they want OSU to constantly police their website for them.

All of Redbubble's arguments that it did not intentionally or willfully infringe on OSU's trademarks represent nothing more than the same "ostrich-like," "willful blindness" defense rejected in both the *Skreened* and *SunFrog* cases. *See e.g.*, *Skreened*, 16 F. Supp. 3d at 921; *SunFrog*, 311 F. Supp. at 1039. As Judge Frost stated in *Skreened*, "there is no exception in trademark law for infringers who take an ostrich approach to policing their business activities and complying with the law, no reasonable jury could accept Defendants' '*it's too hard/we are the actual victims'* argument." *Skreened*, 16 F. Supp. 3d at 917.  Similarly, *SunFrog* rejected Defendant SunFrog's effort to blame others for the counterfeit products sold on their website:

> Rather than roll up its sleeves from the start to develop and implement anti-infringement practices that actually worked, SunFrog tried to avoid liability entirely

15

> by pointing the finger at everyone else involved. But trademark law is practical, and its doctrines fit the realities of the marketplace. In law, as in business, cleverness and technicality are poor substitutes for hard work and honesty. SunFrog willfully counterfeited Harley–Davidson's marks.

*SunFrog*, 311 F. Supp. 3d at 1046. Here, Redbubble has made the same fatal error. All of Redbubble's evidence that it is *trying* not to infringe OSU's products has no legal consequence.

In fact, the test for whether an infringer acted willfully has nothing to do with what Redbubble tried to do or wanted to do. This Court has found that infringement is willful where a trademark owner provides an infringer with notice of an infringement and the infringer continues to infringe: "A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness. In addition, a court may infer willfulness from defendant's default." *McGee*, 490 F. Supp. 2d at 880 (citations omitted).

Redbubble continued to sell products bearing counterfeit OSU trademarks long after notice was given, and it is still doing it. OSU first contacted Redbubble to provide notice that it was selling infringing products on April 12, 2017, over a year-and-a-half ago. (OSU's Mot. at 10.) Communications followed between counsel for Redbubble and OSU, with Redbubble taking the position that the onus was on OSU to notify Redbubble of its own infringing conduct and identify each new counterfeit product that Redbubble offered for sale on a daily basis. (*See id.*; *see also* Redbubble's Mot. at 28.)

OSU's Motion identified specific counterfeit products infringing OSU trademarks that Redbubble offered for sale long after Redbubble was placed on notice in April 2017. Attached as Exhibit B is a spreadsheet identifying the specific counterfeit products Redbubble has offered for sale and the OSU registration or common law trademark that each product infringes upon. The infringing activity continued after notice was given in April 2017, after this lawsuit was filed in December 2017, and even after OSU filed its Motion pending before the Court.

For example, after the filing of OSU's Motion, on September 7, 2018, Redbubble offered eight products for sale on its website, all using the exact counterfeit image of the OSU athletic logo design mark, Registration Nos. 2,040,782 (Mugs); 2,094,602 (Clothing); and 2,039,180 (Pillows) (collectively, the "OSU Athletic Logo Mark"), under the keyword title "OH-IO" (the "Counterfeit OSU Athletic Logo"). (*See* Ex. A, Shook Aff. ¶ 4 and Exs. 3–6, 8.) The products for sale on the Redbubble website using the OSU Athletic Logo Mark included an iPhone Case/Skin, Case/Skin for Samsung Galaxy, iPad Case/Skin, Throw Pillow, Mug, Travel Mug, Tote Bag and Spiral Notebook. *Id.* The OSU Athletic Logo Mark is shown here:



(*See, e.g.*, Dreitler Aff., Exs. D and E, ECF No. 17-5 at PageID 272–77,; *see also*, Ex. A, Shook Aff. Ex. 2, 6, 8). Photos of the Redbubble counterfeit products counsel for OSU purchased that infringe on the OSU Counterfeit Logo Mark are shown here:



17

*Id.* In yet another example, just last month, on October 1, 2018, Redbubble offered sixty-two products for sale, all using an exact counterfeit image of the O-H-I-O Silhouette design mark, Registration Nos. 4,104,956 (Apparel) and 4,297,349 (Decals and Stickers) (collectively, the "OSU Silhouette Mark").  (*See* Ex. A, Shook Aff. ¶¶ 13–14 and Exs. 11 and 12.) The products for sale on the Redbubble website included various men's apparel, women's apparel and stickers. The OSU Silhouette Mark is shown here:



Photos of Redbubble products counsel for OSU purchased that infringe on the OSU Silhouette Mark are shown here:



A true and accurate screen shot of sixty-two Redbubble counterfeit products infringing on the OSU

Silhouette Mark and offered for sale on Redbubble's website on October 1, 2018, is attached as Exhibit C.  (*See* Ex. A, Shook Aff. ¶¶ 13–14.)

