**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THE OHIO STATE UNIVERSITY, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:17-cv-01092-ALM-CMV |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| REDBUBBLE INC., *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendant. | : | |

---

**DEFENDANT REDBUBBLE INC.'S REPLY MEMORANDUM
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

---

# TABLE OF CONTENTS

I. INTRODUCTION & SUMMARY OF ARGUMENT ..............................................................1

II. ARGUMENT .........................................................................................................................3

    A. Redbubble Is Not Liable for Direct Trademark Infringement as a Matter
       of Law Because It Has Not Used the Marks in Question ........................................3

*Summary of Argument*: To prevail on its claims in this action, all of which are based solely on a theory of direct liability, OSU must show that Redbubble itself "used the [OSU Marks] in commerce." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Since Redbubble has not made any "use" of the Accused Marks, summary judgment in favor of Redbubble is warranted on OSU's direct trademark infringement claims.

      1. The Third-Parties Who Design and Upload Infringing Listings,
         Not Redbubble, Are the Product Sellers, and Thus the Parties
         *Directly* Liable for Any Infringement .............................................................4

*Summary of Argument*: The undisputed evidence demonstrates that the sales contracts for transactions occurring through the Redbubble Marketplace are between the purchaser and the third-party Seller. These facts permit only one conclusion: the third-party artists, not Redbubble, are the sellers of the products offered on the Redbubble Marketplace.

         a. Redbubble does not meet the legal definition of a seller ........................5

*Summary of Argument*: Courts have universally held that parties who act as intermediaries for a transaction, like Amazon and also Redbubble, are not direct sellers and are not directly liable for infringement under the Lanham Act. The reasoning of these cases applies with equal force to Redbubble, and OSU's efforts to distinguish these cases fail. Like Amazon, Redbubble provides a platform that enables third-party Sellers to offer products for sale that the Sellers themselves create and upload, without Redbubble's active involvement. Like Amazon, Redbubble performs various services to facilitate the functioning of the Marketplace, including payment processing, and charges a fee for those services. Like Amazon, Redbubble does not make the products offered for sale on its Marketplace. And like Amazon, Redbubble never takes title to the products sold via the Marketplace, and never enters into a contract with purchasers of those products; rather, all sales and offers for sales are made by third-party Sellers.

         b. Redbubble cannot be held liable for *direct* trademark
            infringement merely because site visitors might mistakenly
            believe Redbubble sells the products offered through the
            Redbubble Marketplace ........................................................................10

*Summary of Argument*: OSU argues that "[c]onsumers are not visiting Redbubble's site to purchase goods from an individual artist's

shop, they are buying goods from Redbubble." There is no legal authority for this novel proposition, and OSU has not offered any evidence that users who purchase products on the Redbubble marketplace believe that Redbubble is selling those products, rather than the individual third-party Sellers who design, upload and offer the products and who are designated as the sellers on the Marketplace. In fact, the information that a consumer sees before purchasing a product on the Redbubble Marketplace consistently identifies the third-party Seller of the products.

OSU's argument that post-sale communications between Redbubble and purchasers of products sold on the Redbubble Marketplace subjects Redbubble to liability for direct infringement also lacks both legal and factual support. OSU does not point to any case law that might support such a proposition, and OSU's description of these communications is misleading – Redbubble's post sale communications consistently and repeatedly inform every customer that they are buying from the third-party seller, not Redbubble.

2.  As a Matter of Law, Redbubble Cannot Be Liable for **Direct Infringement** for Facilitating the Manufacture or Distribution of Product by Third Parties.........................................................................15

*Summary of Argument*:  As a matter of law, facilitating infringement by others cannot subject Redbubble to liability for **direct** trademark infringement. Liability for "facilitating infringement" is not direct liability; if anything, it may comprise *contributory* infringement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93, 103 (2nd Cir. 2010). OSU has not asserted a claim for contributory infringement. OSU also disingenuously argues that Redbubble is directly liable for trademark infringement because it provides an automated infrastructure that will "ineluctably lead to the manufacture of infringing products." No published opinion has ever based liability for direct trademark infringement on facilitating the manufacture of infringing products or performing "legwork" for infringing transactions. An online marketplace like Redbubble that does not itself make or sell infringing products simply does not engage in conduct that could potentially subject it to liability for **direct** trademark infringement.

B.  OSU Has Not Offered Evidence of Intentional Misconduct from which a Trier of Fact Could Find in OSU's Favor on its Third Count for Counterfeiting ......................................................................................18

*Summary of Argument*:  OSU must prove not only that Redbubble used counterfeit OSU trademarks, but also that Redbubble (as opposed to the third-party Sellers) "intentionally used the mark knowing it was a counterfeit." *Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002). OSU has made no effort to show that Redbubble knowingly and intentionally permitted the sale of any specific product bearing an OSU trademark. Rather, OSU insists that

Redbubble has acted with the requisite intent because it has in general been "willfully blind" to the alleged counterfeiting. To constitute "willful blindness," the defendant must (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). The undisputed record establishes that Redbubble has deliberately sought to improve its identification and interception of infringement at the earliest opportunity. OSU's interpretation of "willful blindness" would render the intent requirement of the counterfeiting statute and the "additional act" required for enhanced damages a nullity, in violation of multiple rules of statutory construction.

C.  Redbubble Is Entitled to Judgment in Its Favor on OSU's Fourth Count for Violation of Right of Publicity Under O.R.C. Chapter 2741 ........................... 21

    1.  Redbubble Is Not Liable Because It Did Not Use Mr. Meyer's Persona ........................................................................................... 21

*Summary of Argument*:  OSU argument that Redbubble "used" Mr. Meyer's persona in the same way it used OSU's trademark is both factually and legally erroneous. Factual, OSU has not established that Redbubble used either OSU's trademarks or Mr. Meyer's persona. Legally, OSU mistakenly assumes that the standards for "use" are the same for the Ohio Right of Publicity statute as they are under federal trademark law, without any authority to support that assumption. Courts have consistently held that in the context of right of publicity, to "use" a plaintiff's persona, a defendant must take affirmative steps to specifically exploit the persona in question and cannot be held liable for a right of publicity claim based on content uploaded by a third party.

    2.  OSU Does Not Dispute that Redbubble Is Statutorily Exempt from Liability on OSU's Right of Publicity Claim as an Intermediary ................................................................................ 22

*Summary of Argument:* Because OSU did not challenge (or even address) Redbubble's Section 2741.02(E) argument and related evidentiary showing, Redbubble is entitled to summary judgment on OSU's right of publicity claim based on this statutory exemption.

