# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| THE OHIO STATE UNIVERSITY, | : | |
| | : | Case No. 2:17-cv-1092 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Vascura |
| REDBUBBLE, INC., | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before the Court on the parties' Cross Motions of Summary Judgment. (ECF Nos. 17, 23). Plaintiff, The Ohio State University, alleges trademark infringement, unfair competition and passing off, counterfeiting, and violation of right of publicity. (ECF No. 1). The parties' summary judgment motions are fully briefed and ripe for review. For the reasons that follow, the Court **DENIES** Ohio State's Motion and **GRANTS** Redbubble's Cross-Motion.

### I. BACKGROUND

#### A. Factual Background

The parties do not dispute the facts underlying this case. The Ohio State University ("OSU" or "Ohio State") holds several registered trademarks. These include: (1) "BUCKEYES," (2) "OHIO STATE," (3) "OHIO STATE UNIVERSITY," (4) URBAN MEYER, and (5) several other images. (ECF No. 1). A complete list of OSU's claimed trademarks can be found in paragraph 7 of the Complaint, attached to this Order. Ohio State also claims several common law trademarks. (ECF No. 1 at ¶¶11 – 15).

Redbubble, Inc. operates "a global online marketplace platform hosted at redbubble.com . . . ." (ECF No. 23 at 2). Redbubble allows "independent artists" to upload and sell products on

redbubble.com. Redbubble's business model relies on the automated use of third-party services: artists are automatically connected with a third-party manufacturer to make the goods, a third-party service to package and ship the goods, and a third-party to process payment for the goods. (ECF No. 23 at 3). When an item from redbubble.com is shipped, "the Redbubble name and logo does appear on the packaging that products are shipped in; the name on the return address label is 'An Artist at Redbubble,' and the return address itself is Redbubble's." (ECF No. 23 at 8). Some items are also "shipped with a 'hang tag' containing the Redbubble logo that is designed to be removed before the garment is worn." (Id. at n.5). The hang tags also include the artist's name. Many items available for purchase at redbubble.com contain designs that appear to infringe on Ohio State's trademarks.

Ohio State became aware of the allegedly infringing products on redbubble.com at least as early as April 12, 2017, when Ohio State's sent a letter to Redbubble's General Counsel, alleging that several products on redbubble.com infringed Ohio State's trademarks and Urban Meyer's right of publicity. (ECF No. 1 at ¶32). Ohio State's letter included a reference to the search results for the term "Buckeyes." Redbubble sent an email response on April 20, 2017, three days after the date Ohio State had requested for a response. (ECF No. 23 at 16). Redbubble asked Ohio State to "identify the designs it believed were infringing by providing the URLs" and that once Ohio State did so, Redbubble would remove the listings. (ECF No. 23 at 16–17).

On April 25, 2017, Ohio State sent another letter to Redbubble. In its April 25 letter, OSU stated that it was not going to specifically identify counterfeit or infringing products because to do so "would be a full time job" and because it was "not Ohio State's responsibility to police your website to identify and request removal of counterfeits." (ECF No. 24-7 at 2–3).

2

Redbubble responded on April 26 with a different solution: Redbubble would "remove all of the designs on the search results pages, except for those that [OSU] [did not] consider infringing." (ECF No. 24-8 at 2).

Ohio State did not respond to Redbubble's last correspondence. Instead, on December 14, 2017, Ohio State sued Redbubble. Redbubble alleges that after the suit was filed, it took every effort to remove the products that Ohio State would consider infringing and even provided Ohio State with a spreadsheet of the possibly-infringing products and their sales numbers. (ECF No. 23 at 18).

### B. Procedural Background

Ohio State sued Redbubble on December 14, 2017. (ECF No. 1). Ohio State alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), for trademark infringement, unfair competition, passing off, and counterfeiting. Ohio State also claimed violation of rights of publicity for Urban Meyer under Ohio Rev. Code § 2741. (ECF No. 1 at ¶ 1). The parties filed Cross-Motions for Summary Judgment. These Motions are fully briefed and ripe for review.

