# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>100 EAST FIFTH STREET, ROOM 540</td><td></td></tr>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  February 25, 2021

Mr. David Hal Bernstein
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Mr. Stephen E. Chappelear
Eastman & Smith
100 E. Broad Street, 13th Floor
Columbus, OH 43215

Mr. Paul D. Clement
Kirkland & Ellis
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

Mr. Benjamin Michael Flowers
Mr. Michael Jason Hendershot
Office of the Attorney General
30 E. Broad Street, 14th Floor
Columbus, OH 43215

Mr. Gerhardt A. Gosnell II
115 W. Main Street
Fourth Floor
Columbus, OH 43215

Mr. Joseph C. Gratz
Mr. Samuel Zeitlin
Durie Tangri
217 Leidesdorff Street
San Francisco, CA 94111

Joshua M Masur
Zuber Lawler
2000 Broadway Street, Suite 154
Redwood City, CA 94063

Mr. Jeffrey Theodore Pearlman
University of Southern California
USC Gould School of Law
699 Exposition Boulevard
Los Angeles, CA 90085-0021

Ms. Samantha Michele Quimby
Mr. Kevin T. Shook
Frost Brown Todd
10 W. Broad Street, Suite 2300
Columbus, OH 43215

Mr. Kenneth B Wilson
Coastside Legal
455 First Avenue
Half Moon Bay, CA 94019

              Re:  Case No. 19-3388, *The Ohio State University v. Redbubble, Inc.*
                    Originating Case No. : 2:17-cv-01092

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                        Yours very truly,

                        Deborah S. Hunt, Clerk

                        Cathryn Lovely
                        Deputy Clerk

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0050p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT



THE OHIO STATE UNIVERSITY,

> *Plaintiff-Appellant,*

*v.*

REDBUBBLE, INC.,

> *Defendant-Appellee.*

No. 19-3388

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:17-cv-01092—Algenon L. Marbley, District Judge.

Argued: March 12, 2020

Decided and Filed: February 25, 2021

Before: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Kenneth B Wilson, COASTSIDE LEGAL, Half Moon Bay, California, for Appellee. **ON BRIEF:** Michael J. Hendershot, Benjamin M. Flowers, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Kenneth B Wilson, COASTSIDE LEGAL, Half Moon Bay, California, Gerhardt A. Gosnell II, JAMES E. ARNOLD & ASSOCIATES, LPA, Columbus, Ohio, Joshua M. Masur, ZUBER LAWLER & DEL DUCA LLP, Redwood City, California, for Appellee. David H. Bernstein, DEBEVOISE & PLIMPTON LLP, New York, New York, Paul D. Clement, KIRKLAND & ELLIS LLP, Washington, D.C., Joseph C. Gratz, Samuel J. Zeitlin, DURIE TANGRI LLP, San Francisco, California, Jef Pearlman, UNIVERSITY OF CALIFORNIA GOULD SCHOOL, Los Angeles, California, for Amici Curiae.

---

## OPINION

---

NALBANDIAN, Circuit Judge.  Online shopping has transformed American life.  Gone is the heyday of shopping malls and in-person retail.  Instead, Americans increasingly choose to make purchases online.  Although digital marketplaces may not require the same type of upkeep and maintenance as brick-and-mortar businesses, someone still manages them.  This case concerns the responsibilities of companies that operate marketplaces facilitating online transactions between consumers and vendors.

The prime example of the modern digital marketplace is Amazon.com, Inc.  Amazon operates a website where, among other things, third-party vendors sell their goods to consumers. Because Amazon's marketplace operates as a neutral intermediary between consumers and third-party vendors, courts have typically not found it liable for trademark-infringing goods sold through its platform.  *See, e.g.*, *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 938–39 (9th Cir. 2015); *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 WL 4394673, at *6 (W.D. Wash. July 16, 2015).  This case turns on whether Redbubble, Inc., an Australia-based online retailer, enjoys similar immunity from trademark-infringement claims arising from products displayed on and sold through its digital marketplace.  The Ohio State University (OSU) argues that Redbubble's marketplace model differs from those used by Amazon, eBay, and other passive e-commerce facilitators.  So OSU alleges that Redbubble violated the Lanham Act and Ohio's right-of-publicity statute because it acted less like a hands-off intermediary and more like a company that creates knock-off goods.  Because Redbubble's marketplace involves creating Redbubble products and garments that would not have existed but for Redbubble's enterprise, we find that the district court erred by entering summary judgment for Redbubble under an overly narrow reading of the Lanham Act.  Thus, we REVERSE and REMAND.