In fact, as of this filing, Redbubble has offered for sale thirty-five different types of goods bearing different registered OSU trademarks.  A chart identifying the types of counterfeit goods Redbubble has offered for each OSU trademark is listed in the chart below:

**NUMBER OF COUNTERFEIT GOODS– BY REGISTERED MARK AND TYPE**

| TYPE OF GOODS | OHIO STATE | OHIO STATE UNIVERSITY | BUCKEYES | OSU | [Logo] | [Logo] | [Logo] | [Logo] | [Logo] | [Logo] | [Logo] | [Logo] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WOMENS TEE | ✓ | ✓ | | | | | ✓ | | | | | |
| MENS TEE | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | ✓ |
| LONG SLEEVE | ✓ | | | | ✓ | | ✓ | | | | | |
| MENS V-NECK | | | | | ✓ | | ✓ | | | | | |
| MENS TANK TOP | | ✓ | | | | | ✓ | | | | | |
| LADIES TANK TOP | ✓ | ✓ | | | ✓ | | ✓ | | | | | |
| SWEATSHIRT/ HOODIE | ✓ | | | | ✓ | ✓ | ✓ | | | | | |
| MUG | | | | | | | ✓ | | | | | |
| PILLOW | | | | | | | ✓ | | | | | |
| DECAL/ STICKER | ✓ | | | | | | | ✓ | | ✓ | ✓ | |

Thus, as of this filing, OSU is entitled to up to $70,000,000 in statutory damages. An award of this magnitude is not unusual when the infringing party continues to infringe upon the trademark owner's rights long after notice was given. In *SunFrog*, for example, the court awarded $19,200,000 in statutory damages, noting that the Lanham Act "allows statutory damages to be large even when actual damages are small, for the reason that deterring counterfeiting is important." *SunFrog*, 311 F. Supp. 3d at 1049.  *SunFrog* further noted that actual damages awards in these types of cases do not account for damage to the trademark owner's goodwill and reputation. *Id.*

Similarly, in *Nike, Inc. v. Top Brand Co.*, 2006 WL 2946472, at *3 (S.D.N.Y. Feb 27, 2006), the court awarded the then-maximum of $1 million per mark, for a total of $17 million, in a case involving another egregious infringer.   In *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161 (S.D.N.Y. 1999), the court awarded $750,000 per mark per type of good where the infringing

19

operation was a sizable handbag shop in New York City and the infringement continued even after the litigation began. *See Sara Lee,* 36 F. Supp. 2d at 169.

To further demonstrate how egregious the infringement has been in this case, below is a chart identifying the additional types of infringing goods Redbubble has offered for each OSU common law trademark:[5]

## NUMBER OF INFRINGING GOODS – BY UNREGISTERED MARK AND TYPE

| TYPE OF GOODS | OHIO STATE | OHIO STATE UNIVERSITY | [Block O logo] | [Athletic O logo] | [Brutus Buckeye logo] | [Buckeye leaf logo] | [Crowns logo] | [Stripes logo] | [Jersey #7 logo] | URBAN MEYER IMAGE AND LIKENESS |
|---|---|---|---|---|---|---|---|---|---|---|
| MENS TEE | | | | | | ✓ | ✓ | ✓ | | |
| MENS TANK TOP | | | | | | ✓ | | ✓ | | |
| LEGGINGS | ✓ | | | ✓ | | | | | | |
| SKIRTS/DRESSES | ✓ | | | ✓ | | | | ✓ | | |
| PILLOW | ✓ | | | | | | | | | |
| DECAL/STICKER | ✓ | ✓ | | ✓ | ✓ | | ✓ | ✓ | ✓ | ✓ |
| SEAT CUSHIONS | | | ✓ | ✓ | | | | | | |
| PURSES | ✓ | | | ✓ | | | | | | |
| PHONE/LAPTOP CASES | | | | ✓ | ✓ | | | | | |
| NOTEBOOKS | | ✓ | | ✓ | | | | | | |
| TOTE BAGS | | | | ✓ | | | | | | |
| SCARVES | | | ✓ | | | | | | | |

Here, Redbubble's egregious and willful infringement does serious damage to OSU's lucrative licensing program, through which legitimate businesses pay significant money for the right to sell products and services bearing OSU's trademarks.  (*See* Cleveland Aff. ¶¶ 7–8; Van Brimmer Aff. ¶¶ 7, 13–16.) Even today, one-and-a-half years after OSU gave notice to Redbubble that it was selling counterfeit OSU products, Redbubble continues to sell, offer for sale, or distribute products that are counterfeit and infringe upon OSU trademarks. Upon this court issuing a finding of liability, Redbubble requests this Court schedule a hearing on the issue of damages.

---

[5]     Many of these trademarks are federally registered, but for use on different goods, or are the subject of pending trademark applications at the United States Patent and Trademark Office.