    3.  Redbubble Is Immune from OSU's State Law Right of Publicity Claim as an Interactive Computer Service Under Section 230 of the Communications Decency Act ........................................... 22

*Summary of Argument*:  OSU's Opposition does not seriously dispute (or even directly address) Redbubble's showing that it satisfies the three requirements to qualify for this statutory immunity, as set forth in *Jones v. Dirty World Entertainment Recordings, LLC*, 755 F.3d 398, 409 (6th Cir. 2014). Instead, OSU argues that a right of publicity claim is a state law intellectual property claim, and that such claims fall outside the protections of the statute, relying primarily on dicta by Judge Frost in *Skreened*. Admittedly, none of the cases cited by either of the parties are

binding on this court. However, (1) as noted in *Perfect 10, Inc. v. Ccbill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007), "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service;'" (2) the Sixth Circuit has held that the immunity provisions in Section 230 should be construed broadly, and that "close cases must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promised or encouraged – or at least tacitly assented to – the illegality of third parties" (*see Jones, supra,* 755 F.3d at 408); and (3) the only federal appellate court to directly rule on whether right of publicity claims are protected under the CDA, the 9th Circuit in *Perfect 10, supra,* 488 F.3d at 1119, specifically held that the CDA bars a claim for violation of right of publicity against a service provider that otherwise qualifies for the protections of the CDA.

CONCLUSION....................................................................................................24

CERTIFICATE OF SERVICE ............................................................................25

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Redbubble is not a rogue organization that disregards the intellectual property rights of others. To the contrary, Redbubble has spent substantial time and resources to combat the uploading and sale of infringing content through the Redbubble Marketplace, it has worked collaboratively and successfully with hundreds of content owners to protect their intellectual property rights, and its proactive screening procedures are preventing over 99% of listings that may potentially infringe OSU's marks from being offered for sale by third-party Sellers through the Marketplace.

Nor is Redbubble a printer/seller who can be held liable for direct infringement based on its manufacture, sale or transportation of infringing products. Rather, the evidence reflects that for sales occurring through the Redbubble Marketplace, Redbubble is an intermediary - or, in OSU's words, a "facilitator." But a facilitator cannot be held liable for **_direct_** infringement. Indeed, OSU has not contested the similarities between Redbubble's business model and that of Amazon, which has repeatedly been held not liable for direct infringement. *See, e.g., Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) ("*Milo & Gabby I*) (granting summary judgment of no direct trademark infringement because Amazon was not the seller of the products); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) (same); *see also H-D U.S.A., LLC v. SunFrog LLC*, 311 F. Supp. 3d 1000, 1037 (E.D. Wisc. 2018)(explicitly distinguishing SunFrog's printer/seller business model from that of a marketplace like Amazon or Redbubble).

Redbubble simply does not engage in activities that could even arguably subject it to liability for **_direct_** trademark infringement. More specifically, and in light of the evidence submitted by Redbubble and OSU's failure to counter that evidence in its responsive papers, the

following dispositive facts must be deemed established for purposes of this motion:

- Redbubble did not create, design or upload the allegedly infringing images;

- Redbubble did not print or otherwise manufacture the allegedly infringing products, nor own or control the facilities or equipment with which those products were printed or manufactured;

- Redbubble never took possession, control, or ownership of or title to the Accused Products; and

- Redbubble did not pack, ship, or even handle those products.

Each of these facts distinguishes OSU from the opinions in *Sunfrog*, *Skreened*, and the other cases on which OSU primarily relies, in which liability for direct infringement was found.[1]

OSU has not cited, and Redbubble is unaware of, any case that has ever imposed liability for ***direct*** trademark infringement on a party that, like Redbubble, has not itself made, sold, transported or taken title to and/or responsibility for the goods that are the subject of the claim. Rather, much of OSU's briefing focuses on how Redbubble may *facilitate* the allegedly infringing conduct of others. To the extent a claim might theoretically be stated against Redbubble for any connection with *facilitating* infringement of others, that claim would be one for ***contributory***, not ***direct***, infringement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93, 103 (2nd Cir. 2010) (emphasis added) (expressly defining contributory infringement as "culpably *facilitating* the infringing conduct of the counterfeiting vendors"). But OSU has expressly represented that "OSU has not brought any claim for contributory infringement. OSU has only

---

[1] "*Sunfrog*" refers to *H-D U.S.A., LLC v. SunFrog LLC*, 311 F. Supp. 3d 1000 (E.D. Wisc. 2018), while "*Skreened*" refers to *Ohio State Univ. v. Skreened Ltd.*, 17 F. Supp. 3d 905 (S.D. Ohio 2014).

brought claims against Redbubble for direct infringement." *See* OSU Opp. at i.[2]

As a matter of law, the undisputed facts show that Redbubble has not engaged in conduct for which it can be held either directly liable under the Lanham Act or in violation of Ohio's statutory right of publicity. Accordingly, entry of summary judgment in favor of Redbubble on OSU's claims is warranted.

## II.    ARGUMENT

### A.    Redbubble Is Not Liable for Direct Trademark Infringement as a Matter of Law Because It Has Not Used the Marks in Question.

Redbubble agrees with OSU that there is no dispute with respect to the facts that are material to resolving this motion. However, OSU's Opposition focuses on the wrong facts.

While OSU has devoted substantial briefing to its ownership of protectable trademarks, and whether products that infringe those trademarks were purchased through the Redbubble Marketplace, these facts are immaterial to this motion,[3] because OSU has failed to demonstrate that Redbubble engaged in conduct that could constitute an actionable "use" of the OSU marks in commerce. To prevail on its claims in this action, all of which are based solely on a theory of direct liability, OSU must show that Redbubble itself "used the [OSU Marks] in commerce." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). The Lanham Act itself defines "use in commerce" as occurring with respect to goods when the mark "is placed in any manner

---

[2] "OSU Opp." or "OSU Opposition" refers to OSU's Reply in Support of Plaintiff's Motion for Summary Judgment and Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment, Docket No. 17.

[3] Redbubble has not disputed for purposes of this motion that third parties have designed, uploaded and sold through the Redbubble Marketplace a limited number of products that use OSU's trademarks, but Redbubble cannot be a ***direct*** infringer for those transactions. Only the third-party Sellers who created, uploaded and sold the allegedly infringing designs, who hold title to the accused products, and who are in contractual privity with their purchasers could potentially be held liable for direct infringement.

on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto" and when "the goods are sold or transported in commerce." 15 U.S.C. § 1127.