### II. STANDARD OF REVIEW

A motion for summary judgment is governed by the requirements of Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

The party seeking summary judgment bears the initial burden of presenting law and argument in support of its motion as well as identifying the relevant portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If the moving party satisfies this initial burden, then the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).

Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position is not enough to survive summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case

with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

### III. LAW & ANALYSIS

#### A. Liability Under the Lanham Act

Ohio State has brought claims under the Lanham Act for trademark counterfeiting, infringement, and passing off and unfair competition. Ohio State has also brought a claim for violation of the right of publicity under Ohio Rev. Code §2741. An action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, requires the plaintiff to

> prove that (1) it owns a valid trademark; (2) Defendants used the trademark 'in commerce' and without Plaintiff's authorization; (3) Defendants used the trademark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) Defendants' use of the trademark is likely to confuse consumers.

*Ohio State University v. Skreened Ltd.*, 16 F.Supp.3d 905, 910 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114(a)).

Redbubble cannot be liable for counterfeiting without first being liable for trademark infringement because "[c]ounterfeiting is a subset of trademark infringement." 2–5 Gilson on Trademarks § 5.19 (2008). *See also Skreened Ltd.*, 16 F.Supp.3d at 911 ("[T]o establish liability for trademark counterfeiting, Plaintiff must first prevail on its infringement claim and then also show that Defendants intentionally used Plaintiff's mark knowing it was a counterfeit."). Unfair competition and passing off under 25 U.S.C. § 1125(a) also requires "use in commerce." Redbubble does not contest the validity of Ohio State's trademarks but does argue that Redbubble has not "used" Ohio State's marks in commerce. Therefore, this Court will first determine whether Redbubble's actions qualify as "use in commerce" of Ohio State's marks.

The precise contours of what constitutes "use in commerce" have not been defined, but it is well-established that selling an item constitutes "use." *See Lorillard Tobacco Co. v. Amouri's*

5

*Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) ("[W]e can think of no clearer "use" of goods "in commerce" than offering them for sale.") (internal citations omitted). But generally, "a transactional intermediary is not treated as a seller." *GMA Accessories, Inc. v. BOP, LLC*, 765 F.Supp.2d 457, 464 (S.D.N.Y. 2011). Thus in *GMA Accessories, Inc.*, the district court denied summary judgment for the trademark holder on direct infringement against a showroom because the showroom was "merely a broker, rather than a direct seller." *Id.* In support of this finding, the district court pointed to "no evidence that [Defendant] took title to the merchandise, maintained an inventory of merchandise, bore the risk of loss or other traditional indicia of status as seller." *Id.* Although the district court in *GMA Accessories, Inc.* also allowed the trademark holder's claim for contributory infringement to go forward, Ohio State has only claimed direct infringement.

Few cases have addressed the liability of companies like Redbubble who conduct their business dealings online. Redbubble has relied significantly on *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). But *Tiffany (NJ) Inc. v. eBay, Inc.*, is of limited applicability here. While the Second Circuit discussed eBay's potential liability for direct infringement, the grounds on which the Second Circuit found eBay not liable dealt mostly with eBay's use of the "Tiffany" mark to describe its goods. This sort of rationale does not apply to Redbubble because Redbubble is not in the resale business. Much of the rationale in *Tiffany (NJ) Inc.* applies to eBay's liability for contributory infringement, a claim that Ohio State has not asserted.