I.

Redbubble operates an online marketplace with a global reach. This marketplace is large—around 600,000 artists use the website, and over $100 million in sales has flowed through Redbubble's platform. Products for sale on Redbubble's website include apparel, wall art, and other accessories emblazoned with an image selected by a consumer. Independent artists, not employed by Redbubble, upload images onto Redbubble's interface. Consumers then scroll through those uploaded images and place an order for a customized item.

Once a consumer places a purchase on its website, Redbubble automatically contacts the artist and arranges the manufacturing and shipping of the product with independent third parties. So Redbubble never takes title to any product shown on its website. And Redbubble does not design, manufacture, or handle these products. But the shipped packages bear its logo, and Redbubble handles customer service duties such as returns.

Aside from managing the website, Redbubble plays a larger role in overseeing and executing sales made on its marketplace. For example, Redbubble helps market products listed on its website. And it markets those goods as Redbubble products to consumers; for instance, it provides instructions on how to care for "Redbubble garments." (R. 39-1, Shook Aff., PageID 631.) When customers receive goods from Redbubble's marketplace, they often arrive in Redbubble packaging and contain Redbubble tags. And if there are excess goods, Redbubble has the right to dispose of those items.

In short, independent artists can have goods displaying their artwork and images advertised, manufactured, and sold by using Redbubble's platform. OSU argues that Redbubble is responsible for trademark-infringing products sold on Redbubble's marketplace. Neither party disputes that some of Redbubble's artists uploaded trademark-infringing images, that these images appeared on Redbubble's website, or that consumers paid Redbubble to receive products bearing images trademarked by OSU. Instead, they dispute whether Redbubble is liable for trademark infringement because of its role in managing the marketplace.

OSU's licensing program has generated over $100 million in the last seven years. To protect its trademarks, OSU carries out a "strict oversight of licensed products." (Appellant Br.

at 7.)  While conducting this oversight in 2017, OSU discovered products on Redbubble's marketplace that displayed OSU's trademarked images without approval.  So OSU sent Redbubble a cease-and-desist letter.

In response, Redbubble asked OSU to "specifically identify each infringing design." (R. 24-6, Ex. F, PageID 549.)  Redbubble's user agreement states that trademark holders, and not Redbubble, bear the burden of monitoring and redressing trademark violations.  Redbubble also told OSU that it needed more information about which designs violated OSU's trademarks.  So OSU sent Redbubble a letter containing photos of nine offending items.  But Redbubble told OSU that pictures weren't enough to identify the offending products, asking for URLs or other identifying information.  After this, communication halted between the parties.  In the end, Redbubble did not remove the offending products from its website.

After the communication breakdown, OSU sued Redbubble in December 2017. It brought claims alleging trademark infringement, counterfeiting, and unfair competition under the Lanham Act, as well as Ohio's right-of-publicity law.  The parties cross-moved for summary judgment, and the district court entered summary judgment for Redbubble.  According to the district court, Redbubble did not "use" OSU's trademarked images in operating its business model under the Lanham Act because it only acted as a "transactional intermediary" between buyers, sellers, manufacturers, and shippers.  (R. 48, Op. & Order, PageID 922–28.)  And because OSU had argued that Redbubble met "the 'use' requirement under state law for the same reasons Redbubble [met] the 'use' requirement under federal law," the district court declined to address Redbubble's argument that Ohio's right-of-publicity statute creates a stricter use standard.  (*Id.* at 929.)  OSU's arguments failed even "under the more lenient federal definition." (*Id.*)  OSU now appeals, arguing that the lower court incorrectly interpreted the Lanham Act and Ohio law by entering summary judgment for Redbubble.

## II.

We review a district court's grant of summary judgment de novo.  *Miles v. S. Cent. Human Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  This standard of review remains the same for reviewing cross-motions for summary judgment.  *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).  When both parties move for summary judgment below, this Circuit does not assume that "the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record."  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. Louisiana (Bd. of Trustees for State Colleges and Univs.)*, 757 F.2d 698, 705 (5th Cir. 1985)).  In short, a case involving cross-motions for summary judgment requires "evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)).

### III.

OSU asserts two claims against Redbubble: (1) a Lanham Act violation for use of OSU's trademarks without permission; and (2) a violation of Ohio's right-of-publicity law for use of the persona of Urban Meyer, OSU's former employee.

The Lanham Act creates a cause of action against any person who, without the consent of the trademark owner, either:

> (a) [U]se[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).  And OSU asserts that Redbubble directly infringed OSU's trademarks under the Act because Redbubble's role in operating its online marketplace meets the statutory definition of using a trademark in commerce without owner approval.