**VI.    Redbubble ignores settled law in this District that the Communications Decency Act is not a defense to OSU's right-of-publicity claim.**

Redbubble also asserts that it is not liable for the Ohio state law claim for violation of Urban Meyer's right of publicity (the "Meyer Persona"). (Redbubble's Mot. at 30–38.) As in the trademark infringement claim, Redbubble first argues that there is no liability as it did not "use" the likeness of Mr. Meyer. For the same reasons stated above, Redbubble is, in fact, a user of the OSU trademark and, in turn, has used the Meyer Persona for a commercial purpose. Pursuant to Ohio's right-of-publicity statute and *Skreened*, the unauthorized use of the Meyer Persona for a commercial purpose, including the offering for sale of goods bearing Meyer's name, image, and likeness, constitutes a violation of Ohio law. *See* Ohio Rev. Code Chapter 2741.

Redbubble then proceeds to argue that it is immune from a state law right-of-publicity claim under Section 230 of the Communications Decency Act (the "CDA"). (Redbubble's Mot. at 33–38.) Curiously, Redbubble recognizes that this Court has explicitly stated that Section 230 of the CDA does not apply in the context of trademark claims or state law right-of-publicity claims. (Redbubble's Mot. at 34–35 (quoting *Skreened*, 16 F. Supp. 3d at 918).) Inexplicably, Redbubble then argues, without evidence, that the holding in *Skreened* must be erroneous because the Ninth Circuit Court of Appeals had previously stated that Section 230's preemption provision applies only to *federal* intellectual property claims. (*Id.* at 35 (citing *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118–19 (9th Cir. 2007).) Redbubble completely ignores the *Skreened* Court's citation to cases within both the Sixth Circuit and a sister circuit with similar determinations. *See Skreened*, at 918 (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322–24 (11th Cir. 2006); *Ford Motor Co. v. GreatDomains.com, Inc.*, 2001 WL 1176319, at *1 (E.D. Mich. Sept. 25, 2001)). Redbubble also ignores other circuits that have addressed the issue and disagreed with *Perfect 10*'s conclusion. *See, e.g.*, *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 302 (D.N.H. 2008) ("Consistent with

its text, § 230(e)(2) applies simply to 'any law pertaining to intellectual property,' not just federal law."). Instead, Redbubble seeks to avoid this Court's authority and simply pretend that this Court is wrong, notwithstanding that decisions of the Ninth Circuit are not binding on this Court. In fact, this is a settled issue: the CDA does not apply.

Moreover, by its terms, the CDA was expressly designed to "promote the continued development of the Internet and other interactive computer services and other interactive media." 47 U.S.C. § 230(a)(1). The CDA applies only to the activities of providers or users of "an interactive computer service." *Id.* § 230(c). Here, OSU is not limiting its right-of-publicity claim to the commercial use of the Meyer Persona on Redbubble's website. Rather, Redbubble infringed OSU's rights in the Meyer Persona both on its website and by facilitating the placement and sale of the images on counterfeit goods. Accordingly, the Court should dismiss Redbubble's specious arguments regarding its claimed immunity from liability for violation of Urban Meyer's right of publicity and grant summary judgment to OSU.

## VII. Conclusion.

For the foregoing reasons, Plaintiff The Ohio State University respectfully requests:

A. that the Court grant Plaintiff The Ohio State University summary judgment against Defendant Redbubble, Inc. as to the claims of trademark infringement, unfair competition, passing off, and counterfeiting under the Lanham Act and for violation of the right of publicity assigned to The Ohio State University under Ohio Rev. Code Chapter 2741, *et seq.*;

C. that the Court award Plaintiff The Ohio State University statutory damages for Defendant's infringement, passing off, unfair competition, counterfeiting and violation of the rights of publicity of Urban Meyer;

D.     that the Court enter a permanent injunction enjoining Defendant Redbubble, Inc. from using the Ohio State Marks or any other words or signs or symbols or device that suggest an affiliation, approval, license, connection, sponsorship or endorsement with Plaintiff The Ohio State University;

D.     that the Court find that this case is an "exceptional case" under 15 U.S.C. § 1117 and grant Plaintiff The Ohio State University its reasonable and necessary attorneys' fees incurred as a result of having to bring and prosecute its claims against Defendant Redbubble, Inc.; and

E.     that Plaintiff The Ohio State University be awarded such other and further relief to which it may show itself to be justly or equitably entitled.

Respectfully submitted,

_/s/ Kevin T. Shook_____
Stephen E. Chappelear (0012205)
Kevin T. Shook, Trial Attorney (0073718)
Samantha M. Quimby (0081968)
FROST BROWN TODD LLC
10 W. Broad Street, Suite 2300
Columbus, Ohio 43215
(614) 464-1211 Telephone
(614) 464-1737 Fax
schappelear@fbtlaw.com
kshook@fbtlaw.com
squimby@fbtlaw.com
*Attorneys for Plaintiff The Ohio State University*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was forwarded via electronic mail to the following counsel of record on this, the 26th day of November, 2018.

 /s/ Kevin T. Shook               
Kevin T. Shook

0104751.0710768   4818-9471-7050v10

24