Without directly addressing these legal definitions or standards for what constitutes an infringing "use," OSU basically asserts two categories of "uses" of its marks that it claims could subject Redbubble to liability for direct infringement: 1) Redbubble is itself the "seller" of products offered on the Redbubble Marketplace;[4] and 2) Redbubble has "facilitated infringement" by contracting with third parties to have infringing products manufactured and sold, or by providing platform software that automatically relays instructions to manufacture the infringing products, or by "performing most of the legwork" that resulted in the infringing transactions. These arguments are both factually and legally baseless.

Since Redbubble has not made any "use" of the Accused Marks, summary judgment in favor of Redbubble is warranted on OSU's direct trademark infringement claims.

**1.    The Third-Parties Who Design and Upload Infringing Listings, Not Redbubble, Are the Product Sellers, and Thus the Parties *Directly* Liable for Any Infringement.**

Redbubble agrees with OSU that the issue of who makes a sale is a "legal conclusion" that can be resolved on summary judgment.[5] (*See* OSU Opp. at 2). Here, the undisputed evidence

---

[4] OSU points out at page 5 of its Opposition that the Lanham Act prohibits placing an infringing mark on the goods in question "or the displays associated with them," and concludes that "the fact that OSU's trademarks are displayed on Redbubble's website with products offered for sale constitutes unlawful trademark infringement by itself." However, the undisputed evidence establishes that to the extent that OSU's trademarks are displayed, they are displayed by the third-party Sellers when they upload their designs. As a result, OSU's argument does not support its claim that Redbubble is liable for ***direct*** trademark infringement.

[5] *See, e.g., Metro Communications Co. v. Ameritech Mobile Communications, Inc.,* 984 F.2d 739, 745-46 (6th Cir. 1993) (granting summary judgment that defendant is not a seller under the Robinson-Patman Act because the facts showed that "[t]he plaintiffs act as intermediaries between Ameritech and its service users; they do not buy the services and then resell them to the customers"; *Milo & Gabby, LLC v. Amazon.com,* 144 F. Supp. 3d 1251, 1252-54 (W.D. Wash. 2015) ("*Milo & Gabby II*") (holding that "whether something constitutes an 'offer for sale' is a

shows that the sales contracts for transactions occurring through the Redbubble Marketplace are between the purchaser and the third-party Seller; the agreement between Redbubble and the third-party Seller confirms that the third-party who creates and uploads the work is the seller; the product pages, order and shipping confirmation emails and invoices identify the third-party artist as the seller; and perhaps most importantly, Redbubble never takes ownership of or title to the products. These facts permit only one conclusion: The third-party artists, not Redbubble, are the sellers of the products offered on the Redbubble Marketplace.

### a.  Redbubble does not meet the legal definition of a seller.

As already noted, courts have universally held that "parties who act as intermediaries for a transaction," like Amazon and Redbubble, "are not direct sellers and are not directly liable for infringement under the [Lanham Act]." *See, e.g., Tre Milano, supra* (quoting *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 464 (S.D.N.Y. 2011)). Although OSU nonetheless asserts that "Redbubble is a *seller*" and therefore is liable for direct infringement, it offers no legal definition of a "seller," or other authority to adequately support its position. On the other hand, the cases cited by Redbubble in its Cross-Motion, and particularly those relating to Amazon, provide ample guidance on this issue, and clearly establish that it is the third-party Sellers, not Redbubble, who "sell" the products offered on the Redbubble Marketplace and who would bear any legal liability for direct infringement in connection with those sales.

In *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 885 (Fed. Cir. 2017) (*Milo & Gabby III*), the Federal Circuit provided an extensive analysis of the standards for determining

---

question of law; "); *Allstate N.J. Ins. Co. v. Amazon.com, Inc.*, Civil Action No. 17-2738 (FLW) (LHG), 2018 U.S. Dist. LEXIS 123081, at *37 (D.N.J. July 24, 2018) (granting summary judgment that Amazon is not a "seller" under the New Jersey product liabilities laws, and discussing the decisions of numerous courts who have come to the same conclusion).

who may be liable as a product "seller."[6] The Court began by reviewing the "ordinary meaning" of the term "sale" in dictionary definitions and under the UCC, noting that "the common[] or usual meaning of the term sale includes those situations in which a contract has been made between two parties who agree to transfer title and possession of specific property for a price." 693 F. App'x at 886. The court then observed that at least in the patent law context, "the presence or absence of passage of title [is] a significant indicator of whether a sale has occurred." *Id.*

Applying this "ordinary meaning" definition to Amazon's "Fulfillment by Amazon" service, in which Amazon stores inventory of third parties' products that are sold through the Amazon Marketplace and packages and ships them to consumers, the Court concluded that Amazon was not a seller even in that context. In so ruling, the Court reasoned that "Amazon never held title to the accused products" and that Amazon "did not control what information or pictures were put on the product-detail page, nor did it control the price for which the product was sold." *Id.* at 886.

> Amazon, therefore, was not responsible for the actual listing of the product for sale, consummating the sale, or transferring title. Instead, Amazon merely provided an online marketplace that third-party sellers could use to sell their products and then, in some instances when the third-party sellers used the additional Amazon services, shipped the products to the final destination. Thus, while Amazon's services made it easier for third parties to consummate a sale, the third parties remained the sellers.

*Id.* at 886-87. *See also GMA Accessories, supra*, 765 F. Supp. 2d at 464 (holding that defendant was not a "seller" under the Lanham Act because "[t]here is no evidence that [defendant] took

---

[6] While the Federal Circuit's detailed discussion of seller in *Milo & Gabby III* was in the specific context of a copyright infringement claim, it is equally relevant to and indeed draws support from trademark law as well. In fact, the district court in *Milo & Gabby I* applied basically the same rationale in granting summary judgment to Amazon on plaintiff's direct trademark infringement claim, and that judgment was affirmed on appeal in *Milo & Gabby III*.

title to the merchandise, maintained an inventory of merchandise, bore the risk of loss or other traditional indicia of status as seller").