The Sixth Circuit has addressed liability for direct trademark infringement for "companies that operate as Internet domain-name registrars or that provide an Internet auction site for registered domain names . . . if a third party registers and seeks to sell a domain name that allegedly violates the rights of a trademark owner." *Bird v. Parsons*, 289 F.3d 865, 877 (6th

6

Cir. 2002). In *Bird*, the Sixth Circuit found that the domain-name registrars or auction sites were not liable for direct trademark infringement or unfair competition. As to online auction activity, the Sixth Circuit noted that "[t]he possibility that [Defendant's] customers might buy or sell infringing domain names does not alter the fact that [Defendant] does not use those names." *Id.* at 878. Domain names may be slightly different from a physical product because of the possibility that "even a domain name that could be used to violate a registered trademark does not necessarily do so." *Id.*

A better analogy to Redbubble is Amazon, which deals in physical products. Amazon has generally not been found liable for direct trademark or copyright infringement because it merely facilitates sales between other parties. *See, e.g.*, *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879 (Fed. Cir. 2017) (finding that Amazon is not a "seller" for purposes of direct copyright infringement); *Hendrickson v. Amazon.com, Inc.*, 298 F.Supp.2d 914, 915 (C.D. Cal. 2003) (finding that Amazon was not the "seller" for purposes of direct copyright infringement); *Tre Milano, LLC v. Amazon.com, Inc.*, B234753, 2012 WL 3594380, at *11–12 (Cal. Ct. App. Aug. 22, 2012) (finding that Amazon was not a seller and had permissibly used a mark as a product description). The Federal Circuit in an unpublished opinion in *Milo & Gabby LLC v. Amazon.com, Inc.*, found that Amazon was not a "seller" for purposes of copyright infringement. Although copyright infringement differs from trademark infringement, the Federal Circuit was nevertheless considering when a company can be considered a "seller" and is therefore persuasive authority here. The Federal Circuit relied on its holdings regarding the definition of "sale" in the patent context and "found the presence or absence of passage of title to be a significant indicator of whether a sale ha[d] occurred in the patent law context." *Milo & Gabby LLC*, 693 F. App'x at 886. The Federal Circuit concluded that Amazon was not a seller. This

was so even though the actual seller used Amazon's fulfillment service and so Amazon held the product for a time in its "warehouse for storage and Amazon boxed up and shipped the product when a sale was consummated on the website." *Id.* The Federal Circuit also noted that "Amazon . . . did not control what information or pictures were put on the product-detail page, nor did it control the price for which the product was sold." *Id.* Ultimately, "while Amazon's services made it easier for third parties to consummate a sale, the third parties remained the sellers." *Id.* at 887.

In contrast to Amazon's non-use of marks, companies such as CafePress.com, Inc. have been held liable for direct infringement. In *Born to Rock Design Inc. v. CafePress.com, Inc.*, the Southern District of New York allowed a claim for direct infringement to survive summary judgment. CafePress.com allowed users to upload their designs to CafePress.com. Customers could then choose one of these designs, select an item to have the design printed on (such as a shirt or mug), and then "CafePress [would print] the design on the selected merchandise and ship[] it to the customer. CafePress collect[ed] the payment, a portion of which [was] remitted to the CafePress.com user who created and uploaded the design." *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588(CM), 2012 WL 3954518, at *1 (S.D.N.Y. Sept. 7, 2012). Similarly, the Eastern District of Wisconsin held SunFrog, LLC liable for direct infringement. *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F.Supp.3d 1000 (E.D. Wisc. 2018). There, the court found SunFrog's actions to constitute use.

> SunFrog, of course, not only advertises and offers infringing designs for sale and prints them onto products, it also ships the finished products and handles payment processing. Unlike the showroom [in *GMA Accessories*], SunFrog exerts control over nearly every aspect of the advertising, sale, and manufacture of the infringing goods, save designing the mockups. By any measure, then, SunFrog uses the H – D Marks.

*H–D U.S.A., LLC*, 311 F.Supp.3d at 1030.