Parties may also be vicariously liable under the Lanham Act even if they do not directly "use" the trademark to sell or advertise a product. "This Circuit allows plaintiffs to hold defendants vicariously liable for trademark infringement under the Lanham Act when the defendant and the infringer have an actual or apparent partnership, have authority to bind one another in transactions, or exercise joint ownership or control over the infringing product." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 793 (6th Cir. 2015). So OSU also claims that Redbubble meets the *Grubbs* test for vicarious liability because the vendors operating on its site act as Redbubble's agents.[1]

Independent of these federal trademark violations, Ohio's right-of-publicity statute provides a cause of action for using an "aspect of an individual's persona for a commercial purpose." OHIO REV. CODE § 2741.02(A). The statute defines commercial purpose as:

> [T]he use of or reference to an aspect of an individual's persona in any of the following manners:
>
> (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;
>
> (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;
>
> (3) For the purpose of promoting travel to a place;
>
> (4) For the purpose of fundraising.

*Id.* § 2741.01(B). Citing the statute, OSU alleges that Redbubble unlawfully sold products bearing the image of Urban Meyer, OSU's former head football coach. And because Urban Meyer had assigned his publicity right to the school,[2] OSU claims that Redbubble infringed on

---

[1]OSU fails to mention that there are two types of secondary liability under the Lanham Act: vicarious trademark infringement and contributory trademark infringement. The Supreme Court described contributory infringement, stating, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). This differs from the agency-law-based vicarious Lanham Act liability test that this Circuit adopted in *Grubbs*. But both have elements that differ from direct Lanham Act liability. Because OSU does not raise a contributory infringement argument, we decline to consider the merits of a potential claim under that framework. (*See* Appellant Br. at 51–52 ("It is true that Ohio State did not allege *contributory* infringement . . . .").)

[2]Publicity rights are assignable under Ohio Revised Code section 2741.04.

OSU's rights in violation of Ohio's right-of-publicity statute by permitting the commercial sale of goods displaying Urban Meyer's likeness on Redbubble's platform.  In sum, OSU argues that the district court wrongly entered summary judgment for Redbubble on both claims.

IV.

Before addressing the merits of OSU's arguments, we first address Redbubble's argument that OSU did not preserve its theory that Redbubble could be vicariously liable under the Lanham Act.  Asserting that neither OSU's motion for summary judgment nor its complaint mentioned vicarious Lanham Act liability, Redbubble argues that OSU may not rely on that theory for the first time on appeal.  And we agree.

"This court does not ordinarily address new arguments raised for the first time on appeal."  *Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002).  When barred, those claims are either forfeited or waived—the former is a party's "failure to make the timely assertion of a right" while the latter "is the intentional relinquishment or abandonment of a known right."  *United States v. Petlechkov*, 922 F.3d 762, 767 (6th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  Sometimes the difference between waiver and forfeiture matters.  For instance, forfeiture "does not extinguish an 'error' under [Federal Rule of Civil Procedure] 52(b)."  *Olano*, 507 U.S. at 733.  Redbubble doesn't specify whether OSU waived or forfeited its vicarious-liability argument, and its briefing implicates both doctrines.

First, Redbubble emphasizes the lack of vicarious-liability argumentation below—a forfeiture argument.  Redbubble asserts that OSU failed to allege or even discuss vicarious or agent liability before the district court, and it argues that OSU's citations to support vicarious liability appeared for the first time on appeal.  And it insists that OSU is foreclosed from arguing vicarious trademark liability given OSU's decision to focus on Redbubble's actions (as opposed to the actions of the third-party vendors using Redbubble's marketplace) and OSU's failure to mention agency, partnership, or the *Grubbs* test before appealing.

And because a "plaintiff's complaint . . . 'must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory,'"  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)

(quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)), the fact that neither OSU's complaint nor its motion for summary judgment discussed vicarious liability strongly supports Redbubble's position.  OSU simply did not argue that Redbubble should be vicariously liable under the Lanham Act under the principles of "basic agency law" and the *Grubbs* test that govern such claims.  (Appellant Br. at 38.)  And because direct trademark infringement and vicarious trademark infringement require proving different elements, OSU cannot now argue that it preserved its vicarious-liability arguments in sections of its complaint that discuss *direct* Lanham Act liability.  *See Bickerstaff*, 830 F.3d at 396.