Indeed, Amazon has consistently been held immune from liability for direct intellectual property infringement claims directed at products listed by third parties on the Amazon Marketplace based on a determination that Amazon is not the "seller" of those products. *See, e.g., Milo & Gabby I, supra,* 15 WL 4394673 at \*6 (granting summary judgment of no direct trademark infringement because Amazon is not a seller with respect to products listed third-parties on the Amazon Marketplace, as the third-parties "retain full title to and ownership of the inventory sold"); *Tre Milano, supra* (finding that Amazon was a "transactional intermediary" and therefore was not liable for direct trademark infringement, as "Amazon did not currently have any [accused products] in its own inventory; those it sold belonged to third party sellers").[7] And courts have similarly concluded that Amazon is not a seller in other areas of the law.[8]

---

[7] *See also Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) (granting summary judgment on direct copyright infringement claim, and holding that for products sold in Zshops, the predecessor to third-party sellers on the Amazon Marketplace, "Amazon operates web sites, provides retail and third party selling services to Internet users, and maintains computers to govern access to its web sites"); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) (granting summary judgment in favor of Amazon on a direct copyright infringement claim based on product sold by a third-party seller, noting that "Amazon merely provided the forum for an independent third party seller to list and sell his merchandise" and was not "actively involved in the sale").

[8] *See, e.g., Eberhart v. Amazon.com, Inc.*, 325 F. Supp. 3d 393 (S.D.N.Y. 2018) (holding as a matter of law that Amazon is not a seller or distributor of products listed by third-parties on the Amazon Marketplace for purposes of a strict product liability claim); *Allstate N.J. Ins. Co. v. Amazon.com, Inc.*, 2018 WL 3546197, at \*5-12 (D.N.J. July 24, 2018) (same); *Fox v. Amazon.com, Inc.*, 2018 WL 2431628, at \*8 (M.D. Tenn. May 30, 2018) (same); *Erie Ins. Co. v. Amazon.com Inc.*, 2018 WL 3046243, at \*1-3 (D. Md. Jan. 22, 2018) (same); *Oberdorf v. Amazon.com, Inc.*, 295 F. Supp. 3d 496, 499-501 (M.D. Pa. 2017) (same); *Stiner v. Amazon.com Inc*, 2017 WL 9751163, at \*5-7 (Ohio Com. Pl. 2017) (same, applying Ohio law); *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541-42 (D. Md. 2016) (dismissing a Maryland-law breach of warranty claim against Amazon because "Amazon's role as the 'platform' for the third-party sales does not qualify it as a merchant or a seller under Maryland's UCC").

Presumably recognizing that this line of cases, and particularly the opinions involving Amazon, severely undermines OSU's legal position, OSU engages in a half-hearted effort to distinguish these authorities. For example, OSU erroneously argues at page 8 of its Opposition that the *Milo & Gabby I* opinion is inapplicable because it "was a copyright infringement case and did not analyze trademark infringement at all." To the contrary, the district court in *Milo & Gabby* granted Amazon's motion for summary judgment on plaintiff's direct trademark infringement claim, reasoning in relevant part as follows:

> [T]he Court rejects Plaintiffs' contention that Amazon is liable for ***trademark infringement*** based on its sales and shipment of physical items. Here, the evidence demonstrates that Amazon is not the seller of the alleged infringing products. Likewise, third-party sellers retain full title to and ownership of the inventory sold by the third party. Plaintiffs have provided no evidence to the contrary with respect to any specific third party involved with the products in this case. Accordingly, the Court concludes that Amazon was not the seller of the products at issue here.

*Milo & Gabby I, supra,* 2015 WL 4394673, at *6 (emphasis added) (citations omitted), *aff'd Milo & Gabby III, supra,* 693 F. App'x at 881, 886.

OSU also attempts to distinguish the *Tre Milano* opinion, suggesting that the court there "found that Amazon did not directly infringe Tre Milano's trademarks because it merely facilitated a sale between a third-party buyer and seller and did not facilitate the creation of the product or the placement of the Tre Milano trademark on the counterfeit product." OSU Opp. at 8. But the *Tre Milano* ruling contains no discussion whatsoever along these lines. Rather, the California Court of Appeal held that Amazon was not a direct trademark infringer because "Amazon is a service provider, not the seller. Amazon did not currently have any [accused products] in its own inventory; those it sold belonged to third party sellers. That Amazon provided the product description and handled the payments did not make it a direct seller of the products." 2012 WL 3594380 at *12.

Given the striking similarities between the Redbubble Marketplace and the Amazon Marketplace, the reasoning of these cases applies with equal force to Redbubble. As summarized at pages 3-8 of Redbubble's Cross-Motion, like Amazon, Redbubble is "a service provider, not the seller." Like the Amazon Marketplace, the Redbubble Marketplace provides a platform that enables third-party Sellers to offer products for sale using listings that the Sellers themselves create and upload, without Redbubble's active involvement. Like Amazon, Redbubble performs various services to facilitate the functioning of the Marketplace, and charges a fee for those services. Like Amazon, Redbubble does not make the products listed by third parties on its Marketplace, nor set the price for those products. And like Amazon, Redbubble never takes title to the products sold via the Marketplace, and never enters into a contract with purchasers of those products; rather, all sales and offers for sales are made by third-party Sellers.

There are, of course, differences between the Redbubble Marketplace and the Amazon Marketplace, but they cut against a finding of ***direct*** trademark infringement. For example, Amazon has created product descriptions for items sold on the Amazon Marketplace, while Redbubble does not. Similarly, Amazon stores inventory of products offered by third-party sellers, in facilities controlled by Amazon, and packages and ships those products itself. [Supplemental Declaration of Kenneth B. Wilson in Support of Redbubble Inc.'s Cross-Motion for Summary Judgment ("Wilson Supp. Decl.") (filed contemporaneously herewith), Exh. D.] Redbubble does not provide any such services.[9]

---

[9] OSU argues that Redbubble differs from Amazon because the goods sold on the Redbubble Marketplace are "newly made" or because Redbubble facilitates their manufacture, but as discussed in more detail below, OSU offers no reason, and Redbubble cannot think of any reason, why this fact makes a difference to the question at hand, namely whether Redbubble is liable for ***direct*** infringement based on the manufacture or sale of allegedly infringing products.

In sum, as is the case with other transactional intermediaries or facilitators like Amazon, Redbubble did not sell or otherwise "use" the OSU trademarks at issue in this case. Redbubble therefore cannot be liable for ***direct*** infringement for transactions occurring through the Redbubble Marketplace as a matter of law.

> **b. Redbubble cannot be held liable for *direct* trademark infringement merely because site visitors might mistakenly believe Redbubble sells the products offered through the Redbubble Marketplace.**

Rather than directly addressing the relevant legal standards, OSU argues that Redbubble should be held liable as a seller, not because Redbubble sells products, but because consumers purportedly believe they are buying goods from Redbubble. [OSU Opp. at 9] Even if there was legal authority for this novel proposition (and OSU has cited no such authority), OSU has not offered any evidence that users who purchase products on the Redbubble marketplace believe that Redbubble is selling those products, rather than the individual third-party Sellers who design, upload and offer the products, hold title to the products, and contract for their sale.