Redbubble contends that it does not use Ohio State's trademarks in commerce because it is not the "seller" of the goods. Rather, the independent artists design the items that are listed on the website. Once a customer places an order, the third-party manufacturer produces the product, and a third-party ships the finished item to the buyer. (Decl. of Anuj Luthra, ECF No. 26). In this way, Redbubble operates like Amazon, hosting a website where sellers can list goods for sale, and arranging for the shipment of goods for the seller. Ohio State, however, argues that Redbubble cannot merely subcontract its way out of compliance with the Lanham Act. Redbubble makes all of the arrangements for the artist to produce, ship, and sell the potentially infringing products. Additionally, "[t]he products are delivered in Redbubble packaging, with a Redbubble invoice, with Redbubble stickers and care instructions, and a Redbubble tag attached to the product." (ECF No. 39 at 11).

Redbubble is not liable for direct infringement on these facts. The caselaw sets up a spectrum against which to measure Redbubble's conduct. At one end are companies that function like auction houses and are not liable for direct infringement. At the other end are companies like CafePress and SunFrog that themselves manufacture and ship infringing products to the customer. Redbubble does not fit neatly into either of these categories. But Redbubble's actions put it closer to the auction house side of the spectrum than to CafePress. Redbubble essentially offers to "independent artists" an online platform through which to sell their goods and access to Redbubble's relationships with manufacturers and shippers. Redbubble is not directly producing the goods nor, like SunFrog, is Redbubble maintaining a design database and then placing the designs onto goods that customers order.

The cases on which Ohio State relies are inapposite. Ohio State argues that *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.* stands for the proposition that

intermediaries can be liable for direct infringement "where (i) the intermediary . . . was communicating with the consumer, (ii) customers of the defendant believed they were doing business with the intermediary, and (iii) invoices for the infringing goods were paid to the intermediary instead of to the real supplier of the goods." (ECF No. 39 at 10) (citing *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 08-CV-1297 (SLT) (SMG), 2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014). But the "intermediaries" in *Johnson & Johnson and Lifescan, Inc.* were not intermediaries at all. Rather, the defendants there purchased goods from suppliers and then sold them directly to the consumer or otherwise "bore the risk of loss." *Johnson & Johnson and Lifescan, Inc.*, 2014 WL 12558573, at *18–19. Additionally, the customers in *Johnson & Johnson and Lifescan, Inc.*, purported to have "no knowledge about the source of the [products] other than that they were acquired from [Defendant]" and that "did not know [Defendant's] source of supply and did not expect [Defendant] to share this 'confidential' information." *Id.* at *19. Here, Redbubble lists in several places that the product is from an "independent artist," and in some places names the artist directly. (ECF No. 23 at 8 n.5; Deshais Decl. ¶ 12).

Ohio State cites to *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, for the proposition that intermediaries that are as involved as Redbubble have been held liable for infringement and counterfeiting. *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, No.: 2:11-cv-4390-CCC-MF, 2018 WL 3472628 (D.N.J. July 19, 2018). But the defendants in *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, were held liable for participating in an arrangement much more elaborate than Redbubble's. The defendants in *Nike, Inc.* were involved in importing goods into the United States. They "[took] responsibility for the goods and ma[de] representations regarding the nature of the goods." *Nike, Inc. v. Eastern Ports Custom Brokers, Inc.*, 2018 WL 3472628, at

*8. The defendants signed Bills of Lading and made false representations about the goods being imported. *Id.* at *7–8.

Ohio State takes the language from *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.* out of context. Ohio State relies on *Lorillard Tobacco Co.* to argue that "Redbubble's argument that it has hired third-party contractors and therefore does not produce, package, ship, or distribute the infringing products has already been found unpersuasive by the Sixth Circuit." (ECF No. 39 at 5). Not so. While *Lorillard Tobacco Co.* does say "[w]e also find . . . no reason to restrict liability to those who actually create, manufacture or package the infringing items," *Lorillard Tobacco Co.*, 453 F.3d at 381, that case dealt with a brick-and-mortar store that physically stocked and sold counterfeit cigarettes. Ohio State's reliance on *Lorillard Tobacco Co.* merely begs the question of whether Redbubble is in fact a seller. Redbubble contests that very assumption. Thus, whether Redbubble is a "seller" is an essential question that this Court must answer prior to making a finding on Redbubble's liability.