On top of this negative evidence, Redbubble offers affirmative statements from OSU showing that OSU purposefully opted not to pursue vicarious trademark-infringement claims below.  This looks more like a waiver argument.  And we agree with Redbubble that the record shows that OSU (1) knew the difference between direct and vicarious trademark infringement liability and (2) actively chose to pursue only a direct infringement claim.  For instance, OSU's motion for summary judgment relies on the distinction between "contributory trademark infringement" and "direct trademark infringement" to distinguish its claim from contributory trademark claims, which suggests OSU recognized an available legal argument and decided not to pursue it—a classic example of waiver.  (R. 17, Mot. Summ. J., PageID 107.)

Although OSU concedes that it did not use the term vicarious liability below, it contends that it preserved its vicarious-liability claims because (1) the vicarious-liability argument is "a new facet of [its] consistent claim," (2) its summary judgment motion touched on a vicarious-liability theory without using those "magic words," (3) its complaint and motion for summary judgment informed Redbubble about the claim's factual basis, and (4) failure to make an argument below is not always fatal to raising it on appeal. (Appellant Reply Br. at 23–24.) We address OSU's responses in turn.

To start, OSU paints its vicarious Lanham Act theory as "a new facet of [its] consistent claim."  (*Id.* at 23.)  And it claims that the fact that its complaint only alleged that Redbubble alone "was responsible for the advertising, manufacture, and sale of infringing products" was an excusable mistake because it didn't know about Redbubble's relationship with third-party vendors.  (*Id.* (emphasis omitted).)  Yet nothing stopped OSU from asserting vicarious-liability

claims in the complaint or attempting to amend its complaint once it learned more about Redbubble's marketplace. *Grubbs* and other cases describing vicarious Lanham Act liability existed before this litigation, and Redbubble's business plan was easily ascertainable. Furthermore, OSU admits that vicarious Lanham Act liability has different elements than direct Lanham Act liability, so OSU's vicarious liability theory is plainly not an offshoot of the direct Lanham Act claim it raised below.

Next, OSU argues that it touched on vicarious-liability arguments below enough to avoid forfeiture. (Appellant Br. at 52 ("But Ohio State *did* argue for vicarious liability . . . .").) And it offers pages 601–03 and 610–11 in its summary judgment reply as evidence. But OSU only discussed Redbubble's dealings with third-party vendors—it never articulated a legal claim for vicarious liability. (*See generally* R. 39, Pl's. Memo. Opp. Summ. J, PageID 594–605 (focusing on Redbubble's *use* of OSU's trademarks and not its partner-agent relationship with vendors using Redbubble's online marketplace).) So the record belies OSU's argument.

OSU next asserts that failure to invoke the magic words of "vicarious liability" neither waives nor forfeits the argument because Redbubble was "'informed' of the 'factual basis for the claim'" given the facts in OSU's complaint and its Lanham Act argument. (Appellant Reply Br. at 24 (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014)). In *Johnson*, the Supreme Court clarified that cases should not be dismissed because of an "imperfect statement of the legal theory supporting the claim asserted." 574 U.S. at 11. But *Johnson* involved pleadings at the motion to dismiss stage. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018). And this Circuit has refused to apply *Johnson* to summary judgment cases. *Id.* Even so, OSU argues that this panel should reach the merits of its vicarious-liability Lanham Act claim because "parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). And it's true that this Circuit has discretion to review claims and arguments made for the first time on appeal. But we exercise our "discretion to entertain issues not raised before the district court '[o]nly in exceptional cases' or when application of the rule would produce a 'plain miscarriage of justice[.]'" *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014) (alterations in original) (quoting *Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009)). And issues of "first

impression" are not necessarily "exceptional case[s]" justifying consideration of an "unpreserved . . . issue." *Id.* at 528–29. Even though OSU might have a strong argument for vicarious liability, we find no injustice in barring OSU from pursuing a claim it chose not to pursue below. Thus, we decline to exercise our discretion to excuse a party's forfeiture or waiver.

All said, Redbubble rightly stresses the absence of vicarious-liability argumentation in the record below. And OSU's reasons for excusing that omission fall short. So we decline to address the merits of OSU's vicarious Lanham Act liability theory because OSU failed to preserve that claim.

V.

Aside from its vicarious-liability claim, OSU argues that Redbubble's actions directly violated the Lanham Act, so at a minimum the district court should not have entered summary judgment for Redbubble. To begin, OSU claims that the district court misunderstood the Lanham Act's scope. That statute recognizes a civil cause of action for trademark infringement against parties who "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. §§ 1114(a), 1125(a). And OSU argues that Redbubble—"the quintessential infringer and counterfeiter"—violated the Act when it "used" OSU's trademarks by "marketing and selling trademark-infringing products" on the Redbubble platform. (Appellant Br. at 24.)