As its sole support for the proposition that consumer perception can determine whether someone is a "seller," OSU relies on *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 2014 WL 12558573 (S.D.N.Y. 2014), but that reliance is misplaced. In *Lifescan*, certain defendants unsuccessfully attempted to avoid liability for direct infringement by arguing that they were not sellers, but rather "transactional intermediaries." However, unlike Redbubble, those defendants purchased (and therefore took title to) the infringing products from various suppliers. *Id.* at *19. Moreover, and also unlike Redbubble, the defendants not only gave purchasers the impression that they were the sellers of the products, but affirmatively concealed

the identity of the entities that defendants claimed were the sellers. *Id.* On those facts, the court unremarkably found that the defendants were not in fact intermediaries. *Id.*[10]

In contrast, the information that a consumer sees before purchasing a product on the Redbubble Marketplace consistently identifies the third-party who designs and uploads the product listings as the seller of the products. For example, the User Agreement that every Redbubble customer enters into as a condition of using the Redbubble Marketplace repeatedly makes clear that the purchasers are buying from the third-party Sellers, not Redbubble. [Toy Decl. (Doc. #24) Exh. C.] And each product page clearly lists that the product is "by" the third-party Seller and contains other information about the Seller's portfolio and store. [Luthra Decl. (Doc. #26) ¶ 10; Wilson Supp. Decl. ¶¶ 2-5, Exhs. A-C.]

OSU argues that post-sale communications between Redbubble and purchasers of products sold on the Redbubble Marketplace somehow subject Redbubble to liability for direct infringement by not including the identity of the listing artist, but this argument lacks both legal and factual support.[11] As an initial matter, OSU does not point to any case law that might support such a proposition, which would run contrary to both the statutory language and uniform case law requiring that a direct infringer use the infringing mark in commerce. And OSU's description of these communications is misleading at best. For example, OSU argues that

---

[10] OSU's citation to *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628 (D.N.J. July 19, 2018), is equally inapposite. In *Eastern Ports*, the defendants were held directly liable not merely because they "played a role" in transporting infringing goods, but because they expressly represented that they had legal and financial responsibility for the goods (including by being designated consignee on the bill of lading) and made affirmative representations regarding the nature of the goods. *Id.* at *6-7. Redbubble did nothing of the sort.

[11] OSU refers to this under the rubric of "post-sale confusion," but again, the issue for this motion is not whether customers are confused about Redbubble being the source of the allegedly infringing products (although OSU has offered no evidence of such confusion). The issue is whether Redbubble can be held liable for **direct** infringement by engaging in conduct that would satisfy the legal definition of "use" of the allegedly infringing mark.

"Redbubble sends a confirmation email from its Redbubble email address noting the order and its progress" (OSU Opp. at 9), but neglects to mention that the invoice contained in the email is explicitly "issued on behalf of the" named third-party Seller. [*See* Shook Decl. (Doc. #39-1) Exh. 3.] OSU also contends that "Redbubble continues to update the customer via email about the progress of the order from manufacturing to shipping" (OSU Opp. at 9), but omits that this Shipping Confirmation email lists the name of the third-party Seller next to the product. [*See* Shook Decl. Exh. 5.] As another example, OSU notes that the product is shipped in Redbubble packaging and that the return label contains Redbubble's return address (OSU Opp. at 9), but fails to inform the Court that the name on the return label is "An Artist on Redbubble."[12] [*See* Shook Decl. Exh. 7.]

It also bears mentioning that Amazon has similar post-sale communications with its Marketplace purchasers, but those communications provide far less information about the third-party Sellers than Redbubble provides. Like Redbubble, when an Amazon Marketplace order is placed, Amazon sends an Order Confirmation email from its Amazon email address, but unlike Redbubble, that email makes no mention whatsoever of the third-party seller. [Wilson Supp. Decl., Exhs. E-F.] Like Redbubble, Amazon also sends a Shipping Confirmation from an Amazon email address advising the customer of the shipping status, but once again, and unlike Redbubble, that email omits any mention of the third-party who listed the product. [Wilson Supp. Decl., Exh. G.] And like Redbubble, Amazon ships products in Amazon packaging containing Amazon trademarks, but unlike Redbubble, Amazon's return shipping label uses

---

[12] OSU also misleadingly claims that Redbubble's name and trademark appear on clothing itself, but these labels are temporary and meant to be removed before the product is worn, and the hang tags themselves state that the items were created "by an independent artist." [Deshais Decl. (Doc. #25) ¶¶ 12-13; Supplemental Declaration of James Toy ("Toy Supp. Decl.) (filed contemporaneously herewith) ¶ 9.]

Amazon's own name. [Wilson Supp. Decl., Exh. H.] Yet Amazon's post-sale communications have not resulted in a finding that Amazon is a direct infringer; nor should Redbubble's. *See Hendrickson v. Amazon.com, Inc.*. 298 F. Supp. 2d 914 (C.D. Cal. 2003) ("The fact that Amazon generated automatic email responses when the [infringing item] was listed and again when it was sold, does not mean that Amazon was actively involved in the sale").

OSU argues that notwithstanding the undisputed evidence demonstrating what Redbubble does, Redbubble is in fact the seller of products offered on the Redbubble Marketplace because Redbubble says or implies that it is in the FAQ portion of its website. (OSU Opp. at 9, 13). But as a matter of law, such statements cannot create a triable issue of fact, particularly since there is consistent and abundant evidence of Redbubble's conduct that demonstrates that Redbubble is not a seller, and Redbubble has explained at Paragraphs 11-14 of the Supplemental Toy Declaration that the choice of words in the FAQs are inaccurate, imprecise, or taken out of context. As the court in *GMA* noted in rejecting a similar argument, "[t]he fact that [defendant's employees in deposition] may have referred to brokering a sale as 'selling' or having brokered a sale as having 'sold' is indicative of little more than use of loose language. It is the substance of the transaction and not the short-hand label that controls." *GMA, supra*, 765 F. Supp. at 464.