Lastly, Ohio State relies on *Skreened Ltd.* as evidence of this Court's previous rejection of defenses similar to Redbubble's. (ECF No. 17 at 2). But Judge Frost in *Skreened Ltd.* specifically noted that "[s]ubject to a few exceptions . . . Defendants do not dispute . . . whether Defendants used the trademark . . . ." *Skreened Ltd.*, 16 F.Supp.3d at 912. Redbubble has based its defense primarily on the argument that it is not "using" Ohio State's trademarks. While Skreened Ltd.'s business model is not entirely clear from the case, it also appears that Skreened Ltd. may have printed the infringing goods itself, making Skreened Ltd. factually distinct from Redbubble. *See Skreened Ltd.*, 16 F.Supp.3d at 908.

Ohio State has made some conclusory references to Redbubble's advertising of the allegedly infringing products. Ohio State has argued in its Response to Redbubble's Cross-

Motion for Summary Judgment that Redbubble "advertis[es] the counterfeit goods on its site," (ECF No. 39 at 10), and "advertises the infringing goods for sale," (ECF No. 39 at 11). These allegations are too conclusory to form a basis for direct trademark infringement or counterfeit liability. Ohio State also argues that "[t]he fact that OSU's trademarks are displayed on Redbubble's website with products offered for sale" also constitutes use. (ECF No. 39 at 5). Ohio State points to 15 U.S.C. § 1127 which states that "use" can include a mark being "placed in any manner on the goods or their containers *or the displays associated therewith*." 15 U.S.C. § 1127 (emphasis added). But this argument ignores the fact that Redbubble is not the one placing Ohio State's marks on its website. Rather, the marks are uploaded by the independent artists.

Therefore, Redbubble is not liable for direct trademark infringement. Because liability for counterfeiting first requires a finding of liability for trademark infringement, Redbubble cannot be liable for counterfeiting. And since Ohio State has based its unfair competition and passing off claim on Redbubble's alleged use of the Ohio State and Meyer trademarks, Redbubble is not liable for unfair competition and passing off.

### B. Right of Publicity Claim under State Law

Ohio State has also claimed a violation of their Right of Publicity in the Urban Meyer persona under Ohio Revised Code § 2741. To state a claim for a violation of the right of publicity under Ohio law, the defendant must have used an "aspect of an individual's persona for a commercial purpose." ORC § 2741.02. Commercial purpose is defined as follows:

> (B) "Commercial purpose" means the use of or reference to an aspect of an individual's persona in any of the following manners:
> (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;
> (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

12

    (3) For the purpose of promoting travel to a place;
    (4) For the purpose of fundraising.

Ohio Rev. Code § 2741.01.

Ohio State has argued that Redbubble meets the "use" requirement under state law for the same reasons Redbubble meets the "use" requirement under federal law. Redbubble argues that the statutory right of publicity requires a more intentional "use" than federal law. Redbubble argues that "a defendant must take affirmative steps to . . . exploit the persona in question and cannot be held liable for a right of publicity claim based on content uploaded by a third party." (ECF No. 45 at 22). This Court need not decide whether Ohio's statutory right of publicity requires such exploitative use, because Redbubble has not "used" Ohio State's marks under the more lenient federal definition.

## IV. CONCLUSION

For the foregoing reasons, Ohio State's Motion for Summary Judgment (ECF No. 17) is hereby **DENIED.** Redbubble's Cross-Motion for Summary Judgment (ECF No. 23) is **GRANTED. This case is CLOSED.**

**IT IS SO ORDERED.**

                                      s/Algenon L. Marbley
                                      **ALGENON L. MARBLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**DATED: March 29, 2019**