In support of that argument, OSU contends that the Lanham Act applies to a wide array of parties and commercial activities and the district court erred by improperly narrowing the Lanham Act's scope. It points to the statutory phrase "in connection with" as evidence of "a broad interpretation" for actions covered by the Lanham Act. (Appellant Br. at 27 (quoting *Mont v. United States*, 139 S. Ct. 1826, 1832–33 (2019)).) OSU claims that's why the Supreme Court found that "[t]he Lanham Act creates a cause of action for . . . misleading advertising or labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). But the district court applied a narrower interpretation of the Act. It found Redbubble's participation in the creation, manufacturing, and sale of the offending goods too indirect for Lanham Act liability

because Redbubble acted more like Amazon or an auction house than a company that designs, manufactures, and sells its own goods.  For instance, it ruled that Redbubble was not liable for trademark-infringing images on its website despite the Lanham Act prohibiting trademarks being "placed in any manner on the goods . . . or the displays associated therewith" because "independent" artists uploaded the images.  (R. 48, Op. & Order, PageID 928 (emphasis omitted) (quoting 15 U.S.C. § 1227).)

Unlike OSU, Redbubble urges us to follow a narrow interpretation of the Lanham Act.  It believes the Act creates liability only for manufacturers, sellers, and those "who apply infringing marks to sales displays or other related advertising materials."  (Appellee Br. at 25.)  In short, Redbubble contends that direct liability for trademark infringement "requires that the plaintiff prove that the accused infringer placed the infringing mark on goods" or affirmatively used the mark, e.g., by selling a trademark-infringing good directly to a consumer.  (*Id.* at 26.)  Because Redbubble facilitates sales, like Amazon, without creating or handling products, Redbubble concludes it "cannot directly infringe" OSU's trademarks.

It's true that online marketplaces, like eBay and Amazon, that facilitate sales for independent vendors generally escape Lanham Act liability.  *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103, 109 (2d. Cir. 2010) (finding eBay could not be liable for direct infringement for use of a trademark where the use did not imply affiliation or endorsement; also finding eBay could not be liable for contributory infringement for the sale of counterfeit goods by vendors on its website).  Conversely, parties who design and print trademark-infringing goods typically violate the Lanham Act.  *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wisc. 2018) (ruling that defendant violated the Lanham Act because it printed trademark-offending goods).  So the parties dispute where courts draw the line for online-vendor liability.

This Circuit has already found "no reason to restrict [Lanham Act] liability to those who actually create, manufacture[,] or package the infringing items."  *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006).  In *Lorillard*, the court imposed liability where the defendant acted as a brick-and-mortar store that directly sold trademark-infringing items to consumers, despite the fact that the defendant didn't design or

manufacture the offending product. It simply ran a marketplace where consumers could find and procure the counterfeit cigarettes. Admittedly, *Lorillard* emphasizes the defendant's "role as a retailer" when imposing liability. *Id.* But that decision still suggests broad liability for parties involved in selling trademark-infringing goods.

Although the district court here correctly presented this question as a spectrum, with eBay and Amazon's marketplaces on one end and brick-and-mortar vendors on the other, it ultimately applied Lanham Act liability too narrowly. The question remains as to when, exactly, a party avoids liability by acting as a passive facilitator.

Neither party disputes that an entity that is either (i) the creator or manufacturer of the offending goods, or (ii) a direct seller of the offending goods (e.g., a brick-and-mortar store or company website) is liable under the Lanham Act. They disagree, however, as to when a party indirectly involved in the creation/manufacture of a good and/or the sale of a good avoids liability by acting as a passive facilitator. In other words, what level of involvement and control must a defendant exercise over the creation, manufacture, or sale of offending goods to be considered akin to a "seller" or "manufacturer" to whom Lanham Act liability applies? Aside from the eBay/Amazon model, some trademark-infringing activity does not create liability. For instance, a company that auctions trademark-offending website domain names does not "use" those trademarks as the Lanham Act prohibits. *Bird v. Parsons*, 289 F.3d 865, 877–79 (6th Cir. 2002). That's because domain-name providers only sell "an address" used on the internet for identification purposes, and not products bearing a trademark. *Id.* at 878. So on the opposite end of the spectrum from direct sellers and manufacturers, this Circuit places parties like Amazon and domain-name providers outside the Lanham Act's ambit.