Relying on *SunFrog,* OSU further asserts that consumers are "likely to be confused that Redbubble is affiliated with OSU" because "Redbubble purposefully associates itself with the OSU counterfeit goods" sold through the Redbubble Marketplace, pointing to the presence of Redbubble's trademarks on Redbubble's website (including listings for accused products) and on packaging for and documentation accompanying infringing products. (OSU Opp. at 13.).[13] But

---

[13] OSU's citation to Redbubble's own trademark registrations is a red herring. Those trademarks protect Redbubble's right to put *its own brand* on products. *See, e.g.,* https://www.redbubble.com/people/redbubble/works/13053043-redbubble-logo?rbs=a2e918a3-

as discussed at length both in Redbubble's opening brief and here, *SunFrog* is simply inapposite. Unlike Redbubble, SunFrog actually "prints and ships the [infringing] products." 311 F. Supp. 3d at 1014. Moreover, because SunFrog personnel directly placed SunFrog hangtags on infringing products, the court reasonably imputed to SunFrog an "inten[t] to signify source, sponsorship or affiliation." *Id.* at 1031. But for this Court to impute such intent to Redbubble – whose personnel played no such volitional role in the alleged comingling of Redbubble's and OSU's marks – would be unprecedented.

The cases on which the *SunFrog* court relied further support this distinction. In *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 949 (7th Cir. 1992), the infringer used the plaintiff's mark in conjunction with the infringer's own mark in an advertising tagline that it created to sell its own products – a clear example of active, volitional activity by the accused infringer's employees that finds no parallel in the activities of Redbubble employees. And *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988), the court dismissed as "a smoke screen" an accused infringer's argument that using the infringer's own mark in conjunction with plaintiff's mark "decrease[d] the likelihood of confusion among consumers" – an argument that Redbubble emphatically has not made. *See also, e.g.*, *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992) ("the temporary hang-tags bearing [defendant]'s housemark are of only limited value in diluting the confusing effect of [defendant]'s use of [plaintiff]'s trademark").

---

c4b1-4d2c-bc08-9294ece0c7f1 . They are simply irrelevant to the issue of whether Redbubble is putting or selling *other brands* on products offered on the Redbubble Marketplace (which the undisputed evidence shows it is not doing).

Put simply, while courts have declined to automatically immunize a defendant who uses its own mark in conjunction with the plaintiff's mark, OSU's attempt to construct a rule that would treat such use as *per se* infringing defies precedent and logic.

> **2.** **As a Matter of Law, Redbubble Cannot Be Liable for *Direct Infringement* for Facilitating the Manufacture or Distribution of Products by Third Parties**

OSU argues that Redbubble is responsible for direct infringement because Redbubble "facilitate[s] the creation of the product[s]" sold through the Redbubble Marketplace (thereby implicitly recognizing as it must that Redbubble itself does not create the products offered on the Marketplace). However, OSU ignores that, as a matter of law, facilitating infringement by others cannot subject Redbubble to liability for ***direct*** trademark infringement.

To be clear, Redbubble does not contend (as OSU suggests) that OSU lacks ***any*** remedy for potential confusion arising out of use of OSU's marks on the Redbubble Marketplace. OSU may have claims for direct trademark infringement against the third-party Sellers who create and upload potentially infringing designs, and who sell products bearing those designs.[14]

Redbubble also recognizes that under certain circumstances that do not exist here, a marketplace provider like Redbubble could be held ***secondarily*** liable for facilitating the sales of infringing products by third-parties. But as the case law makes clear, liability for "facilitating infringement" is not direct liability; if anything, it may constitute *contributory* infringement. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013) ("Although the Lanham Act refers only to direct trademark infringers, *Inwood* [*Laboratories, Inc. v. Ives Laboratories, Inc.,* 456

---

[14] Like OSU, Redbubble does not condone infringement of OSU's Marks. In fact, as described in detail in its moving papers (and not disputed by OSU) Redbubble actively discourages and attempts to prevent or remove infringement by these third-parties on its site, and promptly provided OSU with seller names and sales information upon learning of the substance of OSU's claims. [*See* Cross-Motion at pp. 9-18.]

U.S. 844 (1982)] established that liability [for contributory trademark infringement] may also be imposed on those who facilitate the infringement"); *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93, 103 (2nd Cir. 2010) (contrasting liability for direct infringement, which requires defendant's personal use of the infringing mark, with liability "for contributory infringement – i.e., for culpably facilitating the infringing conduct of the counterfeiting vendors"). And OSU has made abundantly clear that it has not asserted a claim for contributory infringement.[15]

The Sixth Circuit's opinion in *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377 (6th Cir. 2006), which OSU highlights at page 5 of its Opposition, is fully consistent with Redbubble's position. In *Lorillard*, the defendant was a retail convenience store that sold counterfeit cigarettes from its stock of inventory. Nonetheless, the defendant argued that it was not liable because "it did not intend to sell counterfeit items and . . . did not create, manufacture or package such items." Unsurprisingly, the court rejected that argument, holding that liability for trademark infringement was not limited "to those who actually create, manufacture or package the infringing items," but extended to those who sell or offer to sell infringing products. *Id.* at 381 ("[s]ellers bear strict liability for violations of the Lanham Act"). The *Lorillard* opinion did not hold, as OSU suggests, that a party may be liable for direct infringement if it contracts out product manufacturing to third-parties (which was not even an issue in the case).

---

[15] Contrary to OSU's claim at pages 6-7 that Redbubble's Cross-Motion "relies almost entirely upon a line of contributory trademark infringement cases beginning with *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F. 3d 93 (2nd Cir. 2010)," Redbubble's Cross-Motion relies exclusively on direct infringement cases. As is clear from page 23 of the Cross-Motion, Redbubble cited *Tiffany* solely because the court there affirmed a finding of no direct trademark infringement "after noting that eBay never took possession of items sold through its marketplace and did not directly sell allegedly infringing products to customers." It should be noted, however, that *Tiffany* further undermines OSU's **direct** infringement claim by holding that eBay's knowledge that counterfeit Tiffany items were being sold on the eBay marketplace "is not a basis for a claim of direct trademark infringement against eBay, especially inasmuch as it is undisputed that eBay promptly removed all listings that Tiffany challenged as counterfeit and took affirmative steps to identify and remove illegitimate Tiffany goods." *Id.* at 103.

Instead, it stands for the rather unremarkable proposition that a retail seller of products from its stock of inventory may be held liable for trademark infringement even if the seller does not make the infringing products. *Lorillard* simply does not support OSU's attempts to extend liability beyond those who themselves, make, package, transport or sell infringing items.

OSU disingenuously argues that Redbubble is directly liable for trademark infringement because it provides an automated infrastructure that will "ineluctably lead to the manufacture of infringing products," citing to the *SunFrog* opinion. But SunFrog was not held directly liable because it provided an automated system that caused third-parties to manufacture the infringing products. Rather, the *SunFrog* court held that "because SunFrog advertises and sells infringing products, operates printers that print the products, packs them for shipping, ships them, and then processes payment, it is directly liable." 311 F. Supp. 3d at 1036.