Returning to the statutory text, OSU argues that the language sweeps broadly. First, it compares the Lanham Act's "use in commerce" language to the "use" of a firearm in *Smith v. United States*, 508 U.S. 223 (1993). There, the Supreme Court determined that the definition of use "sweeps broadly." *Id.* at 229. So OSU urges us to follow this natural meaning of "use." And it contends that Redbubble necessarily uses OSU's trademarks when it places them on Redbubble's stock images and creates Redbubble products. In other words, if Redbubble didn't use the trademark, then how could its website display or satisfy an order for a hat or shirt bearing

OSU trademarks that doesn't exist elsewhere?  The key distinction between Redbubble and Amazon's "use" of trademarks would be that Redbubble directs others to make or display infringing *Redbubble* products with *Redbubble* tags and instructions for caring for *Redbubble* garments.  Because Amazon's marketplace doesn't operate by offering or producing *Amazon* products, under OSU's theory, Amazon doesn't use the trademark in a creative or generative process.  And that's where it wants  us to draw the line for liability because companies that print the offending trademark onto a product are generally liable under the Lanham Act.  *See SunFrog*, 311 F. Supp. 3d at 1000.

Redbubble makes its own textual argument.  It contends that only "affirmative 'use'" creates direct Lanham Act liability—the "in connection with" language only operates to permit indirect or vicarious liability.  Yet Redbubble doesn't explain why the statutory text cabins itself to vicarious liability only.  And if the statutory text creates those claims, then it is strange that courts have found vicarious Lanham Act liability based on the statute's common law tort backdrop rather than the text itself.  *See, e.g.*, *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) (describing vicarious Lanham Act liability as "essentially the same as in the tort context" without relying on the statutory text).  This undermines Redbubble's position that the Lanham Act's language or context narrows the word "use."

Looking at this Circuit's Lanham Act precedent, it seems that one key distinction between a direct seller who "uses" a trademark under the Act and a mere facilitator of sales who does not is the degree to which the party represents itself, rather than a third-party vendor, as the seller, or somehow identifies the goods as its own.  A retailer who sells products directly to a customer at a brick-and-mortar store is indisputably a seller to whom the Lanham Act applies. *See Lorillard*  453 F.3d at 381.  An online marketplace like eBay that clearly indicates to consumers that they are purchasing goods from third-party sellers is not.  *See Multi Time Mach.*, 804 F.3d at 938–41 (finding Amazon not liable for the trademark infringement committed by parties using its platform because "Amazon clearly labels the source of the products it offers for sale" and is not a seller).  Here, although the record is sparse, it appears that products ordered on Redbubble's website do not yet exist, come into being only when ordered through Redbubble,

and are delivered in Redbubble packaging with Redbubble tags. Under those facts, the district court erred in affirmatively placing Redbubble on the passive end of the liability spectrum.

Although Redbubble utilizes a third-party to manufacture goods sold on its site, the degree of control and involvement exercised by Redbubble over the manufacturing, quality control, and delivery of goods to consumers is relevant to an assessment of whether the offending goods can fairly be tied to Redbubble for the purpose of liability. The record below lacks sufficient development of the facts to affirmatively decide this issue.

All said, it appears that Redbubble brings trademark-offending products into being by working with third-party sellers to create new Redbubble products, not to sell the artists' products. So it's more than just a passive facilitator. And Redbubble classifies its goods as "Redbubble products" and makes clothes identifiable as "Redbubble garments." (R. 31-1, Shook Aff., PageID 631.) That differs from Amazon's marketplace and makes more "use" of the trademark than non-liable facilitators in cases from other circuits. Given that the district court strayed from this understanding of the Lanham Act, we find that it wrongly entered summary judgment for Redbubble on the direct Lanham Act liability claim.

VI.

Independent of its federal trademark law claims, OSU asserts that Redbubble violated Ohio Revised Code section 2741, Ohio's right-of-publicity statute. "The right of publicity is a creature of state common law and statute and originated as part of the common-law right of privacy." *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 622 (6th Cir. 2000). Because Urban Meyer, a former OSU employee, assigned his right of publicity to OSU, OSU possesses a property interest in Urban Meyer's persona. So the only question is whether Redbubble used "any aspect" of Meyer's persona for a "commercial purpose." OHIO REV. CODE § 2741.02(A). Ohio defines commercial purpose as:

> [T]he use of or reference to an aspect of an individual's persona in any of the following manners:
>
> (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter;

(3) For the purpose of promoting travel to a place;

(4) For the purpose of fundraising.