OSU also claims that Redbubble can be held directly liable for infringement occurring on the Redbubble Marketplace because Redbubble performed "most of the legwork" for the infringing transactions, citing again to *SunFrog*. However, the *Sunfrog* court made clear in the paragraph prior to the paragraph cited by OSU that the "legwork" it was referring to was SunFrog itself "advertis[ing] and sell[ing] infringing products, operat[ing] printers that prints the products, pack[ing] them for shipping, ship[ping] them, and then process[ing] payment." 311 F. Supp. 3d at 1036. Tellingly, in the full sentence quoted from *Sunfrog* by OSU, the district court contrasted eBay, who was held not directly liable because it did not make the infringing products, with SunFrog, who "occupies the opposite posture, as it does most of the legwork in the transaction for an infringing item, ***including physically placing the [infringing] Marks on products***." *Id.* at 1037 (bolded portion was omitted from the quote in OSU's papers).

No published opinion has ever based liability for direct trademark infringement on facilitating the manufacture of infringing products, providing an "automated infrastructure" that leads to the manufacture of infringing products, or performing "legwork" for infringing transactions. Rather, direct liability must be predicated on affirmative and volitional conduct that constitutes the "use" of the infringing mark in commerce (e.g., making or selling the allegedly infringing products). As the district court in *SunFrog* acknowledged in contrasting a printer like SunFrog with the Amazon Marketplace, an online marketplace like Redbubble that does not itself make or sell infringing products simply does not engage in conduct that could potentially subject it to liability for ***direct*** trademark infringement.

**B.      OSU Has Not Offered Evidence of Intentional Misconduct from which a Trier of Fact Could Find in OSU's Favor on its Third Count for Counterfeiting.**

To avoid entry of summary judgment in favor of Redbubble on its counterfeiting claim, OSU must prove not only that Redbubble used counterfeit OSU trademarks (a showing that OSU has not made, as discussed above), but also that Redbubble (as opposed to the third-party Sellers) "intentionally used the mark knowing it was a counterfeit." *Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002). OSU has not presented evidence from which a trier of fact could find in its favor on this issue.

Indeed, OSU has made no effort to show that Redbubble knowingly and intentionally permitted the sale of any specific product bearing an OSU trademark (because no such showing is possible). Instead, OSU insists that Redbubble has acted with the requisite intent because it has been "willfully blind" to the alleged counterfeiting. [OSU Opp. at 14-16.]  But such a result would fundamentally disregard both the applicable law and the undisputed facts.

"[T]he doctrine of willful blindness hold[s] that defendants cannot escape the reach of these statutes by deliberately shielding themselves from clear evidence of critical facts that are

strongly suggested by the circumstances." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). To constitute "willful blindness," the defendant must (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact." *Id.* at 769. "By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Id.*

The undisputed record establishes that, far from "tak[ing] deliberate actions to avoid confirming a high probability of wrongdoing," *id.* at 769, Redbubble has deliberately sought to improve its identification and interception of infringement at the earliest opportunity, even where Redbubble might otherwise have been completely and reasonably unaware of such infringement in the ordinary course of its operations. [Redbubble Memo (Doc. #23) at 11-15.] Those efforts have intercepted, disabled, and removed roughly 1,440 seller-created listings for approximately 27,500 products that Redbubble believed might infringe OSU's trademark rights. [Cantil-Voorhees Decl. (Doc. #27) ¶ 8.] Even taking OSU's evidence in the most favorable light, OSU has only identified (through the Dreitler and Shook Declarations) six allegedly infringing listings that have appeared on the Redbubble Marketplace since OSU identified specific infringing listings in its Complaint and since Redbubble implemented proactive screening based on that identification (but without OSU's cooperation). Redbubble's successful interception of over 99% of the potential infringements precludes a reasonable finder of fact from finding that Redbubble was "willfully blind."

Indeed, taking OSU's "willful blindness" argument to its logical end would mean that once an online marketplace received notice that a seller was offering a counterfeit good on its site, any subsequent offers of similar goods on that marketplace – no matter what efforts the

marketplace took to prevent future infringing offers – would be *per se* intentional, and therefore subject to a finding of counterfeiting and enhanced statutory damages of up to $2 million per type of good. If that were the law, no plaintiff would need to prove actual volition – i.e., willfulness – for any post-notice activity. Reading the requirement of willfulness entirely out of the Lanham Act would render the intent requirement of the counterfeiting statute and the "additional act" required for enhanced damages a nullity, in violation of multiple rules of statutory construction.

OSU also argues that any infringement is intentional and/or willful because it is purportedly ongoing, citing to two allegedly infringing listings that its counsel located in the four months since its summary judgment motion was filed. However, there is no evidence that Redbubble knew of these two listings before they were identified by OSU. To the contrary, as set forth in the Supplemental Toy Declaration, the third-party Sellers who created and uploaded these listings did not use any trademarked terms in the title or tags for the product; indeed, one Seller did not use any tags at all (making it virtually impossible to locate by anyone without image matching technology), while the other used "split" tags that were not detected by Redbubble's proactive policing tools. [Toy Supp. Decl. ¶¶ 3-6.] Under the circumstances, the existence of these two unusual listings, standing alone, can hardly be deemed evidence of intentional or willful infringement.[16]

---

[16] OSU asks the Court to infer willful intent by pointing to instances in which allegedly counterfeit marks of three other universities are offered for sale through the Redbubble Marketplace. Not only is this evidence irrelevant to whether Redbubble has used *OSU's* marks, it also does not support OSU's position. Indeed, while over the years each of these universities has identified specific intellectual property to Redbubble and has requested that Redbubble remove specific listings, which Redbubble has promptly done, none of these universities has asserted that Redbubble is directly liable for infringement that occurs via the Marketplace, To the contrary, at least one of these universities has expressly recognized that the "account holder" who uploaded the content committed any direct infringement that may have occurred. [Toy Supp. Decl. ¶ 10.]

In sum, there is simply no evidence from which the court could conclude that Redbubble used OSU's trademarks at all, let alone that Redbubble used counterfeit OSU marks intentionally and with knowledge that any uses of the marks were counterfeit, or that Redbubble used those marks while willfully turning a blind eye. Summary judgment in favor or Redbubble on OSU's counterfeit claim is therefore mandated on this record.