*Id.* § 2741.01(B).  The district court treated this issue in a cursory manner, reasoning that OSU couldn't succeed on its state-law claim because it didn't win "under the more lenient federal definition" of using a trademark.  (R. 48, Op. & Order, PageID 929.)

OSU points out that a federal court already decided that printing images bearing Urban Meyer's likeness violates section 2741.  That's true—a district court entered summary judgment for OSU against an online print-on-demand business "engaged in offering for sale [items] bearing Meyer's name, image, and likeness."  *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 916 (S.D. Ohio 2014).  But that's only half the story as it pertains to this case.  Neither party here disputes that *someone* infringed on OSU's publicity right to Meyer's persona.  The divide is whether Redbubble is liable for that violation.  Rephrased, OSU claims Redbubble "used the same methods to sell, make, and ship these Urban Meyer goods as its other Ohio State goods." (Appellant Br. at 47.)  So it follows that actions violating the federal prohibition on illicitly using trademarked images could violate Ohio's right of publicity statute.

Redbubble counters that courts only impose liability for right of publicity violations when defendants "take affirmative steps to specifically exploit the persona in question."  (Appellee Br. at 58.)  And it claims that it played a passive role in vendors uploading Meyer's image to its site and consumers purchasing items bearing Meyer's likeness through its marketplace.  To make that argument, Redbubble cites cases in which courts decided that technology companies like Facebook, Google, and Amazon did not violate right-of-publicity statutes for images uploaded to their websites by third parties.

"[C]ourts typically give attention to the entire available body of case law when deciding right of publicity cases."  *Landham*, 227 F.3d at 623.  We believe a case involving Amazon is most illustrative.  In *Almeida v. Amazon.com, Inc.*, the Eleventh Circuit declined to hold Amazon liable for book cover images that users uploaded onto its website.  456 F.3d 1316, 1326 (11th

Cir. 2006) ("Amazon's use of book cover images closely simulates a customer's experience browsing book covers in a traditional book store. Thus, it is clear that Amazon's use of book cover images . . . is merely incidental to . . . internet book sales."). It did so because "Amazon [did] not make editorial choices as to the book cover images it displays on its website." *Id.* Instead, a third-party book publisher using Amazon's marketplace made that decision.

But under the logic in *Almeida*, Redbubble differs from Amazon in how it creates products. As mentioned above, Redbubble classifies goods bought on its platform as "Redbubble products" designed by "independent artists." (R. 39-1, Shook Aff., PageID 629, 631.) These products are sometimes adorned with Redbubble images and Redbubble marketing materials. Unlike Amazon's model described in *Almeida*, which resembled a conduit between buyers and booksellers, Redbubble integrates itself in the product. In other words, Redbubble interweaves its brand with the products it sells. For instance, its user agreement tells vendors "you may offer your art for sale as *part* of the sale of a physical product." (R. 24-3, User Agreement, PageID 531 (emphasis added).) And, as explained above, Redbubble acts as more than a passive facilitator in designing and selling the products displayed on its marketplace.

Redbubble's state-law statutory claim cuts to the main theme of the case: Can the goods sold on Redbubble's marketplace be classified as Redbubble products? We agree that, to some degree, "Redbubble is just like a brick-and-mortar store that sells custom-ordered goods selected from a catalog of artwork and a catalog of goods, and then uses a third party to fulfill and ship those orders." (Univ. Mich., et al. Amicus Brief at 18.) All told, the right-of-publicity claim turns on how Redbubble's business model differs from Amazon, eBay, and other passive virtual marketplace operators. Even though Redbubble didn't design or upload images of products bearing Meyer's likeness, the record shows how Redbubble's marketplace allows customers to buy a "Redbubble product" or a "Redbubble garment." (R. 39-1, Shook Aff., PageID 631 ("[Redbubble] put a lot of thought into how *Redbubble products* are packaged." (emphasis added).) And that differs from other companies that our sister circuits have described as passive facilitators in online marketplaces. So the cases Redbubble cites to avoid right-of-publicity liability don't apply.