### C. Redbubble Is Entitled to Judgment in Its Favor on OSU's Fourth Count for Violation of Right of Publicity Under O.R.C. Chapter 2741.

In its Cross-Motion, Redbubble demonstrated that it cannot be held liable under OSU's right of publicity claim for at least three reasons: 1) Redbubble did not itself "use" Mr. Meyer's persona for a commercial purpose, as any such use was by third-party Sellers using the Redbubble Marketplace; 2) in the event that Redbubble were somehow deemed to have "used" Mr. Meyer's persona, Redbubble would be immune as an intermediary that did not have knowledge of the specific unauthorized uses in question; and 3) Redbubble is immunized from liability under Section 230 of the Communications Decency Act. OSU's Opposition superficially addresses the first of these arguments, ignores the second altogether, and mischaracterizes Redbubble's position regarding the third.

### 1. Redbubble Is Not Liable Because It Did Not Use Mr. Meyer's Persona.

While OSU summarily argues at page 20 of its Opposition that Redbubble "used" Mr. Meyer's persona in the same way it used OSU's trademark, that argument is both factually and legally erroneous. From a factual standpoint, OSU's argument is incorrect because, as discussed in detail above, OSU has not established that Redbubble used either OSU's trademarks or Mr. Meyer's persona. From a legal standpoint, OSU's argument mistakenly assumes that the standards for "use" are the same for the Ohio Right of Publicity statute as they are under federal trademark law, without any authority to support that assumption.

As noted at page 31 of Redbubble's Cross-Motion and the cases cited therein, courts have consistently held that in the context of right of publicity, to "use" a plaintiff's persona, a defendant must take affirmative steps to specifically exploit the persona in question and cannot be held liable for a right of publicity claim based on content uploaded by a third party. OSU did not cite to any case law that would shed doubt on this principle.

Since there is no dispute that OSU's right of publicity claim is based on content uploaded solely by third parties other than Redbubble, Redbubble is entitled to judgment on this claim as a matter of law.

> **2.      OSU Does Not Dispute that Redbubble Is Statutorily Exempt from Liability on OSU's Right of Publicity Claim as an Intermediary.**

As Redbubble established in its moving papers (Redbubble Memo at 32-33), the Redbubble Marketplace is a "global communications network" that also serves as a "medium used for advertising" by third-party Sellers who list their products for on the Redbubble Marketplace. Because OSU did not challenge (or even address) Redbubble's Section 2741.02(E) argument and related evidentiary showing, Redbubble is entitled to summary judgment on OSU's right of publicity claim based on this statutory exemption.

> **3.      Redbubble Is Immune from OSU's State Law Right of Publicity Claim as an Interactive Computer Service Under Section 230 of the Communications Decency Act.**

Even if Redbubble were not statutorily immune from the right of publicity claim, and even if Redbubble – as opposed to its artists – had "used" Mr. Meyer's persona, Redbubble would still be entitled to immunity under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, which specifies that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."

OSU's Opposition does not seriously dispute (or even directly address) Redbubble's showing that it satisfies the three requirements to qualify for this statutory immunity. *See Jones v. Dirty World Entertainment Recordings, LLC*, 755 F.3d 398, 409 (6th Cir. 2014). Instead, OSU argues that a right of publicity claim is a state law intellectual property claim, and that such claims fall outside the protections of the statute, relying primarily on dicta by Judge Frost in *Skreened*. But OSU does not dispute that the discussion of Section of 230 in *Skreened* is mere dicta, nor does it explain why the reasoning in *Skreened* and the other cases cited at page 21 of the Opposition, to the extent any reasoning was provided in those cases, should be followed. Rather, OSU claims that this legal issue is "settled law in this District." [OSU Opp. at 21-22.]

Redbubble recognizes that none of the cases cited by either of the parties are binding on this court; they are merely persuasive. However, the following facts are beyond dispute: (1) as noted in *Perfect 10, Inc. v. Ccbill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (citations omitted), "[t]he majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service;'" (2) the Sixth Circuit has held that the immunity provisions in Section 230 should be construed broadly, and that "close cases must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promised or encouraged – or at least tacitly assented to – the illegality of third parties" (*see Jones, supra,* 755 F.3d at 408); and 3) the only federal appellate court to directly rule on whether right of publicity claims are protected under the CDA, the 9th Circuit in *Perfect 10, supra*, 488 F.3d at 1119, specifically held that the CDA bars a claim for violation of right of publicity against a service provider that otherwise qualifies for the protections of the CDA.

There are also compelling policy reasons, consistent with Congressional intent, to interpret the CDA's protections to include state intellectual property claims. "[P]ermitting the reach of any particular state's definition of intellectual property to dictate the contours of this federal immunity would be contrary to Congresses expressed goal of insulating the development of the Internet from the various state law regimes." *Perfect 10, supra,* 488 F.3d at 1118-19 (citations omitted). Indeed, if the CDA is interpreted as OSU proposes, a service provider would "be forced to bear the costs of litigation under a wide variety of state statutes that could arguably be classified as 'intellectual property.' As a practical matter, inclusion of rights protected by state law within the 'intellectual property' exemption would fatally undermine the broad grant of immunity provided by the CDA." *Id.* at 1119 n. 5. (quoting *Zeran, supra*, 129 F.3d at 330)). OSU has offered no rebuttal to these policy concerns.

Redbubble therefore respectfully submits that this Court rule as a matter of law that the CDA bars OSU's right of publicity claim.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Redbubble's Cross-Motion for Summary Judgment and enter judgment in favor of Redbubble on OSU's Complaint and of each cause of action therein.

Respectfully submitted,

*/s/ Gerhardt A. Gosnell II*

James E. Arnold, *Trial Attorney*     (0037712)
Gerhardt A. Gosnell II                (0064919)
JAMES E. ARNOLD & ASSOCIATES, LPA
115 W. Main St., Fourth Floor
Columbus, Ohio 43215
Telephone:(614) 460-1600
Facsimile: (614) 469-1093
Email:     jarnold@arnlaw.com
           ggosnell@arnlaw.com

Kenneth B. Wilson (*admitted pro hac vice*)
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, CA 94019
Telephone: (650) 440-4211
Email: ken@coastsidelegal.com

*Counsel for Defendant Redbubble Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 4, 2019, a copy of the foregoing Defendant Redbubble Inc.'s Reply Memorandum in Support of Cross-Motion for Summary Judgment was filed with the Court using the Clerk of Court's electronic filing system, which will send notice of this filing to all parties that have entered an appearance in this matter.

*/s/ Gerhardt A. Gosnell II*
Gerhardt A. Gosnell II