Independent of cases from other circuits, the text of Ohio's right-of-publicity statute prohibits using a persona in connection with a product, advertising a product, or soliciting the purchase of a product. OHIO REV. CODE §§ 2741.01(B), 2741.02(A). That broad language expands liability beyond directly selling trademark-infringing goods. Redbubble operates its online marketplace; at a minimum, such operation advertises the products made by vendors and directs consumers to purchase those products. And Redbubble admits that it markets those products to consumers. Even granting Redbubble's position that it passively gives independent third parties a platform to sell goods and then connects them to manufacturers and shippers, its website still markets the offending goods, brings those novel trademark-infringing products into being, and then sells those products. Under Ohio law, a court "'do[es] not have the authority' to dig deeper than the plain meaning of an unambiguous statute 'under the guise of either statutory interpretation or liberal construction.'" *State ex rel. Clay v. Cuyahoga Cty Med. Exam'rs Off.*, 94 N.E.3d 498, 502 (Ohio 2017) (quoting *Jackson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016)). And so we reverse the district court's entry of summary judgment for Redbubble on its Ohio right-of-publicity claim under the plain text of that statute.

VII.

Even though OSU rightly argues that the district court incorrectly interpreted the Lanham Act and Ohio's right-of-publicity law, we still must ask if OSU presented enough undisputed facts to prevail under the correct interpretations of those statutes. To obtain summary judgment, OSU would need to show that Redbubble asserted no disputed, material facts showing that its business model abides by the Lanham Act. *See Miles*, 946 F.3d at 887. When "the record . . . provides inadequate evidence" over whether a defendant violated the Lanham Act, remanding to the district court for further proceedings including additional factfinding is proper. *See Allard Enters., Inc. v. Adv. Programming Res., Inc.*, 146 F.3d 350, 361 (6th Cir. 1998). We conclude that's the case here, given the limited evidence about Redbubble's relationship with the trademark-infringing products.

It's true that Redbubble facilitates the creation of goods bearing OSU's marks that would not have existed but for Redbubble. And that's why we disagree with the district court's ruling that Redbubble could not be liable because of its similarity to Amazon, eBay, and other passive

online marketplaces. But even though we hold the district court erred by applying an overly narrow reading of the Lanham Act and giving too cursory of a treatment to OSU's state-law claims, we are not certain that OSU, based on the record established below, can establish that no issue of material fact exists over Redbubble's liability under a more expansive understanding of the Lanham Act.

Although the record shows that Redbubble sells "Redbubble products" and "Redbubble garments" on its marketplace, unlike Amazon and other companies that are not directly liable under the Lanham Act, it's unclear what those labels mean. To start, Redbubble's User Agreement states that Redbubble never takes title to those products. And third-party vendors upload the designs for products sold on Redbubble's marketplace. Given the murkiness about Redbubble's relationship to the trademark-infringing products, we conclude the record below does not permit an informed ruling about whether Redbubble "used" OSU's marks under the Lanham Act. The factual gaps on this issue include: "facts regarding the precise nature of Redbubble's contractual relationships with third-party manufacturers and shippers"; "the precise degree to which Redbubble is involved in" selecting and imprinting trademark-infringing designs upon its products; "details as to Redbubble's involvement in the process for returning goods"; "detail[s] on how Redbubble characterizes its own services"; and facts about "defenses to liability[,] such as possible fair use defenses or defenses that confusion is not likely." (Int'l Trademark Ass'n Amicus Br. at 17–23.) So even though the district court applied the Lanham Act too narrowly, additional factfinding on remand would aid a decision about whether Redbubble is liable under the standard explained above.

One last point: Redbubble argues that remand is inappropriate because "OSU waived" its right to develop the record by seeking summary judgment. (Appellee Br. at 53–55.) In other words, Redbubble asserts that OSU's decision to move for summary judgment below now precludes a ruling "that the district court's ruling was premature." (*Id.*) Yet it relies on *Bormuth v. Cnty. of Jackson*, 870 F.3d 494 (6th Cir. 2017) (en banc), for that proposition. And that case only applies to a party challenging the lower court's decision to limit discovery. *Id.* at 502. Unlike *Bormuth*, neither party is challenging a district court ruling relating to discovery. And this court has the power to remand for further factfinding. *See* 28 U.S.C. § 2106

No. 19-3388                *The Ohio State Univ. v. Redbubble, Inc.*                Page 19

("[A]ny . . . court of appellate jurisdiction . . . may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.").  So we reject Redbubble's argument that OSU waived its right to develop the record below.

## VIII.

For the reasons above, we REVERSE the lower court's grant of summary judgment in favor of Redbubble and REMAND for factfinding and for consideration of OSU's claims under a standard consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-3388

THE OHIO STATE UNIVERSITY,

    Plaintiff - Appellant,

    v.

REDBUBBLE, INC.,

    Defendant - Appellee.

```
┌─────────────────────────────┐
│          FILED              │
│       Feb 25, 2021          │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

Before:  GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment in favor of Redbubble, Inc. is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk